**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALASKA ELECTRICAL PENSION FUND, *on Behalf of Itself and All Others Similarly Situated,*<br><br>            Plaintiff,<br><br>      v.<br><br>KERR-MCGEE CORPORATION, ANADARKO PETROLEUM CORPORATION, LUKE R. CORBETT, GREGORY PILCHER, ROBERT M. WOHLEBER, J. MICHAEL RAUH, THOMAS W. ADAMS, MARY MIKKELSON and MARTY J. ROWLAND,<br><br>            Defendants. | No. 09-CV-6220-SAS<br><br><br>ECF CASE |

[caption continues on next page]

**MEMORANDUM IN SUPPORT OF MOTION OF LaGRANGE PARTNERSHIPS FOR: (1) CONSOLIDATION OF RELATED CASES; (2) APPOINTMENT AS LEAD PLAINTIFF; AND (3) APPROVAL OF SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL FOR THE CLASS**

| | |
|---|---|
| OLIVER SHI, *on Behalf of Himself and All Others Similarly Situated,* | No. 09-CV-6490-SAS |
| Plaintiff, | |
| v. | Related Case |
| KERR-MCGEE CORPORATION, ANADARKO PETROLEUM CORPORATION, LUKE R. CORBETT, GREGORY PILCHER, ROBERT M. WOHLEBER, J. MICHAEL RAUH, THOMAS W. ADAMS, MARY MIKKELSON and MARTY J. ROWLAND, | |
| Defendants. | |
| MONTI BARNES, *Individually and on Behalf of All Others Similarly Situated,* | No. 09-CV-7116-SAS |
| Plaintiff, | |
| v. | Related Case |
| KERR-MCGEE CORPORATION, ANADARKO PETROLEUM CORPORATION, LUKE R. CORBETT, GREGORY PILCHER, ROBERT M. WOHLEBER, J. MICHAEL RAUH, THOMAS W. ADAMS, MARY MIKKELSON and MARTY J. ROWLAND, | |
| Defendants. | |

The LaGrange Partnerships[1] respectfully submit this memorandum in support of their motion for: (1) consolidation of all related actions; (2) appointment of the LaGrange Partnerships as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 (15 U.S.C. §78u-4(a)(3)(B)) (the "PSLRA"); (3) approval of their selection of the law firm of Gold Bennett Cera & Sidener LLP as lead counsel and Cohen Milstein Sellers & Toll PLLC as liaison counsel for the Class.

## I.     **PRELIMINARY STATEMENT**

This is a class action on behalf of purchasers of the Class A and Class B common stock of Tronox Incorporated ("Tronox" or the "Company") from November 28, 2005 through January 12, 2009 (the "Class Period") for violations of the Securities Exchange Act of 1934 (the "Exchange Act").   Throughout the Class Period, defendants issued false and misleading statements regarding the true nature and extent of the Company's environmental and tort liabilities, Tronox's business, operations, management, and the intrinsic value of Tronox common stock.   Unbeknownst to investors, the false and misleading statements enabled defendant Kerr-McGee Corporation to sell $225 million of Tronox stock to the investing public at artificially inflated prices.

The LaGrange Partnerships are the "most adequate plaintiff" under the PSLRA to serve as the Lead Plaintiff on behalf of investors harmed by the fraud.   The LaGrange Partnerships believe they have the largest financial interest in this litigation.   The LaGrange Partnerships also satisfy the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure because their claims are typical of those of the other Class members and they will adequately represent the

---

[1]    "LaGrange Partnerships" refers to LaGrange Capital Partners, LP and LaGrange Capital Partners Offshore Fund, Ltd.  LaGrange Capital Management, LLC serves as the general partner for both of the LaGrange Partnerships and the Certificate of Plaintiff has been executed by an officer of the general partner.

Class. The LaGrange Partnerships are sophisticated institutional investors and are therefore the type of lead plaintiff desired by Congress when it enacted the PSLRA.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Tronox is a producer and marketer of titanium dioxide pigment (an inorganic white pigment used in paint, coatings, plastics, paper and other products). Tronox produces electrolytic products, including sodium chlorate, electrolytic manganese dioxide, boron trichloride, elemental boron and lithium manganese oxide.

