UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ─────────────────────── x | | |
| ALASKA ELECTRICAL PENSION FUND, on Behalf of Themselves and All Others Similarly Situated, | : : : | Civil Action No. 1:09-cv-06220-SAS CLASS ACTION |
| Plaintiff, | : : : | |
| vs. | : : | |
| KERR-MCGEE CORPORATION, et al., | : : | |
| Defendants. | : : | |
| ─────────────────────── | | |
| OLIVER SHI, on Behalf of Himself and All Others Similarly Situated, | : : : | Civil Action No. 1:09-cv-06490-SAS CLASS ACTION |
| Plaintiff, | : : : | |
| vs. | : : | |
| KERR-MCGEE CORPORATION, et al., | : : | |
| Defendants. | : : | |
| ─────────────────────── | | |
| MONTI BARNES, Individually and on Behalf of All Others Similarly Situated, | : : | Civil Action No. 1:09-cv-07116-SAS CLASS ACTION |
| Plaintiff, | : : : | |
| vs. | : : | |
| KERR-MCGEE CORPORATION, et al., | : : | |
| Defendants. | : : | |
| ─────────────────────── x | | |

PROPOSED LEAD PLAINTIFF ALASKA ELECTRICAL PENSION FUND'S
MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR CONSOLIDATION,
APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF
COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ......................................................................1

II.     STATEMENT OF FACTS ...........................................................................4

III.    ARGUMENT ...............................................................................................8

    A.      LaGrange Capital Management Should Not Be Appointed Lead Plaintiff ............9

        1.      LaGrange Capital Management's Atypical Trading Pattern
             Subjects It to Unique Defenses ....................................................9

        2.      LaGrange Capital Management Lacks Standing ......................................13

        3.      LaGrange Capital Management Should Not Be Charged with
             Representing the Interests of the Class ....................................................15

        4.      Alaska Should Be Permitted to Take Discovery of the LaGrange
             Entities ....................................................................................18

    B.      Alaska Should Be Appointed Lead Plaintiff ........................................................19

    C.      The Remaining Motions Should Be Denied ........................................................19

IV.     CONCLUSION ...........................................................................................20

# TABLE OF AUTHORITIES

Page

## CASES

*Baydale v. Am. Express Co.*,
  2009 U.S. Dist. LEXIS 71668 (S.D.N.Y. 2009)....................................................3, 9, 13, 14

*City Pension Fund for Firefighters and Police Officers in the City of Miami Beach v.
  Aracruz Cellulose S.A., et al.*,
  Case No. 08-23317-CIV-LENARD, slip op. (S.D. Fla. Aug. 7, 2009) .......................10, 12

*Cromer Finance Ltd. v. Berger*,
  205 F.R.D. 113 (S.D.N.Y. 2001) ........................................................................................15

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  903 F.2d 176 (2d Cir. 1990)..............................................................................................2, 9

*In re Bally Total Fitness Sec. Litig.*,
  2005 U.S. Dist. LEXIS 6243 (N.D. Ill. 2005) ............................................................11, 13

*In re Bank One S'holders Class Actions*,
  96 F. Supp. 2d 780 (N.D. Ill. 2000) ..............................................................................15, 16

*In re Cable & Wireless, PLC, Sec. Litig.*,
  217 F.R.D. 372 (E.D. Va. 2003) ...........................................................................................8

*In re Cardinal Health, Inc. Sec. Litig.*,
  226 F.R.D. 298 (S.D. Ohio 2005).......................................................................10, 12, 15

*In re Carreker Corp. Sec. Litig.*,
  No. 3:03-CV-0250-M, 2003 U.S. Dist. LEXIS 25988
  (N.D. Tex. 2003).................................................................................................................13

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) ...........................................................................................8, 20

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)............................................................................................8, 19

*In re Enron Corp. Sec. Litig.*,
  206 F.R.D. 427 (S.D. Tex. 2002)........................................................................................11

*In re Goodyear Tire & Rubber Co. Sec. Litig.*,
  2004 WL 3314943 (N.D. Ohio 2004)..................................................................................13

**Page**

*In re Harcourt Brace Jovanovich, Inc. Sec. Litig.*,
   838 F. Supp. 109 (S.D.N.Y. 1993) ...............................................................11

*In re IMAX Secs. Litig.*,
   2009 U.S. Dist. LEXIS 58219 (S.D.N.Y. 2009) ....................................3, 14, 15

*In re Microstrategy Inc. Sec. Litig.*,
   110 F. Supp. 2d 427 (E.D. Va. 2000) ...............................................10, 15, 16

*In re NASDAQ Market-Makers Antitrust Litig.*,
   169 F.R.D. 493 (S.D.N.Y. 1996) .................................................................15

*In re Neopharm, Inc. Sec. Litig.*,
   No. 02 C 2976, 2004 U.S. Dist. LEXIS 5814
   (N.D. Ill. Apr. 7, 2004) ...............................................................................17

*In re Network Assocs. Sec. Litig.*,
   76 F. Supp. 2d 1017 (N.D. Cal. 1999) ..........................................................18

*In re SLM Corp. Sec. Litig.*,
   258 F.R.D. 112 (S.D.N.Y. 2009) ...............................................................3, 14

*Kuriakose v. Fed. Home Loan Mortg. Co.*,
   2008 U.S. Dist. LEXIS 95506 (S.D.N.Y. Nov. 24, 2008) ..................................8

*Moore v. Halliburton Co.*,
   No. 3:02-CV-1152-M, 2004 WL 2092019
   (N.D. Tex. Sept. 9, 2004) ............................................................................17

*Naiditch v. Applied Micro Circuits Corp.*,
   2001 U.S. Dist. LEXIS 21374 (S.D. Cal. 2001) .........................................4, 19

