**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALASKA ELECTRICAL PENSION FUND, on Behalf of Themselves and All Others Similarly Situated;<br><br>Plaintiff,<br><br>v.<br><br>KERR-MCGEE CORPORATION, et al.,<br><br>Defendants. | No. 09-CV-6220-SAS<br><br>ECF CASE |

[caption continues on next page]

**THE LaGRANGE PARTNERSHIPS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL, AND CONSOLIDATION OF RELATED CASES**

| | |
|---|---|
| OLIVER SHI, on Behalf of Himself and All Others Similarly Situated;<br><br>Plaintiff,<br><br>v.<br><br>KERR-MCGEE CORPORATION, et al.,<br><br>Defendants. | No. 09-CV-6490-SAS |
| MONTI BARNES, Individually and on Behalf of All Others Similarly Situated;<br><br>Plaintiff,<br><br>v.<br><br>KERR-MCGEE CORPORATION, et al.,<br><br>Defendants. | No. 09-CV-7116-SAS |

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ........ 1

II. ARGUMENT ........ 3

A. LaGrange's Claims Are Typical And There Are No Adequacy Issues ........ 3

B. The LaGrange Partnerships Are Not Investment Advisors ........ 8

III. CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**CASES** **Page**


*Baydale v. Am. Express Co.*
2009 U.S. Dist. LEXIS 71668 (S.D.N.Y. Aug. 14, 2009) ..... 9, 10

*Bovee v. Coopers & Lybrand*
216 F.R.D. 596 (S.D. Ohio 2003) ..... 4

*Eastwood Enter. v. Farha*
2008 WL 687351 (M.D. Fla. Mar. 11, 2008) ..... 10

*Ferrari v. Impath, Inc.*
2004 WL 1637053 (S.D.N.Y. July 20, 2004) ..... 10

*Fox v. Equimark Corp.*
1994 WL 560994 (W.D. Pa. July 18, 1994) ..... 6

*Gary Plastics Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*
903 F.2d 176 (2d Cir. 1989) ..... 8

*In re Arakis Energy Corp. Sec. Litig.*
1999 WL 1021819 (E.D.N.Y. Apr. 23, 1999) ..... 6

*In re BearingPoint, Inc. Sec. Litig.*
232 F.R.D. 534 (E.D. Va. 2006) ..... 5

*In re Cardinal Health, Inc. Sec. Litig.*
226 F.R.D. 298 (S.D. Ohio 2005) ..... 7

*In re Comverse Tech., Inc. Sec. Litig.*
2008 WL 820015 (E.D.N.Y. Mar. 25, 2008) ..... 5

*In re Consumers Power Co. Sec. Litig.*
105 F.R.D. 583 (E.D. Mich. 1985) ..... 6

*In re Dynergy, Inc. Sec. Litig.*
226 F.R.D. 263 (S.D. Tex. 2004) ..... 6

*In re Elec. Data Sys., Corp. Sec. Litig.*
226 F.R.D. 559 (E.D. Tex. 2005) ..... 6

*In re Frontier Ins. Group. Inc. Sec. Litig.*
172 F.R.D. 31 (E.D.N.Y. 1997) ..... 6

*In re Honeywell Int'l, Inc.*
211 F.R.D. 255 (D.N.J. 2002) ..... 6

**TABLE OF AUTHORITIES (Cont'd.)**

**Page**

*In re IMAX Sec. Litig.*
2009 U.S. Dist. LEXIS 58219 (S.D.N.Y. June 29, 2009) .......... 9

*In re Indep. Energy Holdings PLC Sec. Litig.*
210 F.R.D. 476 (S.D.N.Y. 2002) .......... 6

*In re Lowen Group, Inc. Sec. Litig.*
233 F.R.D. 154 (E.D. Pa. 2005) .......... 6

*In re Microstrategy Inc., Sec. Litig.*
110 F.Supp.2d 427 n.23 (E.D. Va. 2000) .......... 8

*In re SLM Corp. Sec. Litig.*
258 F.R.D. 112 (S.D.N.Y. 2009) .......... 9

*Katz v. Comdisco, Inc.*
117 F.R.D. 403 (N.D. Ill. 1987) .......... 6

*Lehocky v. Tidel Techs., Inc.*
220 F.R.D. 491 (S.D. Tex. 2004) .......... 6

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*
549 F.3d 100 (2d Cir. 2008) .......... 2, 8, 9