The pending lawsuits charge that, throughout the Class Period, defendants failed to disclose material adverse facts about the Company's financial well-being, business relationships, and prospects. Specifically, defendants failed to disclose or indicate the following: (1) that the Company's reserves for environmental liabilities failed to include reserves for identified, but undisclosed sites requiring massive environmental remediation; (2) that the Company faced extraordinary exposure regarding its environmental liabilities, which it failed to fully disclose to its shareholders; (3) that the Company's reserves for environmental liabilities were wholly inadequate; (4) that the Company faced enormous tort liabilities, particularly for environmental contamination at certain wood treatment sites; (5) that the Company's financial statements and, specifically, the methodology used to calculate the Company's environmental liabilities reserve, were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); (6) that the Company lacked adequate internal and financial controls; (7) that, as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times; and (8) that, as a result of the foregoing, defendants' statements about the Company's financial well-being and future business prospects were lacking in any reasonable basis when made.

2

On January 12, 2009, Tronox filed for bankruptcy protection. In its announcement related to the filing, the Company stated that it had incurred significant liabilities as of the date when it was spun off by Kerr-McGee. The Company elaborated by disclosing that the liabilities included environmental remediation and litigation costs that Tronox was required to assume at the time of the Spin-Off, and that these liabilities were an obstacle to Tronox's financial stability and success. As a result, Tronox's shares have become virtually worthless, and are currently trading at well under $0.20 per share. The fraud was so pervasive that the United States Attorney for the Southern District of New York has filed a complaint against defendants Kerr-McGee Corporation and Anadarko Petroleum Corporation, alleging that these companies fraudulently attempted to avoid hundreds of millions of dollars in environmental liabilities in connection with the Spin-Off in 2006.

The first securities class action complaint was filed on July 10, 2009. As required by the PSLRA, notice of pendency of the action was published that same day, alerting class members to the 60 day deadline (September 8, 2009) to submit motions seeking appointment as lead plaintiff on behalf of Tronox investors. A copy of the PSLRA notice is annexed as Exhibit A to the Declaration of Thomas C. Bright ("Bright Declaration" or "Bright Decl."), submitted concurrently herewith. With the filing of this motion, the LaGrange Partnerships have met the statutory deadline to request appointment as lead plaintiff.

## III. ARGUMENT

### A. The Related Actions Should Be Consolidated

Rule 42(a) of the Federal Rules of Civil Procedure grants the Court discretion to consolidate "actions involving a common question of law or fact." *See also Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990). In addition, the Exchange Act provides that

consolidation should occur where, as here, multiple actions assert "substantially the same claim." 15 U.S.C. §78u-4(a)(3)(B)(ii).  The actions need not be identical.  *Kaplan v. Gelfond*, 240 F.R.D. 88, 91-92 (S.D.N.Y. 2001) (different class periods and defendants do not preclude consolidation).  Therefore, courts routinely consolidate securities class actions arising from the same alleged false and misleading statements.  *Werner v. Satterlee, Stephens, Burke & Burke*, 797 F. Supp. 1196, 1211 (S.D.N.Y. 1992); *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 431 (E.D. Va. 2000) ("consolidation is often warranted where multiple securities fraud class actions are based on the same public statements and reports") (internal quotations omitted).

Here, the above-captioned actions all relate to the artificial price inflation of Tronox's securities and present common questions of fact.  Given the overlapping facts and common defendants, consolidation will conserve judicial resources and promote the efficient prosecution of the claims.  *Kaplan*, 240 F.R.D. at 92.  Accordingly, the above-captioned actions and any other related cases transferred to this Court should be consolidated for pre-trial purposes.

**B.  LaGrange Partnerships Should Be Appointed Lead Plaintiff**

The LaGrange Partnerships respectfully submit that they should be appointed Lead Plaintiff because they are the movant "most capable of adequately representing the interests of class members."  15 U.S.C. §78u-4(a)(3)(B).  The PSLRA establishes a presumption that the "most adequate plaintiff" is the movant with "the largest financial interest in the relief sought by the class" and that "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(3)(B); *see also Glauser v. EVCI Career Colleges Holding Corp.*, 236 F.R.D. 184, 187-89 (S.D.N.Y. 2006); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 97-098 (S.D.N.Y. 2005).