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) ...................................................................8

*Reiger v. Altris Software, Inc.*,
   1998 U.S. Dist. LEXIS 14705 (S.D. Cal. 1998) ..............................................9

*Rocco v. Nam Tai Elecs., Inc.*,
   245 F.R.D. 131 (S.D.N.Y. 2007) .................................................................11

*Sakhrani v. Brightpoint, Inc.*,
   78 F. Supp. 2d 845 (S.D. Ind. 1999) ............................................................19

- iii -

**Page**

*Smajlaj v. Brocade Comms. Sys. Inc., et al.*,
　　2006 U.S. Dist. LEXIS 97618 (N.D. Cal. 2006) ............................................................16

*Sofran v. Labranche & Co.*,
　　220 F.R.D. 398 (S.D.N.Y. 2004) ........................................................................................8

*W.R. Huff Asset Mgmt. Co. LLC v. Deloitte & Touche LLP*,
　　549 F.3d 100 (2d Cir. 2008),
　　*cert. denied*, __ U.S. __, 129 S. Ct. 2011 (2009)........................................................ *passim*

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
　　§78u-4(a)(3)(B)(i) ................................................................................................................8
　　§78u-4(a)(3)(B)(iv) ....................................................................................................18, 19

Federal Rules of Civil Procedure
　　Rule 23 ..........................................................................................................8, 18, 19
　　Rule 23(a)(3) .....................................................................................................................11

Proposed lead plaintiff and class member Alaska Electrical Pension Fund ("Alaska" or "Movant") respectfully submits this memorandum of law in further support of its motion for appointment as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") in the above-referenced action and in opposition to the competing motions.

## I.     PRELIMINARY STATEMENT

This is a securities class action brought on behalf of purchasers of Tronox Incorporated ("Tronox") common stock (Class A or Class B) between November 28, 2005 and January 12, 2009, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

In addition to Alaska's motion, Lead Plaintiff motions have been filed by (1) LaGrange Capital Partners, L.P. and LaGrange Capital Partners Offshore Fund, Ltd. (claimed losses of $7.5 million) (collectively referred to as "LaGrange Capital Management");[1] (2) the Fire and Police Pension Association of Colorado and the San Antonio Fire and Police Pension Fund ($342,000) (collectively, the "Fire and Police Grouping"); and (3) individual investor Oliver Shi ($4,900).[2] Docket # 14, 17, 20.

Although LaGrange Capital Management claims the largest financial interest among the movants, it does not meet the PSLRA's lead plaintiff requirements for several reasons. ***First***, LaGrange Capital Management purchased ***all*** of its stock after the issuance of corrective disclosures concerning Tronox's increasing environmental liabilities. As detailed further herein, LaGrange

---

[1]     The certification for LaGrange Capital Partners, L.P. and LaGrange Capital Partners Offshore Fund, Ltd. is signed by Grange Johnson, Managing Member of LaGrange Capital Management, LLC.

[2]     On September 18, 2009, Mr. Shi, the movant with the smallest claimed financial interest, filed a notice of withdrawal of his motion.  Docket #32.

Capital Management did not purchase any Tronox stock until September 12, 2007, a month *after* Tronox had announced its second quarter loss and had started to reveal the extent of its previously undisclosed environmental liabilities.  ¶62.[3]  As the bad news was disclosed, LaGrange Capital Management continued to purchase large blocks of Tronox stock.  For example, on February 13, 2008, Tronox announced a wider-than-expected quarterly loss for the fourth-quarter.  That same day, Moody's placed Tronox under review for a possible ratings cut, followed the next day with a downgrade.  In response to this information, LaGrange Capital Management purchased over 300,000 Tronox shares.[4]  Defendants will no doubt exploit this trading pattern, using this evidence to argue that LaGrange Capital Management is atypical and did not rely on the integrity of the market when purchasing its securities.  *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) (affirming denial of class certification after district court found class representative "subject to" unique defenses because of its continued purchases of securities despite having notice of the alleged fraud).

*Second*, LaGrange Capital Management is an asset manager that "manage[es] private investment funds exclusively for qualified investors."  Rosenfeld Opp. Decl., Ex. 3.  In *W.R. Huff Asset Mgmt. Co. LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 111 (2d Cir. 2008), *cert. denied*, __

---

[3]     All paragraph references ("¶__" or "¶¶__") are to the complaint styled *Alaska Electrical Pension Fund v. Kerr-McGee Corp., et al.* Civ. No. 1:09-cv-06220, filed July 10, 2009.

[4]     Indeed, as the details of the fraud reached the market, LaGrange Capital Management amassed a considerable percentage of Tronox shares, ultimately acquiring more than 6% and 5.5% of Tronox's Class A and Class B shares, respectively.  *See* Declaration of David A. Rosenfeld in Support of Proposed Lead Plaintiff Alaska Electrical Pension Fund's Memorandum in Further Support of Its Motion for Consolidation, Appointment as Lead Plaintiff and Approval of Its Selection of Counsel, and in Opposition to Competing Motions ("Rosenfeld Opp. Decl."), Exs. 1-2. Not only does the timing of LaGrange Capital Management's purchases subject it to unique defenses, the magnitude of LaGrange's holdings only exacerbate the arguments that it is atypical of the rest of the class.