**STATUTES**

15 U.S.C. §78j(b) .......... 8

15 U.S.C. §78u-4(a)(3)(B)(iii)(II) .......... 8

15 U.S.C. §78u-4(a)(3)(B)(iv) .......... 10

**OTHER AUTHORITIES**

Herbert & Alba Conte, 7 *Newberg On Class Actions* §22.26 .......... 4

The LaGrange Partnerships respectfully submit this reply memorandum in further support of their Motion for Appointment as Lead Plaintiff, Approval of Selection of Lead and Liaison Counsel and Consolidation of Related Cases, and in reply to the opposition brief of the Alaska Electrical Pension Fund ("Alaska").

## I. PRELIMINARY STATEMENT

In a brazen attempt to wrest control of this litigation from an institutional investor with a financial interest more than five times larger than its own, Alaska challenges the typicality of the LaGrange Partnerships' claims and alleges that they would be inadequate class representatives. For the reasons discussed below, the LaGrange Partnerships are the appropriate Lead Plaintiff under the PSLRA and should be appointed.

Alaska makes three arguments in opposition to LaGrange's motion. First, it claims that LaGrange engaged in atypical trading, purchasing after announcements of negative information about Tronox, Inc.'s environmental liabilities. Yet LaGrange's purchases were all "long" trades based on publicly available information and in reliance on the integrity of the market price for Tronox stock. *See* Declaration of Frank LaGrange Johnson ("Johnson Decl."), filed herewith. There is nothing "atypical" about an investor purchasing shares on the open market where some adverse information has entered the market but there is otherwise no indication that material misstatements have been made. Alaska's readiness to jettison the claims of class members who, like LaGrange, purchased on and after July 2007, the middle of the Class Period which Alaska alleged in its own Complaint, is reason to find Alaska inadequate, not LaGrange. As Alaska has alleged, the truth regarding the magnitude of Tronox's environmental and tort liabilities was not known publicly until January 12, 2009 when Tronox filed for bankruptcy. Alaska has presented no "proof," as required by the PSLRA, that LaGrange is an atypical investor or did not rely on

publicly available information. To the contrary, LaGrange's purchases are fully consistent with hundreds if not thousands of similarly situated class members and there is nothing about these purchases which will make them the focus of the case.

Second, again without proof, Alaska asserts that LaGrange is an investment advisor barred from bringing claims under *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008). Alaska is wrong. The LaGrange Partnerships are investment partnerships which themselves purchased Tronox securities and suffered the losses reflected on their Certificate. Johnson Decl. ¶¶2-3. They incurred injury-in-fact. There is no investment advisor claim here and no issue about LaGrange's standing.

Third, Alaska attempts to raise a negative connotation by referring to LaGrange as a "secretive" hedge fund operating in a "shadowy" world. Colorful – and inaccurate – wordplay falls woefully short of the "proof" required by the PSLRA that the presumptive lead plaintiff is incapable of adequately representing the class. LaGrange consists of two partnerships formed for the purpose of investing. There is nothing mysterious or nefarious about this. Moreover, the partnerships are hardly "secret." Alaska has obtained from the Internet an abundance of information about LaGrange, including several LaGrange SEC filings. This does not bespeak undue secrecy. Alaska goes so far as to proffer rank speculation that LaGrange will someday want to withdraw as lead plaintiff based on a handful of examples Alaska has dredged up, out of hundreds of PSLRA class actions, where other, unrelated entities chose not to proceed. This is the type of innuendo which the PSLRA was designed to do away with through its requirement that there be "proof" of inadequacy. There is no proof here. Alaska's surmise about a theoretical withdrawal of LaGrange is utterly baseless. Indeed, Mr. Johnson has declared that LaGrange is fully committed to vigorously litigating this case. Johnson Decl. ¶5. Moreover,

because Alaska offers nothing of substance in opposition to LaGrange's motion, its request for unnecessary discovery should be denied.

LaGrange has the largest financial interest in this case, its claims are typical of the claims of the class members and it will provide more than adequate representation. There is no conflict between LaGrange and other class members and it has retained competent counsel. Accordingly, LaGrange's motion to be appointed lead plaintiff should be granted and its counsel, Gold Bennett Cera & Sidener LLP, approved as lead counsel.