**1.  LaGrange Partnerships Believes It Has The Largest Financial Interest**

The LaGrange Partnerships should be appointed lead plaintiff because they believe they

4

have the largest financial interest among those seeking appointment as lead plaintiff.  15 U.S.C. §78u-4(a)(3)(B)(iii).  Courts generally consider four factors to determine which movant has the largest financial interest in the litigation: (1) the gross number of securities purchased during the Class Period; (2) the net number of securities purchased during the Class Period; (3) the net funds paid for the security during the Class Period; and (4) the approximate loss suffered.  *See, e.g., Glauser*, 236 F.R.D. at 187; *In re eSpeed*, 232 F.R.D. at 100.  Based on these factors, the LaGrange Partnerships believe they have the largest financial interest in the outcome of this lawsuit.

As the LaGrange Partnerships' Certificate indicates, annexed as Exhibit B to the Bright Declaration, they purchased 2,143,952 Tronox Class A and B common shares during the Class Period.  *See* Bright Decl., Exhibit B.  The LaGrange Partnerships had a net expenditure of $7,688,697.63 for Tronox common shares and suffered a loss of $7,640,434.56 on a LIFO basis. The LaGrange Partnerships' financial interest in this litigation can be summarized as follows:

| Factor | LaGrange |
|---|---|
| Total Purchases | 2,143,952 |
| Net purchases | 1,282,135 |
| Net expenditures | $7,688,697.63 |
| FIFO loss ("first in, first out") | $6,938,284.56 |
| LIFO loss ("last in, first out") | $7,640,434.56 |

Based on these numbers, the LaGrange Partnerships believe that they have the largest financial interest of any movant seeking appointment as lead plaintiff.

### 2. The LaGrange Partnerships Otherwise Satisfy The Requirements of Rule 23 of the Federal Rules of Civil Procedure

The LaGrange Partnerships should be appointed Lead Plaintiff because they also satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure.  A lead plaintiff movant "need only make a preliminary showing that it satisfies the typicality and adequacy requirements

of Rule 23." *Glauser*, 236 F.R.D. at 188 (quoting *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 296 (E.D.N.Y. 1998)); *see also In re eSpeed*, 232 F.R.D. at 102 (same).  The LaGrange Partnerships unquestionably satisfy both requirements in this case.

"Typicality is satisfied where the claims arise from the same conduct from which the other class members' claims and injuries arise." *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002).  The LaGrange Partnerships' claims arise from the same course of misconduct at as the claims of the other Class members – *i.e.*, the artificial inflation and consequent market correction of Tronox shares caused by defendants' false representations. *Glauser*, 236 F.R.D. at 188-89 (finding a Lead Plaintiff movant's claim to be typical where the movant "like all class members, (1) purchased or acquired EVCI securities during the proposed class period, (2) at prices allegedly artificially inflated by Defendants' false and misleading statements and/or omissions, and (3) suffered damages thereby"); *In re eSpeed*, 232 F.R.D. at 102 (finding a Lead Plaintiff movant's claim to be typical where "[m]embers of the class claim to have been injured by a fraudulent inflation of eSpeed's stock price" and the movant "makes the same claim").

The adequacy requirement is satisfied where "the class members' interests are not antagonistic to one another," "the class has a sufficient interest in the outcome of the case to ensure vigorous advocacy," and where "class counsel is qualified, experienced, and generally able to conduct the litigation." *In re Initial Public Offering Sec. Litig.*, 214 F.R.D. at 121.  The LaGrange Partnerships satisfy each of these elements of the adequacy requirement.  Their interests are aligned with those of the other Class members and are not antagonistic in any way. Indeed, the LaGrange Partnerships seek identical relief on identical claims based on identical legal theories.  There are no facts suggesting that any actual or potential conflict of interest exists

between the LaGrange Partnerships and other Class members.  The LaGrange Partnerships have also submitted a Certification affirming their understanding of the duties owed to Class members through their commitment to oversee the prosecution of this class action.  *See* Bright Decl., Exhibit B.  Through that Certification, the LaGrange Partnerships have accepted the fiduciary obligations undertaken by a lead plaintiff.

In addition, the LaGrange Partnerships are the type of lead plaintiff envisioned by Congress in its enactment of the PSLRA: a sophisticated institutional investor with a real financial interest in the litigation.  *See* H.R. Conf. Rep. No. 104-369, at 34, 104th Cong. 1st Sess. (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *see also In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 180 (3d Cir. 2005); *Glauser*, 236 F.R.D. at 188.

The LaGrange Partnerships have further demonstrated their adequacy through their selection of Gold Bennett Cera & Sidener LLP as Lead Counsel and the law firm of Cohen Milstein Sellers & Toll PLLC as Liaison Counsel to represent the Class.  As discussed more fully below, Gold Bennett Cera & Sidener LLP is highly qualified and has demonstrated its ability to effectively litigate securities class action cases.