U.S. __, 129 S. Ct. 2011 (2009), the Second Circuit found that asset managers like LaGrange Capital Management lack standing and may not pursue securities claims on behalf of their clients. Following the Second Circuit's opinion in *Huff*, several courts in this District have been compelled to replace previously appointed Lead Plaintiffs because those plaintiffs were, like LaGrange Capital Management here, "subject to" standing issues. *See In re IMAX Secs. Litig.*, 2009 U.S. Dist. LEXIS 58219 (S.D.N.Y. 2009) (regardless of whether lead plaintiff could cure "deficient Article III standing," lead plaintiff "'faces unique legal issues that other class members do not'"); *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 116 (S.D.N.Y. 2009) (same).[5]

*Third*, LaGrange Capital Management lies at the center of a group of shadowy entities whose operations, existence and investment activities are hidden from public view and this Court's review. LaGrange Capital Management has not timely provided the Court with sufficient information to determine what it is, how it operates, what its authority is to pursue this action, or any other information beyond its name that demonstrates that it satisfies the PSLRA's typicality and adequacy requirements. Moreover, LaGrange Capital Management includes at least one entity formed and governed by foreign laws. *See Baydale v. Am. Express Co.*, 2009 U.S. Dist. LEXIS 71668, at *9 (S.D.N.Y. 2009) (Movant's status as a foreign entity "raises complex and novel issues of law which would require extensive factual and foreign legal analysis. "[S]uch a diversion would be a needless litigation sideshow.").

---

[5]     Unless otherwise noted, all emphasis is added and citations are omitted.

By contrast, Alaska is a multi-employer pension fund formed under and subject to the Employee Retirement Income Security Act of 1974 ("ERISA").[6] Alaska is an experienced fiduciary with a proven track record, having recovered well over $100 million for investors.[7]  As an entity formed and operated under U.S. law, the Court is able to thoroughly evaluate its application for appointment as lead plaintiff.  Indeed, "prosecuting securities litigation is part of what [Alaska] does to fulfill its fiduciary duties to look after the public money in its care."  *See Naiditch v. Applied Micro Circuits Corp.*, 2001 U.S. Dist. LEXIS 21374, at *8 (S.D. Cal. 2001).

Accordingly, Alaska's motion should be granted.  All other motions should be denied.

## II.    STATEMENT OF FACTS

On July 10, 2009, Alaska brought a securities class action on behalf of all purchasers of Tronox securities during the Class Period, seeking to pursue remedies under the Exchange Act. ¶1. The action relates to the Kerr-McGee Corporation's ("Kerr-McGee") two-step spin-off of Tronox which took place on November 2005 and March 2006, and defendants' failure to disclose the extent of Tronox's environmental liabilities and weakening financial condition.  ¶¶3, 60.

Not until July 11, 2007 – when Tronox issued a press release announcing that it had identified factors that would impact its second quarter 2007 earnings, which were to be announced

---

[6]    Alaska's propriety as a lead plaintiff can easily be evaluated.  In fact, information concerning Alaska is readily available at its publicly accessible website http://www.aetf.com, which provides information about Alaska's investments, trustees, beneficiaries, etc.

[7]    *See, e.g., In re Krispy Kreme Doughnuts, Inc. Sec. Litig.*, Case No. 1:04-CV-00416 (M.D.N.C.) (recovering $75 million as lead plaintiff on behalf of the class); *Rines v. Heelys, Inc.*, Civ. No. 3:07-cv-01468-K (N.D. Tex.) ($7.5 million settlement pending final approval which was secured by Alaska as lead plaintiff); *In re Fleming Cos. Inc. Sec. and Deriv. Litig.*, Civ. No. 5-03-MD-1530 (TJW) (E.D. Tex.) (serving as class representative on behalf of 33 Act claims, Alaska recovered $22 million for a subclass of offering purchasers); *Catalina Mktg. Corp. Secs. Litig.*, Case No,. 8:03 CV-1582-T-27TBM (M.D. Fla.) (recovering $8.5 million as lead plaintiff).

on August 1, 2007 – did the market start to become aware that Tronox's environmental liabilities were not as defendants had portrayed them to be.  ¶61.  One of these factors was the expected recording of "a pretax noncash environmental provision, net of expected insurance reimbursements, of approximately $2 million in the second quarter for costs associated with an ongoing environmental assessment at its Henderson, Nev. site."  *Id.*

In response to this July 11, 2007, partial disclosure, the price of Tronox stock dropped approximately 5%, and in the days leading up to Tronox's August 1, 2007 earnings announcement, Tronox's stock price continued to fall as the market began to incorporate the Company's mounting environmental liability problems into its stock price.  ¶¶61-62.  During that time Standard & Poor's Ratings Services ("Standard & Poor's") announced that it had placed Tronox's corporate credit rating on CreditWatch with negative implications, explaining that "Tronox's recent announcement of a higher-than-expected environmental provision of $2 million . . . reflect[s] the challenges Tronox faces in its efforts to improve credit quality over the intermediate term."  ¶62.  Standard & Poor's noted that while Tronox, as of March 31, 2007, had environmental reserves of about $221 million to cover expected remediation costs "Standard & Poor's believes that additional reserves are likely to meet future environmental requirements."  This announcement also caused Tronox's share price to significantly decrease.  *Id.*

On August 1, 2007, Tronox issued a press release disclosing that its second quarter losses were due in part to the costs associated with a previously undisclosed environmental assessment at Tronox's Henderson, Nevada site.  ¶63.  In all, from July 10, 2007, the day before Tronox began discussing second quarter 2007 earnings, to August 1, 2007, the day Tronox explained the reasons for the loss, Tronox's stock declined 18.1%.  *Id.*

Following the August 1, 2007 announcement, Tronox continued to announce earnings losses related to environmental charges, causing further reductions in the price of Tronox stock.  ¶64. Notwithstanding, one month after the August 1, 2007, announcement, and knowing that Tronox had failed to properly disclose its environmental liabilities and financial condition, LaGrange Capital Management made its initial purchase of Tronox stock, purchasing over 80,000 shares of Tronox stock.  *See* LaGrange Capital Management Certification (Docket #19-2).  This post-disclosure buying pattern then continued.  For example, on February 13, 2008, Tronox announced a wider-than-expected quarterly loss for the fourth-quarter.  Rosenfeld Opp. Decl., Ex. 4.  That same day, Moody's placed Tronox under review for a possible ratings cut, followed the next day with a downgrade.  *Id.*, Ex. 5.  Despite knowledge of this information, or perhaps because of it, LaGrange Capital Management purchased over 300,000 Tronox shares on February 13, 14, and 15, 2008.