## II. ARGUMENT

### A. LaGrange's Claims Are Typical And There Are No Adequacy Issues

Alaska argues that LaGrange's Tronox purchases reflect "atypical" trading because many occurred after issuance of supposedly partial corrective disclosures concerning Tronox's environmental liabilities. Specifically, Alaska argues that because LaGrange purchased all of its shares after Tronox's July 11, 2007 disclosure, it cannot plead reliance on the market price of Tronox stock based on the failure to disclose environmental liabilities. Alaska's suppositions are insupportable. As the Johnson Declaration makes clear, LaGrange's purchases were based on publicly available information, and in the belief that the market price of Tronox shares accurately reflected all publicly available information about the company. Johnson Decl. ¶4. LaGrange, like the market as a whole, had no knowledge about the true extent of Tronox's environmental and tort liabilities prior to the company's bankruptcy. *Id.*

Furthermore, Alaska's own complaint rebuts its argument. LaGrange did indeed purchase shares after certain disclosures that contained some negative information, including matters unrelated to the subsequent revelation of massive, previously undisclosed environmental

remediation and tort liabilities, which is the essence of the fraud here.[1] Alaska's wild assertion that LaGrange purchased with knowledge of the fraud is clearly false. Alaska Br. at 6, 10. Johnson Decl. ¶4. All of the complaints on file, including Alaska's, allege a Class Period of November 28, 2005 through January 12, 2009. *See Alaska Electrical Pension Fund v. Kerr-McGee Corp.*, No. 09-cv-6220 (SAS) (S.D.N.Y. July 10, 2009), Doc. No. 1, at ¶1.[2] Alaska alleges in its Complaint that the fraud was not known until Tronox filed for bankruptcy on January 12, 2009:

> **The true extent of Tronox's environmental liabilities finally came to light when it filed its bankruptcy petition**. In the petition and accompanying declarations, it was revealed that since the Spin-Off, Tronox had spent more than $118 million to satisfy the residual Legacy Liability obligations **and still faces hundreds of millions of dollars worth of additional claims related to the Legacy Liabilities**. **The bankruptcy petition also revealed to the public for the first time the hundreds of "secret sites" that Kerr-McGee, had known about long before the IPO**.

¶67 (emphasis added).

LaGrange's purchases raise no typicality issues or unique defenses because some occurred after Tronox's stock price was marginally deflated by certain disclosures. "[W]hen a complaint alleges an essential continuity of omissions or material misrepresentations, the claim of the class representative is considered typical for the class for the entire period from the date of the first objectionable report to the date of the full disclosure." *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 610 (S.D. Ohio 2003) (quoting Herbert & Alba Conte, 7 *Newberg On Class Actions* §22.26)).

---

1 Alaska's own submission contains no evidence which supports its assertion that the market was aware of Tronox's environmental liability fraud before January 12, 2009. *See, e.g.*, Rosenfeld Decl. Ex. 4 (no reference to environmental issues); Ex. 5 (headline of nine words with no discussion of environmental issues); Ex. 6 (no discussion of liabilities).

2 All citations hereinafter to "¶__" are to Alaska's Complaint.

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-1825 (NGG), 2008 WL 820015 (E.D.N.Y. Mar. 25, 2008) illustrates why Alaska's argument misses the mark. In *Comverse*, an unsuccessful lead plaintiff movant sought reconsideration of an order appointing the Menorah Group. *Id* at *1. It argued, as Alaska does here, that the Menorah Group could not adequately represent the class because it purchased only after Comverse partially disclosed the fraud. *Id.* at *2. The court ruled that the timing of the purchases did not render the Menorah Group inadequate for two principal reasons. *Id.* at *3. First, while recognizing that the lead plaintiff movant purchased after a partial disclosure, but before the stronger corrective disclosures, the court did not believe that the "unique defense" was "strong enough to create a real conflict of interest between Menorah Group and the members of the class who purchased Comverse shares before Comverse's March 14, 2006 press release." *Id.* Secondly, the court was not convinced that the partial disclosure defense was "a unique defense within the meaning of the PSLRA." *Id.* As stated by the court:

> There are undoubtedly many members of the class of plaintiffs who, like Menorah Group, purchased shares of Comverse only after the March 14, 2006 press release, and P&P does not argue that the class of plaintiffs should be defined so as to exclude such plaintiffs. Moreover, the fact that Menorah Group purchased shares of Comverse stock only after Comverse's March 14, 2006 press release does not suggest that it will not vigorously represent the interests of plaintiffs who purchased Comverse shares only before that press release. Menorah Group will recover nothing unless it proves that members of the class who purchased Comverse shares before the March 14, 2006 press release, like P&P, were harmed by Comverse's earlier false disclosures.