### C.     The Court Should Approve LaGrange Partnerships' Choice Of Lead Counsel And Liaison Counsel

The Court should approve the LaGrange Partnerships' choice of the law firm of Gold Bennett Cera & Sidener LLP to serve as Lead Counsel.  Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the lead plaintiff is to select and retain Lead Counsel to represent the Class, subject to Court approval. For more than 30 years, Gold Bennett Cera & Sidener LLP has played a leading role in significant securities cases, recovering more than $2 billion for its clients.  A

copy of Gold Bennett Cera & Sidener LLP's resume is annexed to the Bright Declaration as Exhibit C.  Gold Bennett Cera & Sidener LLP has the requisite experience and resources to obtain an excellent result for the Class.  *See* Bright Decl., Exhibit C.  Indeed, the court in *In re Rent-Way Sec. Litig.*, 305 F.Supp.2d 491, 515 (W.D. Pa. 2003), a securities fraud class action prosecuted by the firm, stated as follows:

> Having thus initially expressed our confidence in [Gold Bennett Cera & Sidener's] abilities, the Court has not since been disappointed.  On the contrary, [Gold Bennett Cera & Sidener] have shown themselves to be attorneys of the highest caliber, at all times prosecuting this action with a high degree of skill and professionalism.

The LaGrange Partnerships also request that Cohen Milstein Sellers & Toll PLLC be appointed as Liaison Counsel.  This firm likewise has broad experience prosecuting securities fraud class actions in the Southern District of New York and elsewhere.  Details of Cohen Milstein Sellers & Toll PLLC's experience are set forth in the firm's resume, annexed as Exhibit D to the Bright Declaration.

Accordingly, the Court should approve the LaGrange Partnerships' selection of Gold Bennett Cera & Sidener LLP as Lead Counsel and Cohen Milstein Sellers & Toll PLLC as Liaison Counsel for the Class.

## IV.    **CONCLUSION**

For the foregoing reasons, the LaGrange Partnerships respectfully request that the Court: (1) consolidate all related actions; (2) appoint the LaGrange Partnerships as lead plaintiff pursuant to the PSLRA; and (3) approve their selection of the law firm of Gold Bennett Cera & Sidener LLP as lead counsel and Cohen Milstein Sellers & Toll PLLC as liaison counsel for the Class.

Dated: September 8, 2009                    Respectfully submitted,

                                            **COHEN MILSTEIN SELLERS & TOLL PLLC**

                                            By: /s/  Daniel B. Rehns
                                                Christopher Lometti (CL-9124)
                                                Daniel B. Rehns (DR-5506)
                                            150 East 52nd Street, Thirtieth Floor
                                            New York, New York 10022
                                            Tel: (212) 838-7797
                                            Fax: (212) 838-7745
                                            *clometti@cohenmilstein.com*
                                            *drehns@cohenmilstein.com*

                                                Steven J. Toll (*Pro Hac Vice* forthcoming)
                                            1100 New York Ave, Suite 500 West
                                            Washington, DC 20005
                                            Tel: (202) 408-4600
                                            Fax: (202) 408-4699
                                            *stoll@cohenmilstein.com*

                                            *Proposed Liaison Counsel*


                                            **GOLD BENNETT CERA & SIDENER LLP**
                                                Solomon B. Cera (*Pro Hac Vice* forthcoming)
                                                Thomas C. Bright (*Pro Hac Vice* forthcoming)
                                            595 Market Street, Suite 2300
                                            San Francisco, California 94105
                                            Tel: ( 415) 777-2230
                                            Fax: (415) 777-5189
                                            *scera@gbcslaw.com*
                                            *tbright@gbcslaw.com*

                                            *Attorneys for LaGrange Partnerships*
                                            *Proposed Lead Counsel for the Class*

## **CERTIFICATE OF SERVICE**

I, Daniel B. Rehns, liaison counsel for the Plaintiffs, hereby certify that on September 8, 2009, I filed the foregoing with the Clerk of the Court using the Court's CM/ECF system which will send electronic notification of such filing to all counsel of record in the within action. Furthermore, a copy of the foregoing was delivered to all counsel of record in the related actions via electronic mail.

/s/  Daniel B. Rehns
Daniel B. Rehns