LaGrange Capital Management continued to purchase additional shares of Tronox as more bad news was disclosed.  On August 14, 2008, it was reported that Standard & Poor's had eliminated Tronox from its S&P SmallCap 600 index.  *See* Rosenfeld Opp. Decl., Ex. 6.  This news was followed on August 21, 2008, with an announcement that Tronox had received a notice of noncompliance from the New York Stock Exchange ("NYSE"), warning that it had forty-five days until Tronox's stock was delisted.  *Id.*, Ex. 7.  Then, on August 24, 2008, Tronox's home-town newspaper, *The Oklahoman*, ran an article entitled "Eagle & Beagle," which stated,

> Although analysts first raised the specter of bankruptcy for Oklahoma City-based Tronox Inc., the company itself confirmed that possibility in its most recent regulatory filing.

> "The company may need to seek relief under Chapter 11 of the United States Bankruptcy Code to allow the company to, among other things, restructure its capital structure and reorganize its business, including its environmental legacy issues," according to Tronox 's quarterly earnings report.

> Companies don't like to preannounce bankruptcy because it scares off shareholders, whose holdings often get wiped out in Chapter 11.

Thus, we get last week's worst-ever beagle: Tronox, down 66 percent to close at 33 cents.

Rosenfeld Opp. Decl., Ex. 8.

As the bad news was revealed, LaGrange Capital Management continued to purchase large blocks of Tronox stock. In fact, for the two weeks following the August 14, 2008, S&P announcement, LaGrange Capital Management purchased over 355,000 Tronox Class B shares. The following chart tracks the frequency and volume of LaGrange Capital Management's trading in Tronox stock and makes clear that, the worse things got for Tronox, the more stock LaGrange Capital Management purchased:



Tronox Purchases By LaGrange Capital Management
July 2, 2007 to July 14, 2009

On September 17, 2008, S&P again lowered its rating on Tronox, sending the Company's share price plummeting 17.1%. ¶66. On September 30, 2008 Tronox was delisted from the NYSE but continued to trade over the counter. *Id.* Ultimately, the true extent of Tronox's environmental liabilities finally came to light when it filed its bankruptcy petition. ¶67.

## III.   ARGUMENT

The PSLRA instructs district courts to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members." *Kuriakose v. Fed. Home Loan Mortg. Co*., 2008 U.S. Dist. LEXIS 95506 (S.D.N.Y. Nov. 24, 2008) citing 15 U.S.C. §78u-4(a)(3)(B)(i). The "most capable" plaintiff, and hence the lead plaintiff, is the one with the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23." *Sofran v. Labranche & Co*., 220 F.R.D. 398, 402 (S.D.N.Y. 2004) (citing *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002)). In appointing a lead plaintiff to represent the class, the Court has an "ultimate obligation to appoint as lead plaintiff the member or members of the purported plaintiff class who are 'most capable of representing the interests of the class members.'" *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co*., 229 F.R.D. 395, 408 (S.D.N.Y. 2004).

At first blush, LaGrange Capital Management appears to possess a larger financial interest than Alaska. However, the PSLRA "does not permit courts simply to 'presume' that the movant with 'the largest financial interest in the relief sought by the class' satisfies the typicality and adequacy requirements." *In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001). "[A] movant's financial interest is just a beginning point, and courts acknowledge that they must also consider the movant's ability and willingness to adequately represent the class." *In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 377 (E.D. Va. 2003); *see also Cavanaugh*, 306 F.3d at

731 (finding that if a movant with the largest financial interest does not satisfy the typicality and adequacy requirements, the court must look to other movants).

Here, LaGrange Capital Management does not meet the PSLRA's lead plaintiff requirements. First, because LaGrange only began acquiring Tronox shares *after* defendants' fraud began to be revealed, defendants will persuasively argue that these hedge funds are neither typical nor adequate to serve as lead plaintiff.  Second, as an asset manager which makes purchases of securities on behalf of its clients, LaGrange Capital Management lacks Article III standing.  *See W.R. Huff* at 111; *see also Baydale*, 2009 U.S. Dist. LEXIS 71668, at *7.  Third, appointing a lead plaintiff comprised of secretive offshore and domestic hedge funds would subject the class to unnecessary risk.[8]  As such, LaGrange Capital Management's motion should be denied.

## A.    LaGrange Capital Management Should Not Be Appointed Lead Plaintiff

### 1.    LaGrange Capital Management's Atypical Trading Pattern Subjects It to Unique Defenses

To satisfy Rule 23's typicality requirement, a class representative's injuries must arise from the same event or course of conduct giving rise to the claims of other class members and must be based on the same legal theory.  *See, e.g., Reiger v. Altris Software, Inc.*, 1998 U.S. Dist. LEXIS 14705, at *9-*10 (S.D. Cal. 1998).  However, continuing to purchase stock after the revelation of fraudulent information subjects a plaintiff to unique defenses and precludes that plaintiff from serving as a representative party.  *See Gary Plastic*, 903 F.2d at 180 (affirming denial of class certification after district court found class representative inadequate "since its claim is subject to

---

[8]    The Fire and Police Grouping should also not be appointed lead plaintiff since it has suffered a substantially smaller loss than that suffered by Alaska.

several unique defenses including its continued purchases of CDs through Merrill despite having notice of, and having investigated, the alleged fraud").