*Id.* 3.[3] The same rationale applies in this case. There can be no legitimate dispute that LaGrange, with a loss of more than $7 million, is highly motivated to prove the claims of all

---

[3] *See also In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 540 (E.D. Va. 2006) (plaintiff who purchased after adverse disclosure not atypical and certified as class representative).

class members. Johnson Decl. ¶5. LaGrange purchased Tronox shares based on the integrity of the market price and with no knowledge of fraud. Johnson Decl. ¶4. There are no typicality concerns or unique defenses.

Courts have repeatedly rejected the precise argument made by Alaska here. *See In re Lowen Group, Inc. Sec. Litig.*, 233 F.R.D. 154, 163 (E.D. Pa. 2005) (rejecting argument that class representatives who purchased all of their shares after a partial curative disclosure were subject to unique defenses); *In re Dynergy, Inc. Sec. Litig.*, 226 F.R.D. 263, 277 (S.D. Tex. 2004) ("purchases of stock by class representatives after negative announcements during the class period . . . do[es] not destroy typicality") (citation omitted); *In re Honeywell Int'l, Inc.*, 211 F.R.D. 255, 266-67 (D.N.J. 2002) (factual circumstances between purchasers at different points in the class period did not subject movant to unique defenses where "[p]laintiffs allege many statements made in furtherance of [a] single scheme"); *In re Elec. Data Sys., Corp. Sec. Litig.*, 226 F.R.D. 559, 565-566 (E.D. Tex. 2005); *Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 501-502 (S.D. Tex. 2004); *In re Arakis Energy Corp. Sec. Litig.*, No. 95-CV-3431, 1999 WL 1021819, at *6 (E.D.N.Y. Apr. 23, 1999); *In re Mut. Sav. Bank Sec. Litig.*, 166 F.R.D. 377, 383 (E.D. Mich. 1996); *Katz v. Comdisco, Inc.*, 117 F.R.D. 403, 410-411 (N.D. Ill. 1987); *In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583, 608 (E.D. Mich. 1985); *Fox v. Equimark Corp.*, Civ. A. No. 90-1504, 1994 WL 560994, at *4 (W.D. Pa. July 18, 1994).[4]

---

[4] Although this is not a class certification motion and adequacy and typicality are evaluated only "preliminarily" at this lead plaintiff stage, "[t]he rule barring certification of plaintiffs subject to unique defenses is not rigidly applied in this Circuit." *In re Frontier Ins. Group. Inc. Sec. Litig.*, 172 F.R.D. 31, 41 (E.D.N.Y. 1997) (citation and internal quotation marks omitted). This is particularly true where, as here, the "unique defense" is reliance-related. *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 484 (S.D.N.Y. 2002) (Scheindlin, J.) (where plaintiffs allegedly purchased based on non-public information, this Court held "While the extent of any non-reliance on [plaintiff's] part will certainly be a fact question to be decided at trial, it is unlikely to significantly shift the focus of the litigation to the detriment of the absent class members").

Alaska relies on *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298 (S.D. Ohio 2005) and *City Pension Fund for Firefighters and Police Officers in the City of Miami Beach v. Aracruz Cellulose S.A.*, No. 08-23317-CIV-Lenard (S.D. Fla. Aug. 7, 2009) (Rosenfeld Decl., Ex. 9). These cases are inapposite because the disclosures were significantly more revealing of fraud than anything involved here. In *Cardinal Health*, the revelations concerned an investigation into the company's accounting by the SEC and U.S. Attorney. This contrasts with announcements here about slightly increasing provisions for potential environmental claims, which were mixed with other unrelated financial information, some of which was also negative. The government investigations in *Cardinal Health* clearly signaled to investors that there was a material problem with the company's accounting. Here, it was not until the bankruptcy filing that "[t]he true extent of Tronox's environmental liabilities finally came to light." ¶67; *see also* Johnson Decl. ¶5 ("[A]t the time of Tronox's bankruptcy and the contemporaneous disclosure at that time of the full extent of its environmental and tort liabilities, I was stunned at the magnitude of the exposures . . ."). Clearly the disclosures in *Cardinal Health*, including possible criminal wrongdoing, were highly material and bear no resemblance to the comparatively innocuous announcements made by Tronox.[5]