To illustrate, the LaGrange Capital Management did not begin to purchase any shares of Tronox stock until *after* the truth concerning Tronox's environmental problems began to be disclosed to the market. *Compare* Docket #19-2 (LaGrange Capital Management Certification) *with* Complaint, at ¶¶61-62. Following the July 11, 2007, revelation that the Company had "failed to disclose the full scope of the Company's environmental liabilities" (¶60), *LaGrange Capital Management purchased over 2 million Tronox shares with the knowledge that defendants had misrepresented Tronox's environmental liabilities*. In so doing, LaGrange Capital Management "engage[d] in transactions far beyond the scope of what a typical investor contemplates." *In re Microstrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 436-37 (E.D. Va. 2000). This trading pattern "subject[s] [it to] unique defenses involving its [] purchases after a potential corrective disclosure, affecting issues of reliance and causation." *See City Pension Fund for Firefighters and Police Officers in the City of Miami Beach v. Aracruz Cellulose S.A., et al.*, Case No. 08-23317-CIV-LENARD, slip op. at 11 (S.D. Fla. Aug. 7, 2009) (Rosenfeld Opp. Decl., Ex. 9). To appoint LaGrange Capital Management as the sole lead plaintiff here would thus subject the class to unnecessary risk, as defendants will persuasively argue that this trading activity renders LaGrange Capital Management inadequate and atypical. *Id.*; *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 310 (S.D. Ohio 2005).



The fact that LaGrange Capital Management is "subject to" "unique defenses" would cause substantial prejudice to the class. *See Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 136 (S.D.N.Y. 2007) ("it has been recognized that a 'named plaintiff who is subject to an arguable defense of non-reliance on the market has been held subject to a unique defense, and therefore, atypical of the class under Rule 23(a)(3)'"); *In re Harcourt Brace Jovanovich, Inc. Sec. Litig.*, 838 F. Supp. 109, 113 (S.D.N.Y. 1993) (same). No doubt LaGrange Capital Management will attempt to downplay the risk to the Class. However, this trading activity will certainly be exploited by capable defense counsel as "[t]he PSLRA . . . provides that we ask simply whether [a movant] *is likely to be* 'subject to' [unique defenses] . . . [not that] the defense is likely to succeed." *In re Bally Total Fitness Sec. Litig.*, 2005 U.S. Dist. LEXIS 6243, at *19 (N.D. Ill. 2005); *see also In re Enron Corp. Sec. Litig.*, 206 F.R.D.

- 11 -

427, 455-56 (S.D. Tex. 2002) (declining to appoint lead plaintiff with the largest losses when *potential* unique defense conflicts could endanger the class).

The situation at bar is akin to that faced by Judge Algenon L. Marbley in *Cardinal Health*, 226 F.R.D. 298, where the court disqualified the State of New Jersey, Department of Treasury, Division of Investment as the presumptive lead plaintiff because its purchases of Cardinal Health coincided with the Company's revelation of the fraud. As the *Cardinal Health* court explained:

> [c]ompeting movants have argued that New Jersey began buying Cardinal at almost exactly the same time that Cardinal Health began to disclose publicly the ongoing investigations. The timing of New Jersey's purchases undermines any causal nexus between the Defendants' alleged misrepresentation and the resulting injury. It will be difficult to argue that the presumptive Lead Plaintiff incurred the vast bulk of its injury after Cardinal acknowledged that its accounting methodologies were under investigation. New Jersey's trading patterns will make it susceptible to claims that New Jersey did not rely on the Defendants' alleged misrepresentations when purchasing Cardinal stock. Thus, the Court finds the presumption of typicality and adequacy rebutted.

*Id.* at 310.

Similarly, in *Aracruz*, Judge Joan Lenard considered whether a lead plaintiff movant could serve as lead plaintiff when it did not begin to purchase shares until after the fraud first began to be disclosed, and continued to purchase shares until the end of the class period. The court found

> that the presumption that Laver is the most adequate plaintiff is successfully rebutted by evidence that its atypical trading may expose the class to unique defenses. It is likely that Laver will be subject to unique defenses involving its ADR purchases after a potential corrective disclosure, affecting issues of reliance and causation.

*Aracruz*, No. 08-23317-CIV-LENARD, slip op. at 11 (Rosenfeld Opp. Decl., Ex. 9).

Here, just as in *Cardinal Health* and *Aracruz*, LaGrange Capital Management's trading patterns make it susceptible to claims that it did not rely on the defendants' misrepresentations when

it purchased Tronox shares.[9]  Accordingly, LaGrange Capital Management should not be appointed as lead plaintiff.

### 2.    LaGrange Capital Management Lacks Standing

LaGrange Capital Management also lacks the necessary Article III standing to pursue the claims at issue here, let alone be appointed the sole plaintiff to lead this action.  The Second Circuit recently addressed whether an entity, such as LaGrange Capital Management, had constitutional standing to sue on behalf of the funds it was affiliated with.  *W.R. Huff*, 549 F.3d 100.  In *Huff*, defendants challenged Huff Asset Management's constitutional standing to sue on behalf of the funds it managed.  The district court held that Huff Asset Management's status as an asset manager with attorney-in-fact authority satisfied the requirements of constitutional standing.  However, the Second Circuit reversed, noting that "Huff's power-of-attorney" "does not confer a legal title to the claims it brings."  549 F.3d at 108-09.  "While Huff enjoys the authority to make some decisions concerning litigation, it does not have an ownership stake in any claims its clients might pursue against defendants.'"  *Id*.  This "cannot serve as a basis for Article III standing."  *Id*.