In *Aracruz*, the complaint alleged the company issued false and misleading statements regarding its financial health while entering into undisclosed foreign currency derivative contracts. *Aracruz*, No. 08-23317-CIV-LENARD, slip. op. at 3 (Rosenfeld Decl., Ex. 9). After determining that lead plaintiff movant Laver had a slightly larger financial interest than the other

[5] The unsuccessful lead plaintiff movant in *Cardinal Health* also was found to have profited from sales of stock during the class period. Accordingly, it benefited from the fraudulent scheme. 226 F.R.D. at 310. Furthermore, the movant was in violation of the PSLRA's "professional plaintiff" restriction. *Id.* at 309. Based on all of these facts, not just issues concerning the timing of its trades, the court declined to appoint that movant as lead plaintiff.

movant, the court found that the presumption in Laver's favor was rebutted by its purchase of shares after a "partial disclosure" and because Laver was located in Brazil. *Id.* at 11. The "partial disclosure" was Aracruz's announcement that: (1) its exposure in financial derivatives had been "strongly affected" by the instability of the U.S. dollar; (2) the maximum loss volume on derivative transactions and total exposure may have exceeded the limits of the company's financial policy; and (3) the CFO and Investor Relations Officer resigned. *Id.* at 10. The disclosures in *Aracruz* were a powerful indicator of fraud. In this case, the LaGrange Partnerships did not purchase after the disclosure of a fraud, but after what appeared to be routine, albeit adverse, news which did not indicate the existence of any prior false statements.[6]

In the end, there is no proof of atypicality or inadequacy as required by the PSLRA. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). As there was very significant public trading in Tronox securities after July 11, 2007, it is clear that there is nothing atypical or unique about LaGrange's purchases and claims.

**B. <u>The LaGrange Partnerships Are Not Investment Advisors</u>**

Alaska asserts, without any basis in fact, that the LaGrange Partnerships are investment advisors. They are not. Rather, these entities are privately held investment partnerships. They directly made the investments at issue and accordingly have Article III standing to bring claims under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b). *Huff* and its progeny are irrelevant because those cases dealt with investment advisors who suffered no injury-in-fact and were therefore atypical and inadequate as potential class representatives. No

---

6 Alaska's other cases are similarly distinguishable. In *Gary Plastics Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 178 (2d Cir. 1989), the plaintiff continued to purchase the securities after learning of the defendant's misrepresentations. Furthermore, the plaintiff did not invoke a fraud-on-the-market theory. In *In re Microstrategy Inc., Sec. Litig.*, 110 F.Supp.2d 427, 437 n.23 (E.D. Va. 2000), the proposed lead plaintiff was subject to unique loss causation defenses because it disposed of all of its shares prior to the first partial curative disclosure.

such circumstance is present here.[7] *Huff*, 549 F.3d 100, was brought by an investment advisor that never claimed to beneficially own the stock but only "provided investment advice to its clients ..." *Id*. at 104. The investment advisor plaintiff in *Huff* "explicitly disclaim[ed] that it suffered an injury individually that is separate from its agency function." *Id*. Here, the LaGrange Partnerships have submitted a sworn certification attesting that they directly purchased Tronox securities and suffered an economic loss, *i.e.* "injury-in-fact," as a result of their purchases.[8] *See also* Johnson Decl. ¶2. Because the LaGrange Partnerships are not investment advisors, but private investment partnerships that directly owned Tronox shares and sustained massive losses, there is no question that they are proper lead plaintiffs with standing to sue.[9]

Alaska's opposition is not supported by *Baydale v. Am. Express Co.*, 2009 U.S. Dist. LEXIS 71668 (S.D.N.Y. Aug. 14, 2009). There the Court declined to appoint as lead plaintiff Lansforsakiringar Fondforvalting AB ("LFAB"), a Swedish money manager. LFAB did not dispute that it lacked legal title to or a proprietary interest in the claim, but instead sought to fall within an exception articulated in *Huff* for "third-party" standing, whereby an injured third party

---

[7] Alaska resorts to re-naming the LaGrange Partnerships "LaGrange Capital Management," an effort to create the false impression that the moving party is an investment advisor entity different from the partnerships that actually filed the motion papers. Alaska Br. at 1. This is sheer gamesmanship, which is elsewhere reflected in Alaska's reference to the results of an apparent Google search for "LaGrange Capital Partners" which turned up a Google entry stating that "LaGrange Capital Partners, L.P. is an investment partnership managing private investment funds exclusively for qualified investors ..." This Google entry has morphed in Alaska's brief into a misstated reference to "LaGrange Capital Management" (Alaska Br. at 2), again an apparently deliberate attempt to confuse the Court as to the identity of the moving party.