Subsequent to *Huff*, Judge William H. Pauley III rejected the appointment of an asset manager, even though it claimed losses 20 times larger than the next movant, a Taft-Hartley fund.  In *Baydale v. Am. Express Co.*, 2009 U.S. Dist. LEXIS 71668, at *9 (S.D.N.Y. Aug. 14, 2009), Judge Pauley refused to appoint the asset manager because it was "'***possible*** that issues about a movant's

---

[9]    The trading activity of LaGrange Capital Management also subjects it to unique loss causation defenses.  *See, e.g.*, *Bally Total Fitness*, 2005 U.S. Dist. LEXIS 6243, at *19 (plaintiff inadequate when "the time and attention [it] would be required to devote to the loss causation issue . . . would distract it from the claims of the rest of the class"); *In re Goodyear Tire & Rubber Co. Sec. Litig.*, 2004 WL 3314943, at *4 (N.D. Ohio 2004) (lead plaintiff candidates inadequate when they would likely face motion to dismiss for lack of loss causation); *In re Carreker Corp. Sec. Litig.*, No. 3:03-CV-0250-M, 2003 U.S. Dist. LEXIS 25988, at *8-9 (N.D. Tex. Aug. 14, 2003) (same).

standing and authority "could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal'" Moreover, just as LaGrange Capital Management includes offshore partnerships formed and subject to foreign laws, the asset manager rejected by Judge Pauley in *American Express* was a foreign entity which "raises complex and novel issues of law which would require extensive factual and foreign legal analysis. Such a diversion would be a needless litigation sideshow." *Id.*

Judge Pauley also addressed an asset manager's standing to serve as a lead plaintiff in the recent *SLM* securities litigation. In *SLM*, Judge Pauley was compelled – in the middle of that litigation – to revisit the Article III standing issue with respect to Westchester Capital Management because of the intervening *Huff* decision. Applying *Huff*, the Court removed Westchester as lead plaintiff, explaining that "*Huff* now makes clear that Westchester Capital did not have Article III standing at the time this Court appointed it lead plaintiff. . . . Therefore, Westchester Capital no longer satisfies the adequacy or typicality requirement – it faces unique legal issues that other class members do not." *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 116 (S.D.N.Y. 2009). Ultimately, the Court noted the danger to the class and removed the asset manager as lead plaintiff because "[t]hat uncertainty requires this Court to proceed with caution." *Id.*

Similarly, in *In re IMAX Secs. Litig.*, 2009 U.S. Dist. LEXIS 58219 (S.D.N.Y. June 29, 2009), Judge Naomi Buchwald was compelled to re-evaluate whether or not to allow Westchester Capital to continue to serve as lead plaintiff in a separate securities class action. Relying on *Huff*, Judge Buchwald found that Westchester "'faces unique legal issues that other class members do not,'" and, despite Westchester's claims that it had the requisite authority to assert claims at issue in the action, Judge Buchwald removed Westchester as lead plaintiff, noting that "[w]ere we to permit it to continue as lead plaintiff, it is possible that these issues could ultimately severely prejudice the

class, either at the class certification stage or on some subsequent appeal. There seems little reason for us to subject the class members to such a risk." *IMAX*, 2009 U.S. Dist. LEXIS 58219, *11; *see also Cromer Finance Ltd. v. Berger*, 205 F.R.D. 113, 123 (S.D.N.Y. 2001) ("When a defense that is unique to a class representative threatens to dominate or even interfere with that plaintiff's ability to press the claims common to the class, then that threat must be analyzed with care.").

Like the asset managers in *Huff*, *American Express*, *Sallie Mae* and *IMAX*, LaGrange Capital Management failed to make a timely showing that it possessed the requisite "injury-in-fact" and constitutional standing required to pursue the claims in the matter. In fact, little is known about LaGrange Capital Management other than it "manage[s] private investment funds exclusively for qualified investors." *See* Rosenfeld Opp. Decl., Ex 3. LaGrange Capital Management should not be appointed as lead plaintiff. *See In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 504 (S.D.N.Y. 1996) ("[A] plaintiff may not use the procedural device of a class action to bootstrap himself into standing he lacks under the express terms of the substantive law.").

### 3. LaGrange Capital Management Should Not Be Charged with Representing the Interests of the Class

Because of their convoluted and secretive corporate structures and atypical trading patterns, courts reject hedge fund applicants as class representatives. *See, e.g., In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427 (E.D. Va. 2000); *In re Bank One S'holders Class Actions*, 96 F. Supp. 2d 780, 783-84 (N.D. Ill. 2000) (holding that an investment manager hedge fund with the largest aggregate losses was not the most adequate plaintiff because of, among other things, its trading pattern). In denying the lead plaintiff motion of a movant like LaGrange Capital Management, Judge Marbley reasoned that in *Cardinal Health* "First New York may not be the most adequate plaintiff because of its complex corporate structure, [and] "its status as a private investing firm, rather than a pension fund." 226 F.R.D. at 311. Here, too, "the putative class may not be best

served" by having its titular head a group of entities whose complex corporate structure renders it inadequate.[10]  *Id.*; *see, e.g., In re Bank One S'holders Class Actions*, 96 F. Supp. 2d 780, 784 (N.D. Ill. 2000) (rejecting hedge fund as lead plaintiff); *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 439-35 (E.D. Va. 2000) (rejecting private investment fund due to "its manner of business").