[8] Thus, Alaska's contention that the LaGrange Partnerships failed to make a timely showing of the requisite "injury-in-fact" is clearly wrong. Alaska Br. at 15.

[9] The decisions cited by Alaska involved motions by true investment advisors for lead plaintiff status and are thus readily distinguishable on their face. *See, e.g.*, *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 116 (S.D.N.Y. 2009) (Westchester Capital Management, an asset manager, removed post-*Huff* as lead plaintiff for lack of standing); *In re IMAX Sec. Litig.*, 2009 U.S. Dist. LEXIS 58219 (S.D.N.Y. June 29, 2009) (same).

must show some legal barrier to its ability to protect its own interests. LAFB relied on an expert in Swedish law to support its position, but the Court declined to delve into the novel issues of foreign law raised by the expert, referring to it as "a diversion [which] would be a needless litigation sideshow." Nothing remotely analogous is involved here. LaGrange Capital Partners LP, which sustained losses of more than $5 million, was formed and exists under the laws of Delaware and is doing business out of its office in New York City.[10] Unlike LAFB, the LaGrange Partnerships are not asset managers, but rather investment partnerships that purchased the shares in Tronox and suffered a huge loss. *Baydale* is plainly unavailing.

In sum, the LaGrange Partnerships purchased the securities of Tronox and sustained the losses identified in their Certificate of Plaintiff. They are not investment advisors and they have standing to sue.[11]

## III. <u>CONCLUSION</u>

For all the foregoing reasons, the LaGrange Partnerships should be appointed lead plaintiff and their selection of Gold Bennett Cera & Sidener LLP as lead counsel and Cohen Milstein Sellers & Toll PLLC as liaison counsel should be approved.

---

[10] Alaska seeks to tar LaGrange with the fact that one of the moving partnerships was formed and exists pursuant to the law of the Cayman Islands. Yet Alaska has identified no aspect of Cayman Islands law that would bar this entity from being appointed a lead plaintiff along with its related partnership, LaGrange Capital Partners, LP, a domestic entity which itself has a loss in excess of $5,000,000. Again, there is no proof of a valid legal impediment, only conjecture. This is insufficient.

[11] Discovery of the presumptive lead plaintiff is permitted only if a competing movant "first demonstrates a reasonable basis for finding the presumptively most adequate plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iv). Alaska has presented no "evidence" whatsoever suggesting that discovery is warranted. *See, e.g., Ferrari v. Impath, Inc.*, No. 03-civ-5667 (DAB), 2004 WL 1637053, at *7 (S.D.N.Y. July 20, 2004); *Eastwood Enter. v. Farha*, No. 07-civ-1940, 2008 WL 687351, at *3 (M.D. Fla. Mar. 11, 2008) (PSLRA allows discovery only in "limited circumstances" where a "reasonable basis" exists for claiming that the presumptive most adequate plaintiff cannot adequately represent the class).

Dated: September 25, 2009

Respectfully submitted,

**GOLD BENNETT CERA & SIDENER LLP**

By: /s/Solomon B. Cera
Solomon B. Cera (scera@gbcslaw.com)
(Admitted *Pro Hac Vice*)
Thomas C. Bright (tbright@gbcslaw.com)
(Admitted *Pro Hac Vice*)
595 Market Street, Suite 2300
San Francisco, California 94105
Tel: ( 415) 777-2230
Fax: (415) 777-5189

Attorneys for LaGrange Partnerships
Proposed Lead Counsel for the Class

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Christopher Lometti (clometti@cohenmilstein.com)
Daniel B. Rehns (drehns@cohenmilstein.com)
150 East 52nd Street, 30th Floor
New York, NY 10022
Tel: (212) 838-7797
Fax: (212) 838-7745

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Steven J. Toll (stoll@cohenmilstein.com)
1100 New York Ave, Suite 500 West
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

Proposed Liaison Counsel