LaGrange Capital Management asks this Court to appoint it lead plaintiff.  Yet, it has provided no explanation as to its connection with a number of other related entities and/or individuals, including LaGrange Capital Administration, LaGrange Capital Management, L.L.C., and Frank LaGrange Johnson.  Nor has it explained (1) how this convoluted and secretive structure is organized; (2) on what authority its constituent members are seeking appointment as lead plaintiff; and (3) why LaGrange Capital Management seeks a fiduciary role in this litigation.  *See Smajlaj v. Brocade Comms. Sys. Inc., et al.*, 2006 U.S. Dist. LEXIS 97618, at *12 (N.D. Cal. 2006) (refusing to appoint a hedge fund as lead plaintiff, finding "too many questions surrounding [fund's] standing, authority, transparency, and structure that may give rise to unique defenses and are atypical of the class as a whole"); *see also* Rosenfeld Opp. Decl., Ex. 12 (password-protected homepage for hedge fund's secretive website).  These concerns should not be ignored, as asset managers like LaGrange Capital Management have repeatedly submitted sworn certifications and/or filed complaints in other securities class actions expressly stating their willingness to serve as lead plaintiff, only to then suddenly (or otherwise inexplicably) withdraw from those cases:

- *Technical Olympics* – Hedge fund Diamondback Capital Management, LLC withdrew as lead plaintiff and abandoned the class, claiming that continuing to serve as lead plaintiff "could be detrimental to Diamondback's overall business."  *See* Rosenfeld Opp. Decl., Ex. 13.

---

[10]     One of LaGrange Capital Management's hedge funds appears to be located in and operates out of the Cayman Islands.  *See* Rosenfeld Opp. Decl., Ex. 10.  Many "suspect[] the Cayman Islands, America's principal offshore centre, of housing tax evaders."  *Id.*, Ex. 11 at *2.

- *Halliburton* – A private investor (Private Asset Management) simply withdrew as Lead Plaintiff after it negotiated a settlement fund equal to less than 1% of damages, half of which was to go to fees and expenses. *See Moore v. Halliburton Co*., No. 3:02-CV-1152-M, 2004 WL 2092019 (N.D. Tex. Sept. 9, 2004).

- *IBP* – Tiedemann Investment Group withdrew as lead plaintiff after being proffered as a lead plaintiff in *In re IBP, Inc. Sec. Litig.*, No. CIV 01-4031 (D.S.D.).

- *Amdocs* – Excalibur Management Corp. suddenly and without explanation withdrew its lead plaintiff motion in *Chambers v. Amdocs Ltd.*, No. 4:02 CV 950 (E.D. Mo.), despite the fact that Excalibur had the largest claimed loss of any lead plaintiff applicant.

- *Alkermes* – In *Bennett v. Alkermes, Inc.*, 1:03-CV-12091 (RCL) (D. Mass.), foreign financial advisor Danske Capital suddenly withdrew its lead plaintiff motion when challenged as to its *bona fides*, despite having more than 15 times the loss of the next largest lead plaintiff movant.

- *In re Williams Inc. Secs. Litig.* – After over two years of litigation, private investor HGK Asset Management withdrew from the litigation (*In re Williams Secs. Litig.*, Case No. 02-cv-72-H(M) (N.D. Okla.)) on the verge of class certification. It took the court approximately two months to find another replacement lead plaintiff.

As detailed above, hedge funds such as LaGrange regularly withdraw from securities class actions such as this when asked to appear for deposition or produce documents because of their aversion to public scrutiny. The Court cannot afford to run the risk of appointing LaGrange Capital Management as lead plaintiff only to have it later withdraw when faced with discovery. *See, e.g.*, Jane J. Kim, "Digging for Hedge-Fund Dirt," *The Wall Street Journal*, Aug. 8, 2005, at C1 (describing entities like LaGrange Capital Management as "secretive investment vehicles") (attached as Ex. 14 to the Rosenfeld Opp. Decl.). Such an event would throw the case into turmoil, requiring the location and appointment of a new lead plaintiff and new lead counsel – proceedings that take time and cause delay, especially if new lead counsel must get up to speed on the case. *See, e.g., In re Neopharm, Inc. Sec. Litig.*, No. 02 C 2976, 2004 U.S. Dist. LEXIS 5814, at *10 (N.D. Ill. Apr. 7, 2004) (discussing the "delay" and "uncertainty" caused by a sole lead plaintiff's withdrawal).

- 17 -

There can be no doubt that the appointment of the LaGrange Capital Management would give defendants a tempting prized target to attack on class certification and again at trial. To appoint LaGrange Capital Management would have potentially disastrous effects for the class by prejudicing the class's case in front of a jury and undermining the ability of that (impaired) lead plaintiff to negotiate vigorously on behalf of the class. *Id*. at *9-*10 (N.D. Ill. 2004). It makes little sense to expose any class to this risk where, as here, Alaska – a viable and typical institutional investor – stands ready and willing to serve as a lead plaintiff and its appointment will insulate the class from such threats.

### 4. Alaska Should Be Permitted to Take Discovery of the LaGrange Entities

The PSLRA expressly provides that a class member may conduct discovery into the adequacy of other movants upon the showing of a reasonable basis to do so. *See* 15 U.S.C. §78u-4(a)(3)(B)(iv). *See, e.g., In re The Reserve Fund Sec. and Derivative Litig.*, Civ. No. 09 MD 2011(PGG) slip op. (S.D.N.Y. Aug. 5, 2009) (Rosenfeld Opp. Decl., Ex. 15) (ordering discovery of competing lead plaintiff movant); *see In re Michaels Stores Inc. Secs. Litig.*, No. 03-cv-0246-M, slip op. at 2 (N.D. Tex. Oct. 24, 2003) (Rosenfeld Opp. Decl., Ex. 16) (permitting discovery "to develop and present evidence, if such existed, to rebut the presumption").

Due to concerns about the adequacy of an asset manager movant to effectively meet the requirements of Rule 23, in *Network Associates*, Judge William Alsup, granted discovery which he ultimately "prove[d] illuminating" in rejecting certain movants as lead plaintiffs. *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999). Here, LaGrange Capital Management's atypical trading strategy and convoluted corporate structure raise many questions while providing the Court with few answers. Thus, to the extent the Court considers appointing LaGrange Capital Management, limited discovery should be permitted to enable the Court to have

- 18 -

some assurance that the class will not be prejudiced by its appointment. *See* 15 U.S.C. §78u-4(a)(3)(B)(iv); *see also Sakhrani v. Brightpoint, Inc.*, 78 F. Supp. 2d 845, 854-55 (S.D. Ind. 1999) (ordering discovery to test movant's adequacy to serve as lead plaintiff). At a minimum, the Court should direct Frank LaGrange Johnson to sit for a deposition to address his trading practices, standing, and LaGrange Capital Management's ability to serve as a class representative in this complex multi-million dollar class action.

### B.     Alaska Should Be Appointed Lead Plaintiff

There can be no question that Alaska *prima facie* satisfies the requirements of Rule 23. *See generally Cendant*, 264 F.3d at 264 (noting that institutional investors will "more often than not" satisfy the requirements of Rule 23). With approximately $1.1 billion in assets and over 7,500 participants, Alaska and its fiduciaries are accustomed to acting for the benefit of others and directing outside lawyers. *See Naiditch v. Applied Micro Circuits Corp.*, 2001 U.S. Dist. LEXIS 21374, *8 (S.D. Cal. 2001).

As a sophisticated pension fund with a financial interest in the outcome of this litigation exceeding $1.1 million, Alaska has made the required threshold Rule 23 showing and demonstrated that it will work effectively and efficiently to maximize the recovery for all class members. *See* Docket #25-1 & 2. In the end, Alaska is the presumptively "most adequate plaintiff" and should be appointed as lead plaintiff.

### C.     The Remaining Motions Should Be Denied

The Fire and Police Grouping also seeks appointment as lead plaintiff. However, it claims far smaller losses than Alaska. *See Naiditch v. Applied Micro Circuits Corp.*, 2001 U.S. Dist.

LEXIS 21374, at *8 (S.D. Cal. 2001).  Accordingly, its motion should not even be considered.[11]  *See*

*Cavanaugh*, 306 F.3d at 732 ("The statutory process is sequential:  The court must examine potential

lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and

continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or

atypical.").

## IV.    CONCLUSION

For the reasons stated above, Alaska respectfully submits that it should be appointed lead

plaintiff and its choice of counsel should be approved.  All other motions should be denied.

DATED:  September 21, 2009                    Respectfully submitted,

                                             COUGHLIN STOIA GELLER
                                               RUDMAN & ROBBINS LLP
                                             SAMUEL H. RUDMAN
                                             DAVID A. ROSENFELD
                                             MARIO ALBA JR.
                                             JARRETT S. CHARO


                                                    s/ DAVID A. ROSENFELD
                                             DAVID A. ROSENFELD

                                             58 South Service Road, Suite 200
                                             Melville, NY  11747
                                             Telephone:  631/367-7100
                                             631/367-1173 (fax)

---

[11]    To the extent it is argued that a separate lead plaintiff should be appointed to represent bondholders, such a contention is misplaced.  A lead plaintiff does not have to possess standing to sue on every claim, and may add additional plaintiffs with standing to assist in the prosecution of the action.  *See*, *e.g.*, *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004) ("district courts need not appoint "a lead plaintiff with standing to sue on every available cause of action").

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
BRIAN O. O'MARA
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for Plaintiffs

S:\CasesSD\Tronox\Lead Plantiff\BRF00061862_LP Opp.doc

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 21, 2009, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail

addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have

mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF

participants indicated on the attached Manual Notice List, and to:

D. Seamus Kaskela                                    Curtis V. Trinko
David M. Promisloff                                   Wai K. Chan
Steven D. Resnick                                      Law Offices of Curtis V. Trinko LLP
Barroway Topaz Kessler Meltzer & Check, LLP    16 West 46th Street, Seventh Floor
280 King of Prussia Road                            New York, NY  10036
Radnor, PA  19087


I certify under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.  Executed on September 21, 2009.

s/ DAVID A. ROSENFELD
DAVID A. ROSENFELD

COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

E-mail:  drosenfeld@csgrr.com

# Mailing Information for a Case 1:09-cv-06220-SAS

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jay B. Kasner**
  jkasner@skadden.com

- **Gregory Mark Nespole**
  nespole@whafh.com

- **Matthew David Parrott**
  m.parrott@kattenlaw.com

- **Daniel Brett Rehns**
  drehns@cohenmilstein.com,tgraham@cohenmilstein.com,efilings@cohenmilstein.com

- **David Avi Rosenfeld**
  drosenfeld@csgrr.com,e_file_ny@csgrr.com

- **Samuel Howard Rudman**
  srudman@csgrr.com,e_file_ny@csgrr.com,jcharo@csgrr.com

- **Susan Leslie Saltzstein**
  ssaltzst@skadden.com

- **Gerald Harlan Silk**
  jerry@blbglaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Joni S. Jacobsen**
Katten, Muchin, Zavis
525 West Monroe Street
Suite 1600
Chicago, IL 60661

**David H. Kistenbroker**
Katten Muchin Rosenman LLP (Chicago)
525 West Monroe Street
Chicago, IL 60661