**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                      :

IN RE TRONOX, INC. SECURITIES      :
LITIGATION

                      :

                      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

1:09-cv-06220-SAS

**ECF CASE**

**Electronically Filed**


### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS ANADARKO PETROLEUM CORPORATION'S AND KERR-MCGEE CORPORATION'S MOTION TO (A) DISMISS THE CONSOLIDATED AMENDED COMPLAINT AND (B) STRIKE CERTAIN ALLEGATIONS

SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Jay B. Kasner
Susan L. Saltzstein
Joseph A. Matteo
Four Times Square
New York, New York 10036
Tel: (212) 735-3000
Fax: (212) 735-2000

Attorneys for Defendants Anadarko
  Petroleum Corporation and Kerr-McGee
  Corporation

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF FACTS ...............................................................................................4

     A.   Plaintiffs ..............................................................................................4

     B.   KMG And "Project Focus" .................................................................5

     C.   KMG Determines to Concentrate on the E&P Business..........................6

     D.   Tronox Conducts An Initial Public Offering......................................6

     E.   Tronox Emerges as an Independent Company.....................................8

     F.   KMG Merges With a Subsidiary of Anadarko Petroleum Corporation....................8

ARGUMENT .................................................................................................................9

  I.   Plaintiffs Fail To State A Claim Against Anadarko ...........................................9

  II.   Plaintiffs Have Failed To State a Claim Under Section 10(b) Against KMG or Anadarko.................................................................................................10

     A.   Plaintiffs Have Failed To Allege a Misstatement ....................................10

     B.   Plaintiffs Have Not Adequately Alleged Reliance..................................13

     C.   Plaintiffs Have Not Adequately Alleged Scienter.................................14

     D.   Plaintiffs Cannot Allege That KMG's Distribution of Class B Shares Constituted a Purchase or Sale of Securities............................................22

  III.  Plaintiffs Have Failed To State a Claim Under Section 20(a) Against KMG or Anadarko.................................................................................................23

CONCLUSION..............................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*ATSI Communications v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)...........................................................................5, 10, 23, 24

*In re Adelphia Communications Corp. Securities & Derivative Litigation*,
    398 F. Supp. 2d 244 (S.D.N.Y. 2005).........................................................................23

*In re Aegon N.V. Securities Litigation*,
    2004 WL 1415973 (S.D.N.Y. June 23, 2004) .................................................15, 16, 17

*Amida Capital Management II, LLC v. Cerberus Capital Management, L.P.*,
    2009 WL 3787197 (S.D.N.Y. Nov. 10, 2009).................................................11, 12, 13

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009)............................................................................................5, 19

*In re AstraZeneca Securities Litigation*,
    559 F. Supp. 2d 453 (S.D.N.Y. 2008)...................................................................16, 19

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)................................................................................................3, 14

*Boguslavsky v. Kaplan*,
    159 F.3d 715 (2d Cir. 1998)........................................................................................24

*In re Bristol-Myers Squibb Securities Litigation*,
    312 F. Supp. 2d 549 (S.D.N.Y. 2004).........................................................................22

*CL Investments, L.P. v. Advanced Radio Telecom Corp.*,
    2000 WL 1868096 (Del. Ch. Dec. 15, 2000)..............................................................10

*Caiafa v. Sea Containers Ltd.*,
    525 F. Supp. 2d 398 (S.D.N.Y. 2007).........................................................................16

*California Public Employees Retirement System v. Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004)............................................................................17, 18, 21

*Camden Asset Management, L.P. v. Sunbeam Corp.*,
    2001 WL 34556527 (S.D. Fla. July 3, 2001)..........................................................3, 14

*Cammer v. Bloom*,
    711 F. Supp. 1264 (D.N.J. 1989) ...............................................................................14

*Central Bank of Denver v. First Interstate Bank of Denver*,
    511 U.S. 164 (1994)............................................................................10

*In re Centerline Holdings Co. Securities Litigation*,
    2009 WL 2391768 (S.D.N.Y. Aug. 4, 2009)...........................................9, 23

*City of Brockston Retirement System v. Shaw Group Inc.*,
    540 F. Supp. 2d 464 (S.D.N.Y. 2008)...................................................21

*Condit v. Dunne*,
    317 F. Supp. 2d 344 (S.D.N.Y. 2004)......................................................5

*In re Connetics Corp. Securities Litigation*,
    542 F. Supp. 2d 996 (N.D. Cal. 2008) .....................................................16

*In re Converium Holding AG Securities Litigation*,
    2006 WL 3804619 (S.D.N.Y. Dec. 28, 2006) .............................2, 12, 13, 14

*In re Converium Holding AG Securities Litigation*,
    2007 WL 1041480 (S.D.N.Y. Apr. 9, 2007)..............................................12

*In re Corning Securities Litigation*,
    2004 WL 1056063 (W.D.N.Y. Apr. 9, 2004)............................................22

*Druskin v. Answerthink, Inc.*,
    299 F. Supp. 2d 1307 (S.D. Fla. 2004) ........................................18, 19, 21

*In re Elan Corp. Securities Litigation*,
    543 F. Supp. 2d 187 (S.D.N.Y. 2008)...............................................19, 21

*In re Federated Department Stores, Inc. Securities Litigation*,
    2005 WL 696894 (S.D.N.Y. Mar. 25, 2005) ....................................17, 18, 21

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir. 1994)....................................................................5

*Francis v. Zavadill*,
    2006 WL 3103324 (S.D.N.Y. Oct. 30, 2006) ..............................................5

*Gavish v. Revlon, Inc.*,
    2004 WL 2210269 (S.D.N.Y. Sept. 30, 2004)......................................20, 21

*In re Geopharma, Inc. Securities Litigation*,
    399 F. Supp. 2d 432 (S.D.N.Y. 2005)....................................................22

*In re Gildan Activewear Inc. Securities Litigation*,
  636 F. Supp. 2d 261 (S.D.N.Y 2009)....................................................16, 18

*Graham v. Barriger*,
  2009 WL 3852461 (S.D.N.Y. Nov. 17, 2009)..........................................11

*Harrison v. Rubenstein*,
  2007 WL 582955 (S.D.N.Y. Feb. 26, 2007)..............................................25

*Hinerfeld v. United Auto Group*,
  1998 WL 397852 (S.D.N.Y. July 15, 1998)..............................................15

*In re Initial Public Offering Securities Litigation*,
  471 F.3d 24 (2d Cir. 2006).......................................................................3, 14

*Karagianis v. Karagianis*,
  2009 WL 4738188 (Bankr. D.N.H. Dec. 4, 2009)......................................16

*Kramer v. Time Warner*,
  937 F.2d 767 (2d Cir. 1991)........................................................................5

*Lattanzio v. Deloitte & Touche LLP*,
  476 F.3d 147 (2d Cir. 2007)............................................................2, 11, 13

*Lentell v. Merrill Lynch & Co.*,
  396 F.3d 161 (2d Cir. 2005)..................................................................10, 23

*Luminent Mortgage Capital, Inc. v. Merrill Lynch & Co.*, 2009 WL 2590087
  (E.D.Pa. Aug. 20, 2009)...............................................................................5

*Malin v. XL Capital Ltd.*,
  499 F. Supp. 2d 117 (D. Conn.)..............................................................20, 21

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*,
  244 F.R.D. 204 (S.D.N.Y. 2007)................................................................10

*In re Merrill Lynch & Co. Research Reports Securities Litigation*,
  218 F.R.D. 76 (S.D.N.Y. 2003)...................................................................16

*In re Merrill Lynch & Co. Research Reports Securities Litigation*,
  289 F. Supp. 2d 416 (S.D.N.Y. 2003).........................................................5

*PR Diamonds, Inc. v. Chandler*,
  364 F.3d 671 (6th Cir. 2004).......................................................................17

*In re PXRE Group, Ltd., Securities Litigation,*
 600 F. Supp. 2d 510 (S.D.N.Y. 2009)........................................................15, 16, 17, 18

*Pavelic & LeFlore v. Marvel Entertainment Group,*
 493 U.S. 120 (1989)........................................................................................16

*Pension Committee of University of Montreal Pension Plan v. Banc of America
 Securities, LLC*, 592 F. Supp. 2d 608 (S.D.N.Y. 2009)................................13

*In re Refco, Inc. Securities Litigation,*
 609 F. Supp. 2d 304 (S.D.N.Y. 2009)............................................................11

*Rombach v. Chang,*
 355 F.3d 164 (2d Cir. 2004)......................................................................10, 22

*S.E.C. v. Collins & Aikman Corp.,*
 525 F. Supp. 2d 477 (S.D.N.Y. 2007)............................................................13

*In re Salomon Analyst Level 3 Litigation,*
 373 F. Supp. 2d 248 (S.D.N.Y. 2005)..................................................18, 19, 21

*San Leandro Emergency Med. Group Profit Sharing Plan v. Phillip Morris Cos.,*
 75 F.3d 801 (2d Cir. 1996)............................................................................22

*Santa Fe Industries, Inc. v. Green*, 430 U.S. 462 (1977).....................................3

*Shapiro v. Cantor*, 123 F.3d 717 (2d Cir. 1997)...........................................11, 13

*South Cherry Street, LLC v. Hennessee Group LLC,*
 573 F.3d 98 (2d Cir. 2009)............................................................................17

*Steinberg v. Ericsson LM Telephone Co.,*
 2008 WL 5170640 (S.D.N.Y. Dec. 10, 2008) ...............................................20

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.,*
 552 U.S. 148 (2008)......................................................................................13

*In re Surebeam Corp. Securities Litigation,*
 2005 WL 5036360 (S.D. Cal. Jan. 3, 2005)...................................................14

*Teamsters Local 445 Freight Division Pension Fund v. Dynex Capital,*
 531 F.3d 190 (2d Cir. 2008)..........................................................15, 18, 22, 24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
 551 U.S. 308 (2007)....................................................................................3, 15

*In re Turbodyne Technologies, Inc. Securities Litigation*,
      2000 WL 33961193 (C.D. Cal. Mar. 15, 2000)........................................................14

*Universal Studios Inc. v. Viacom*, 705 A.2d 579 (Del. Ch. 1997)....................................10

*Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998)...................................3, 11, 13

*In re Yukos Oil Securities Litigation*,
      2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006).............................................................24

## STATUTES

15 U.S.C. § 78u-4(b)(2) ...................................................................................................24

Del. Code Ann. tit. 8, § 259(a) (2006) ................................................................................1

## MISCELLANEOUS

E. Schwieger, *Redefining the Private Placement Market After Sarbanes-Oxley:
      NASDAQ's Portal and Rule 144A*, 57 Cath. U. L. Rev. 885 (2008)...........................14

Financial Accounting Standards Board, Statement of Financial Accounting
      Standards No. 5 (1975) ...........................................................................................15-16

Defendants Anadarko Petroleum Corporation ("Anadarko") and Kerr-McGee Corporation ("KMG") submit this memorandum of law in support of their motion to (a) dismiss the Consolidated Amended Complaint ("CAC") and (b) strike certain allegations therein.

## PRELIMINARY STATEMENT

In January 2009, Tronox Incorporated ("Tronox"), a producer of the chemical pigment titanium dioxide, filed for bankruptcy.  Ten months later, Plaintiffs commenced this securities fraud action on behalf of purchasers of Tronox's common stock and bonds, alleging claims based on public statements by Tronox over a 37-month period from November 21, 2005 to January 12, 2009.  However, in light of the automatic bankruptcy stay applicable to Tronox, Plaintiffs have targeted Tronox's former parent, KMG, as well as Anadarko, whose subsidiary acquired KMG in August 2006, for disclosures made by Tronox over a more-than-two-year period thereafter.

Specifically, in November 2005, Tronox offered 43.3% of its shares (the "Class A Shares") to the public in an initial public offering (the "IPO") with KMG receiving the remaining shares (the "Class B Shares").  On March 30, 2006, KMG distributed the Class B Shares as a dividend to KMG's shareholders (the "Spin Off"), at which point Tronox "became an independent company." (CAC ¶ 103.)  Four months later, in August 2006, a subsidiary of Anadarko acquired KMG.

As discussed more fully below, Anadarko is not liable for any alleged securities law claims against KMG.  KMG merged with a subsidiary of Anadarko and, subsequently, emerged as the surviving company.  Thus, Anadarko, as the owner of the shares of KMG, did not become responsible for any of KMG's "debts, liabilities and duties."  Del. Code Ann. tit. 8, § 259(a) (2006). (*See infra* Section I.)

Plaintiffs' Section 10(b) and SEC Rule 10b-5 claim against both KMG and Anadarko also fails because the CAC does not sufficiently allege any material misrepresentation that was publicly attributed to KMG or Anadarko at the time of the statement's dissemination, either before

or after Tronox became an "independent company" in March 2006.  (CAC ¶ 103.)  The Second Circuit has repeatedly held, most recently in *Lattanzio v. Deloitte & Touche LLP*, that a party may be primarily liable for an alleged misstatement or omission *only* if the misstatement or omission is attributed to that party.  *See* 476 F.3d 147, 153 (2d Cir. 2007).  Here, however, the CAC is devoid of any well-pled allegations that, before or after Tronox became an "independent company," (CAC ¶ 103), KMG or Anadarko signed Tronox's Registration Statement, issued Tronox's press releases or participated in Tronox's investor conference calls.  Plaintiffs also rely on allegations that KMG (and, later, Anadarko) controlled Tronox and therefore participated in making the statements at issue.  But that too is not enough to state a claim for primary liability.  *See, e.g.*, *In re Converium Holding AG Sec. Litig.*, 2006 WL 3804619, at *11 (S.D.N.Y. Dec. 28, 2006) (Cote, J.)).  (*See infra* Section II.A.)

Plaintiffs also attempt to lay blame for Tronox's bankruptcy on the purportedly "fraudulent" Spin Off, which allegedly left Tronox "broke and overburdened" with the costs of environmental remediation and liabilities.  (CAC ¶ 5.)  Yet Plaintiffs ignore the myriad disclosures in connection with Tronox's IPO (including pages of Tronox's Registration Statement devoted to environmental liabilities, ample warnings and risk disclosures and a complete description of Tronox's current and legacy businesses) as well as the impact on Tronox's business of the worst recession since World War II.  Indeed, Tronox reported that its financial issues (following years of financial growth) was particularly severe due to the steep decline in the U.S. housing market (which was the primary end user of titanium dioxide) combined with rising production costs that Tronox could not pass on to the customer.  (*See* Ex. A at 7-9[1].)  By mid-2008 as the economic crisis deepened, Tronox

---

[1]  Citations to "Ex. __" are to the exhibits to the Declaration of Jay B. Kasner in Support of Anadarko Petroleum Corporation's and Kerr-McGee Corporations' Motion to (A) Dismiss the Consolidated Amended Complaint and (B) Strike Certain Allegations.

disclosed that the challenges it, and the titanium dioxide industry, faced had become "unprecedented." (Ex. B at 5-6.) In the face of these "unprecedented" challenges, on January 12, 2009, Tronox filed for bankruptcy protection. Plaintiffs' belated challenge to the IPO and Spin Off is nothing more than a non-actionable disagreement with the business judgment of management. *See Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 477 (1977).

Plaintiffs also fail to plead reliance on any statement or omission by Anadarko or KMG. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998). Moreover, Plaintiffs' reliance allegations—which depend on the fraud on the market doctrine[2]—fail because Plaintiffs have not alleged an efficient market with respect to the IPO Tronox's common stock. *See In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006). In addition, Plaintiffs have not alleged, in even conclusory terms, that an efficient market existed for Tronox's bonds, which were allegedly traded on the PORTAL Market.[3] *See Camden Asset Mgmt., L.P. v. Sunbeam Corp.*, 2001 WL 34556527, at *9-10 (S.D. Fla. July 3, 2001). (*See infra* Section II.B.)

The CAC also fails to allege a cogent and compelling inference of scienter. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007). While Plaintiffs attempt to demonize the corporate transactions, the more cogent inference is that KMG's board and individual officers acted in their fiduciary capacity, in the interests of shareholders, to rationalize two disparate businesses. And the compelling inference is not that reserves were fraudulently understated, but rather that the individual defendants reasonably established reserves that were blessed by Tronox's auditors using their best judgment and honestly held beliefs and in light of emerging information. Plaintiffs also parrot allegations from filings in an adversarial proceeding in Tronox's bankruptcy.

---

[2] *See Basic Inc. v. Levinson*, 485 U.S. 224, 248 n.27 (1988).

[3] As explained more fully below, the PORTAL Market is an electronic private placement market that is open only to eligible investors under SEC Rule 144 and whose rules forbid the public disclosure of trade information. (*Infra* at Section II.B.)

However, these allegations are not only insufficient to satisfy Plaintiffs' burden under the PSLRA, but they should be stricken. (*See infra* Section II.C. & n. 18.) In addition, Plaintiffs fail to state a claim under Rules 10b-5(a) and (c). (*See infra* Section II & n.30.)

Finally, Plaintiffs' claim against KMG and Anadarko under Section 20(a) of the Securities Exchange Act of 1934 also fails. Not only have Plaintiffs failed to plead a primary violation under Section 10(b) against Tronox (which, in and of itself, mandates dismissal of Plaintiffs' Section 20(a) claim), but Plaintiffs also have inadequately pled that either KMG or Anadarko were culpable participants in the alleged fraud. Plaintiffs also fail to allege sufficiently that Anadarko controlled Tronox throughout the class period and that KMG controlled Tronox at least with respect to the period after March 30, 2006, when (as Plaintiffs concede) Tronox became "independent." (CAC ¶ 103.) (*See infra* Section III.)

## STATEMENT OF FACTS[4]

### A.    Plaintiffs

Lead Plaintiffs are affiliated hedge funds that claim to have purchased shares of Tronox's Class A and Class B common stock between November 21, 2005 and January 12, 2009 (the

---

[4]  Unless otherwise indicated, this Statement of Facts is based on the factual allegations in the CAC, which are assumed to be true solely for purposes of this motion. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). However, "pleadings that . . . are no more than conclusions are not entitled to the assumption of truth." *Id.* at 1950. On a motion to dismiss, the Court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bring the suit." *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *accord Francis v. Zavadill*, 2006 WL 3103324, at *3 (S.D.N.Y. Oct. 30, 2006) (Scheindlin, J.). The existence of market phenomena is an appropriate subject for judicial notice. *See, e.g.*, *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 289 F. Supp. 2d 416, 421 n.6 (S.D.N.Y. 2003) (judicial notice of "the internet bubble and its subsequent crash"); *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 770 (2d Cir. 1994) (real estate market downturn); *Francis*, 2006 WL 3103324, at *3 (citing *Kramer v. Time Warner*, 937 F.2d 767, 773-74 (2d Cir. 1991) (junk bond market collapse); *Luminent Mortgage Capital, Inc. v. Merrill Lynch & Co.*, 2009 WL 2590087, at *14-16 (E.D. Pa. Aug. 20, 2009) (judicial notice of "turmoil in the markets" beginning in 2007).

"putative class period").  (CAC ¶ 23.)  They seek to represent "persons and entities who purchased

or otherwise acquired" Tronox's common stock as well as purchasers of Tronox's 9½ percent

Senior Notes due 2012 ("Tronox bonds") during the putative class period.  (*Id.* ¶ 48.)  Tronox

bonds were traded on the PORTAL Market.  (*Id.* ¶ 372(a).)  The "Named Plaintiffs" claim to have

purchased Tronox bonds during the putative class period.  Named Plaintiff San Antonio asserts

that it received Class B common stock as a dividend from KMG.  (*Id.* ¶ 25.)

**B.     KMG And "Project Focus"**

KMG was a Delaware public company whose shares were traded on the NYSE until KMG

merged with a subsidiary of Anadarko in August 2006, at which time it became a wholly owned

subsidiary of Anadarko.  (*Id.* ¶ 29; Ex. C at 1-2.)  In 2002, KMG undertook an internal

reorganization named "Project Focus."  (Ex. D at 117; CAC ¶ 69.)[5]  Although Plaintiffs complain

that Project Focus isolated KMG's environmental liabilities in Kerr-McGee Chemical, publicly

filed documents reflect that Kerr-McGee Chemical and Kerr-McGee Oil and Gas each assumed

liabilities previously owned by the other.  For instance, pursuant to the publicly filed Assignment,

Assumption, and Indemnity Agreement (the "Indemnity Agreement") (CAC ¶ 73), Kerr-McGee

Chemical assigned to Kerr-McGee Oil and Gas "primary, secondary or residual liabilities and

obligations arising out of the oil and gas exploration, production and development business . . .

conducted by" Kerr-McGee Oil and Gas while retaining liabilities not associated with that

business.  (Ex. E at 1.)  The parties also agreed to reciprocal indemnities.  (*Id.* at § 3.)

---

[5] Project Focus reorganized KMG along rational business lines:  certain of KMG's domestic and certain foreign subsidiaries previously engaged in the oil and gas exploration and production business (the "E&P Business") were consolidated under Kerr-McGee Oil and Gas, and certain subsidiaries engaged in the chemical manufacturing business (the "Chemical Business") were consolidated in Kerr-McGee Chemical.  (Ex. D at 1, 4, 16.)

**C.      KMG Determines to Concentrate on the E&P Business**

In February 2005, KMG announced that it was exploring alternatives for separating Kerr-McGee Chemical.  (CAC ¶ 74.)  A month later, KMG's board of directors authorized management to explore a sale or spin-off of Kerr-McGee Chemical.  (*Id.* ¶ 75.)  KMG subsequently held discussions with third parties concerning the purchase of the Chemical Business and invited them to conduct due diligence.  (*Id.* ¶ 81.)  In time, however, KMG concluded that it could not reach an agreement and proceeded instead with an initial public offering.  (*Id.*)

In late 2005, KMG engaged in discussions with Kerr-McGee Chemical, which had been renamed Tronox Worldwide LLC ("Tronox Worldwide"), concerning the separation of the Chemical Business.  (CAC ¶ 14.)  In the negotiations, Tronox Worldwide was led by a highly qualified and experienced managerial team and in-house counsel, who had worked for the Chemical Business and who were to be retained by Tronox Worldwide following the separation. (*See, e.g.*, Ex. F at 9-11.)  Despite Plaintiffs' conclusory allegation that KMG "unilaterally dictate[d] the terms of the IPO," (CAC ¶ 13), the Tronox Worldwide team extracted numerous key terms in Tronox's favor.[6]

**D.      Tronox Conducts An Initial Public Offering**

On November 22, 2005, Tronox filed a Registration Statement with the SEC in connection with the IPO.  The Registration Statement was signed by Thomas Adams, Mary Mikkelson, Marty J. Rowland, Robert M. Wohleber, Peter Kinnear, J. Michael Rauh and Bradley C. Richardson, each in his or her capacity as an officer or director of Tronox.  (Ex. D at II-5.)  Tronox fully disclosed to its investors that "we will be subject to significant liabilities that are in addition to

---

[6] KMG, for example, agreed to (i) pay up to $17 million for any taxes associated with the separation, (ii) release Tronox from its $2.1 billion in note guarantee obligations, (iii) provide Tronox future services and benefits and (iv) reimburse Tronox for 50% of the costs it incurred in excess of Tronox's reserves up to $100 million.  (Ex. F at 6; Ex. D at 46, 63.)

those associated with our primary business" and that "[o]ur financial condition and results of

operations could be adversely affected by these liabilities."  (Ex. D at 16, 45.)  Tronox identified,

explicitly, potential liabilities relating to:

> [f]ormer operations . . . involving the production of ammonium perchlorate,
> treatment of forest products, the refining and marketing of petroleum products,
> offshore contract drilling and the mining, milling and processing of nuclear
> materials [and] the remediation of various sites at which chemical such as creosote,
> perchlorate, low-level radioactive substances, asbestos and other materials have
> been used or disposed."  (*Id.* at 45.)

Tronox further disclosed that "[a]s of September 30, 2005, we had reserves in the amount of

$239.4 million for environmental remediation and restoration."  (*Id.* at 17.)  However, Tronox

cautioned investors that "at certain sites we are in the preliminary stages of our environmental

investigation and therefore have reserved for such sites amount equal only to the cost of our

environmental investigation," and noted that "[t]he findings of these investigations could result in

an increase in our reserves for environmental mediation."  (*Id.*)  Furthermore, Tronox warned that

"there may be other sites where we have potential liability for environmental-related matters but

for which we do not have sufficient information to determine that a liability is probable and

reasonably estimable," and that "[a]s we obtain additional information about those sites, we may

need to increase our reserves."  (*Id.* at 17, 68.)  Tronox stated that "it is not possible for us to

reliably estimate the amount and timing of all future expenditures related to environmental or

other contingent matters and our actual costs could exceed our current reserves."  (*Id.* at 17.)

Tronox included similar disclosures in numerous other sections of the Registration Statement.

(*See, e.g.*, *id.* at 90-92.)

As Plaintiffs concede, Tronox also disclosed potential tort liabilities.  For instance, with

respect to the Manville, New Jersey site (CAC ¶ 9), Tronox disclosed:

> In 1999, Tronox LLC was named as a PRP under CERCLA at a former New Jersey
> wood-treatment site at which EPA is conducting a cleanup. On April 15, 2005,
> Tronox LLC and its ultimate parent, Kerr-McGee Corporation, received a letter

> from EPA asserting that they are liable under CERCLA as a former owner or operator of the site and demanding reimbursement of costs expended by EPA at the site . . . in the amount of approximately $179 million, plus interest. Tronox LLC did not operate the site. . . . The predecessor also did not operate the site, which had been closed down before it was acquired by the predecessor. . . . We have not recorded a reserve for reimbursement of clean up cost for the site as it is not possible to reliably estimate the liability, if any, we may have for the site because of the defenses discussed above and uncertainties.

(Ex. D at 68.)  Tronox also disclosed, in bold-faced type, its "Forest Products Litigation," stating, among other disclosures, that it was a defendant in over 11,000 suits relating forest products, and that "[w]e believe that the ultimate resolution of the forest products litigation will not have a material adverse effect on us."  (*Id.* at 92.)

On November 28, 2005, Tronox sold 43.3% of its Class A Shares (approximately 17.5 million) to the public in an IPO for $14.00 per share.  (Ex. F at 3; CAC ¶¶ 14.)  Tronox also issued $350 million in senior unsecured notes.  (Ex. D at 32; Ex. F at 3; CAC ¶¶ 14.)  Tronox disclosed that the remainder of its shares (the Class B Shares), net proceeds from the IPO and borrowings were transferred to KMG as consideration for the Chemical Business, and that Tronox paid KMG its cash on hand in excess of $40 million.  (*See* Ex. D at 9.)

**E.      Tronox Emerges as an Independent Company**

Upon the completion of the IPO, KMG retained 56.7% of the shares of Tronox in the form of the Class B Shares.  (CAC ¶ 28.)  On March 30, 2006, KMG distributed, as a dividend, the entirety of its Tronox shares to KMG's shareholders and Messrs. Wohleber and Rauh resigned from the Tronox board of directors.  (*id.* ¶¶ 15, 17, 185; Ex. G.)  Plaintiffs acknowledge that, as of March 30, 2006, Tronox "became an independent company."  (CAC ¶ 103.)

**F.      KMG Merges With a Subsidiary of Anadarko Petroleum Corporation**

On June 22, 2006—some seven months after the IPO and three months after the Spin Off— Anadarko proposed to acquire KMG.  (*id.* ¶ 29.)  On August 10, 2006, KMG's shareholders voted to accept the offer.  (*id.*)  As a result, KMG merged with APC Acquisition Sub, Inc.—a subsidiary

of Anadarko—with KMG emerging as the surviving entity and subsidiary to Anadarko.  (*See* CAC ¶ 16; Ex. C at 1-2.)

Two and one half years later, on January 12, 2009, Tronox and 14 of its affiliated companies filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.  (CAC ¶ 27.)

<u>**ARGUMENT**</u>[7]

**ANADARKO AND KERR-MCGEE'S MOTION TO DISMISS SHOULD BE GRANTED**

**I.      PLAINTIFFS FAIL TO STATE A CLAIM AGAINST ANADARKO**[8]

Plaintiffs' claims against Anadarko are predicated on the allegation that Anadarko is the successor-in-interest to KMG as a result of a purported acquisition of KMG by Anadarko in 2006. (*See* CAC ¶¶ 29, 375, 380, 415, 418.)  However, as established by documents of which this Court may take notice, KMG merged with APC Acquisition Sub, Inc.—a subsidiary of Anadarko—with KMG continuing as the "surviving corporation."  (*See* Ex. C at 1-2.)[9]  Under Delaware General Corporation Law § 259(a), upon the completion of a merger, "all debts, liabilities and duties of the respective constituent corporations shall thenceforth attach to [the] surviving or resulting corporation . . . ."  Thus, as Anadarko is not the surviving corporation, it cannot be liable as a successor in interest to KMG.  *See CL Invs., L.P. v. Advanced Radio Telecom Corp.*, 2000 WL

---

[7] To the extent applicable, Anadarko and KMG expressly adopt and incorporate by reference the arguments of the Individual Defendants raised in their respective motions to dismiss the CAC.

[8] The pleading standard applicable to this motion is set forth in *In re Centerline Holdings Co. Securities Litigation*, 2009 WL 2391768, at *4 (S.D.N.Y. Aug. 4, 2009) (Scheindlin, J.).

[9] The Court may take judicial notice of the Merger Agreement, filed with the SEC and attached as an exhibit to KMG's current report on Form 8-K dated June 26, 2006.  (Ex. C.)  *See, e.g.*, *ATSI Comm'cns*, 493 F.3d at 98; *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 213 (S.D.N.Y. 2007) (Scheindlin, J.).  As Anadarko and KMG are Delaware corporations, Delaware law applies to determine the effect of the transaction.  *See, e.g.*, *Universal Studios Inc. v. Viacom*, 705 A.2d 579, 589-90 (Del. Ch. 1997).

1868096, at *6 (Del. Ch. Dec. 15, 2000). Moreover, in addition to Anadarko's argument in this Section I, the arguments set forth in Sections II and III apply with equal force to Anadarko.

## II.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER SECTION 10(B) AGAINST KMG OR ANADARKO[10]

### A.    Plaintiffs Have Failed To Allege a Misstatement

Plaintiffs' claim under Section 10(b) must be dismissed because they have failed to adequately allege a misstatement or omission attributed to KMG.[11]  No private right of action exists under Section 10(b) for aiding and abetting another party's alleged violation of the federal securities laws.  *See Cent. Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 177 (1994).  In the wake of *Central Bank*, the Second Circuit has held that, if the Supreme Court's decision "is to have any real meaning, a defendant must actually make a false or misleading statement in order to be held liable under Section 10(b)."  *Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998) (citing *Shapiro v. Cantor*, 123 F.3d 717 (2d Cir. 1997)).  Accordingly, the Second Circuit established a "'bright line'" rule that a party may be liable for an alleged misrepresentation only where the misstatement is "attributed to that [party] at the time of its dissemination."  *Id.*  The Second Circuit has since reaffirmed this bright line rule in *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 153 (2d Cir. 2007) (citing *Wright*, 152 F.3d at 174).  *Lattanzio* confirms that no liability can attach based merely on an alleged public understanding

---

[10]  The elements of a claim under Section 10(b) and SEC Rule 10b-5 are well settled.  *Lentell v. Merrill Lynch & Co.* 396 F.3d 161, 172 (2d Cir. 2005).

[11]  Plaintiffs' Section 10(b) claim with respect to the announcement of a settlement with the United States government (CAC ¶ 177), fails for the independent reason that Plaintiffs do not allege with the requisite particularity why that statement was false.  *See Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004).

that a defendant approved or participated in drafting the alleged misstatement of another; rather, the statement must have been attributed to that defendant at the time it was made.  *Id.* at 155.[12]

Here, Plaintiffs have failed to adequately identify *any* alleged misstatement that was attributed to KMG.  For instance, Plaintiffs allege that Tronox's January 24, 2006 press release, as well as a February 22, 2006 presentation by Defendant Adams, were materially misleading.  (CAC ¶¶ 178-84.)  However, neither of these statements was attributed to KMG at the time of its dissemination—and Plaintiffs do not even attempt to allege otherwise.  *See Lattanzio*, 476 F.3d at 153.  Moreover, Tronox alone filed its Registration Statement with the SEC, and the individual signatories to the Registration Statement signed solely in their capacities as Tronox officers and directors.  (Ex. D at II-5.)  *See In re Converium Holding AG Sec. Litig.*, 2006 WL 3804619, at *11 (S.D.N.Y. Dec. 28, 2006) (Cote, J.).

Plaintiffs' attempt to ascribe liability to KMG based on its alleged "control" over Tronox is similarly deficient.  (CAC ¶¶ 28, 98.)[13]  Judge Cote's decision in *Converium* is particularly instructive on this point.  In that case, Zurich Financial Services ("Zurich") spun off its wholly owned subsidiary, Converium Holding AG ("Converium") in an IPO.  2006 WL 3804619, at *2-3.  After the IPO, Converium suffered losses in excess of its stated reserves, leading to a class action alleging that Zurich had materially misstated the adequacy of Converium's reserves at the time of the IPO.  *Id.* at *3-4.  The plaintiffs alleged that Zurich was responsible for the alleged

---

[12]  *Accord Amida Capital Mgmt. II, LLC v. Cerberus Capital Mgmt., L.P.*, 2009 WL 3787197, at *5 (S.D.N.Y. Nov. 10, 2009) ("Imposing liability for 'participation' or 'approval' of a statement made by another party would contradict *Central Bank* by recreating liability for aiding and abetting by another name."); *Graham v. Barriger*, 2009 WL 3852461, at *18 (S.D.N.Y. Nov. 17, 2009); *In re Refco, Inc. Sec. Litig.*, 609 F. Supp. 2d 304, 311-12 (S.D.N.Y. 2009).

[13]  Plaintiffs ill-pled and vague allusion to unspecified agreements falls woefully short of their obligation to plead claims with the heightened particularity required of the PSRLA and Rule 9(b).  (CAC ¶ 4.)  (*See infra* pg. 20.)  Plaintiffs' allegations are also insufficient to state a primary claim against Anadarko for the reasons stated in this Section II.

misstatements in Converium's registration statement because: (i) Zurich owned a 100% (*i.e.*, controlling) stake in Converium at the time of the initial public offering; and (ii) Zurich participated in drafting the registration statement and related documents. *Id.* at *11. The court held that these allegations did not state a claim against Zurich because "[n]either [Zurich's] ownership of Converium nor its participation in the preparation of the offering documents could be construed to be public statements to which liability attaches." *Id.*[14]

The same result should apply here. As in *Converium*, Plaintiffs sue based on allegations that KMG owned Tronox at the time of the IPO and controlled the content of Tronox's Registration Statement. (CAC ¶¶ 28, 98.) As the *Converium* court held, such allegations are insufficient to satisfy the Second Circuit's requirement that the alleged misstatement be "'attributed to [the defendant] at the time of public dissemination.'" *Converium*, 2006 WL 3804619, at *11 (quoting *Wright*, 152 F.3d at 175); s*ee also Amida Capital Mgmt.*, 2009 WL 3787197, at *5. Similarly, Plaintiffs' attempt to link Tronox's post-IPO statements to KMG based on KMG's 56.7% stake in Tronox also fail. (CAC ¶ 28.) As allegations of complete ownership are insufficient as a matter of law to attribute a subsidiary's alleged misstatements to its parent for primarily liability, *Converium*, 2006 WL 3804619, at * 11, it necessarily follows that allegations based on *less* than complete ownership will not suffice. And Defendants cannot be liable for any statement post-dating the Spin Off because Plaintiffs fail to identify any alleged misstatement or

---

[14] While Judge Cote subsequently granted the plaintiffs' motion for reconsideration, the plaintiffs did not move for reconsideration of the portion of the decision dismissing the plaintiffs Section 10(b) claim against Zurich. *In re Converium Holding AG Sec. Litig.*, 2007 WL 1041480, at *1 (S.D.N.Y. Apr. 9, 2007).

omission after the Spin Off that was attributed to KMG and concede that "Tronox became an independent company."  (CAC ¶ 103.)[15]

## B.    Plaintiffs Have Not Adequately Alleged Reliance

As none of the alleged misstatements or omissions in the CAC was attributed to KMG, (*supra* Section II.A.), Plaintiffs have not pled reliance as to KMG.  *See Wright*, 152 F.3d at 175; *accord Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 159-60 (2008).[16] Plaintiffs fail to allege reliance in two additional respects.

*First*, Plaintiffs have not adequately alleged reliance on any purported misstatement or omission in the Registration Statement because they plead reliance based exclusively on the fraud on the market presumption (CAC ¶¶ 372-73, 383), which applies only in an efficient market, *see, e.g.*, *Basic Inc. v. Levinson*, 485 U.S. 224, 248 n.27 (1988).  However, for purposes of the fraud on the market theory, "the market for IPO shares is not efficient."  *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006); *Converium*, 2006 WL 3804619, at *3.  Therefore, Plaintiffs' claims must be dismissed to the extent they relate to the IPO.  *See id.*

---

[15]  KMG respectfully submits that this Court's decision in *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 592 F. Supp. 2d 608, 622 (S.D.N.Y. 2009), and the decisions on which this Court relied, contradict the Second Circuit's binding pronouncements in *Shapiro* and *Wright*, which considered, and rejected, the "substantial participation test."  *See Wright*, 152 F.3d at 176; *Shapiro*, 123 F.3d at 720.  Moreover, any doubt as to the Second Circuit's position was put to rest by *Lattanzio*, in which the Second Circuit reaffirmed that "a party can incur liability only if a misstatement is attributed to it at the time of dissemination."  *Lattanzio*, 476 F.3d at 155.  In any event, assuming *arguendo* that either KMG's degree of participation in the statements at issue, or the public's understanding of KMG's role, was relevant here, Plaintiffs' allegations fail to create any basis to conclude that investors understood that KMG or Anadarko made the alleged misstatements here.  *Converium*, 2006 WL 3804619, at *12.

[16]  *See also S.E.C. v. Collins & Aikman Corp.*, 525 F. Supp. 2d 477, 490 (S.D.N.Y. 2007) (Scheindlin, J.) (stating that, in order to "plead reliance" in a private action under Section 10(b), "the [false] statement [must be] attributed to that [defendant] at the time of its dissemination to the public") (citing *Wright*, 152 F.3d at 175).  Whether the "attribution requirement," *id.*, is necessary to plead a misstatement (*see supra* Section II.A.) or reliance (or both), Plaintiffs fail to state a Section 10(b) claim.

*Second*, Plaintiffs also fail to allege that the market for Tronox's bonds was efficient.  (*See* CAC ¶ 372(a).)  This omission is not surprising.  Tronox's bonds traded on the PORTAL Market, an electronic private placement market open only to eligible investors under SEC Rule 144 and whose rules forbid the public disclosure of trade information.  *See* E. Schwieger, *Redefining the Private Placement Market After Sarbanes-Oxley:  NASDAQ's Portal and Rule 144A*, 57 Cath. U. L. Rev. 885, 899-902 (2008); *Camden Asset Mgmt., L.P. v. Sunbeam Corp.*, 2001 WL 34556527, at *9-10 (S.D. Fla. July 3, 2001).  Nor do Plaintiffs allege the existence of at least four of the five factors indicative of an efficient market.  *See Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989).  As courts have dismissed claims on reliance grounds based on even more detailed allegations than those present here, *see In re Turbodyne Techs, Inc. Sec. Litig.*, 2000 WL 33961193, at *1 (C.D. Cal. Mar. 15, 2000); *In re Surebeam Corp. Sec. Litig.*, 2005 WL 5036360, at *23 (S.D. Cal. Jan. 3, 2005), Plaintiffs' bondholder claims ought to be dismissed.

## C.  Plaintiffs Have Not Adequately Alleged Scienter[17]

### 1.  Plaintiffs Have Not Met Their Burden of Alleging Strong Circumstantial Evidence of Conscious Misbehavior or Recklessness

"The failure to anticipate the extent of necessary reserves, even if it amounts to mismanagement, is not actionable under federal securities laws."  *Hinerfeld v. United Auto Group*, 1998 WL 397852, at *7 (S.D.N.Y. July 15, 1998).  Setting reserves involves highly judgmental

---

[17]  The Supreme Court has defined scienter as "'a mental state embracing intent to deceive, manipulate, or defraud."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007). Under *Tellabs*, "a court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Id.* at 324.  "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.*  In the case of a corporate defendant, a plaintiff can allege a strong inference of scienter only where the facts pled "create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital*, 531 F.3d 190, 195 (2d Cir. 2008).  Plaintiffs' wholesale failure to include even a single allegation of scienter as to Anadarko alone warrants the dismissal of Plaintiffs' Section 10(b) claim against Anadarko.

decisions, and courts recognize that reserve decisions should not be second guessed merely because those judgments later turn out to be incorrect. *See, e.g.*, *In re Aegon N.V. Sec. Litig.*, 2004 WL 1415973, at *6-8 (S.D.N.Y. June 23, 2004). A plaintiff must allege that the defendant knew, at the time of the statement regarding reserves, that those reserves were inadequate as a result of contingent liabilities that were both "probable" and "reasonably estimable." Fin. Acct. Standards Bd., Statement of Fin. Acct. Standards No. 5, § 8 (1975) ("FAS 5"); *Aegon*, 2004 WL 1415973, at *8. However, Plaintiffs fail to allege that KMG possessed "'knowledge of facts or access to information contradicting their public statements,'" in the form of "'(1) *specific* contradictory information was available to the defendants (2) *at the same time* they made their misleading statements.'" *In re PXRE Group, Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 536 (S.D.N.Y. 2009), *aff'd sub nom. Condra v. PXRE Group Ltd.*, 2009 WL 4893719 (2d Cir. Dec. 21, 2009); *see also In re Gildan Activewear Inc. Sec. Litig.*, 636 F. Supp. 2d 261, 272-74 (S.D.N.Y 2009).[18]

*First*, Plaintiffs allege that Tronox did not establish a reserve for Manville even though, Plaintiffs conclude, "Defendants knew" that Tronox's reserves would be materially higher based on a demand letter it had received from the EPA. (CAC ¶ 115.) Yet the EPA demand letter, the

---

[18] In addition, the prologue and paragraphs 12, 74-81, 83, 90, 92, 95-101, 167 and 316 of the CAC should be stricken because they are improperly based on allegations in the Adversary Complaint in the bankruptcy proceeding, against which a motion to dismiss currently is pending. Counsel has a "nondelegable responsibility" to "personally . . . validate the truth and legal reasonableness of the papers filed." *Pavelic & LeFlore v. Marvel Entm't Group*, 493 U.S. 120, 126 (1989). A plaintiff is not permitted to take information from another complaint without additional investigation. *See, e.g.*, *In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1005-06 (N.D. Cal. 2008); *Karagianis v. Karagianis*, 2009 WL 4738188, at *4 (Bankr. D.N.H. Dec. 4, 2009). Plaintiffs here concede that the Adversary Complaint is the sole source for certain of their allegations. (*See, e.g.*, CAC ¶¶ prologue, 12, 74-81, 83, 90, 92, 95, 96, 101, 167, 316.) Plaintiffs also lift—nearly verbatim—entire passages from the Adversary Complaint without attribution in other portions of the CAC. (*Compare, e.g.*, CAC ¶ 92 *with* Ex. H at ¶ 91 & CAC ¶¶ 97-101 *with* Ex. H at ¶¶ 98-103.) These improper scienter allegations ought to be stricken from the CAC and the 10(b) claims dismissed. *See Caiafa v. Sea Containers Ltd.*, 525 F. Supp. 2d 398, 411 (S.D.N.Y. 2007); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78-79 (S.D.N.Y. 2003).

precise amount of the demand, the fact that no reserve was established, and a fulsome explanation of the reasons why were all disclosed in Tronox's Registration Statement.  (Ex. D at 68.)  In any event, the mere existence of an EPA demand for reimbursement, "does not automatically indicate that accrual of a loss may be appropriate.  The degree of probability of an unfavorable outcome must be assessed."  FAS 5, App. A § 37.  Here, Plaintiffs simply have not alleged any particularized facts suggesting that Tronox's reserve estimates were inconsistent with contemporaneous data or that Defendants' beliefs concerning reserves were not honestly held at the time.  *See In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 471 (S.D.N.Y. 2008), *aff'd*, 334 F. App'x 404 (2d Cir. 2009); *Aegon*, 2004 WL 1415973, at *6.[19]  Moreover, Plaintiffs "fraud by hindsight" pleading ought to be rejected as it impermissibly seeks to draw an inference about what defendants knew and believed at the time of the filing based upon Tronox's subsequent recording of a reserve in the third quarter of 2006.  *See, e.g.*, *id.*

*Second*, Plaintiffs' concession that defendants performed an investigation of certain additional wood treatment sites (CAC ¶¶ 95, 116) undercuts any purported inference of scienter.  *See, e.g.*, *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 691 (6th Cir. 2004); *In re Federated Dep't Stores, Inc. Sec. Litig.*, 2005 WL 696894, at *5 (S.D.N.Y. Mar. 25, 2005).[20]

*Third*, Plaintiffs' allegation that KMG did not investigate other sites is also insufficient to plead scienter.  (CAC ¶ 96.)  A failure to investigate is not, by itself, indicative of scienter.  *See*

---

[19]  That years later the federal government filed a complaint alleging that it spent millions in remediating the Manville site (CAC ¶ 64-65) is irrelevant because Plaintiffs have failed to allege facts sufficient to demonstrate that KMG believed at any time, let alone at the time of the IPO, that it was a responsible party for the site.

[20] Moreover, Plaintiffs' allegations do not create a compelling inference of scienter because Plaintiffs neither identify any specific information that was available to KMG indicating that Tronox faced a probable or reasonable estimable contingent loss at these sites, nor allege that the findings of this purported investigation were even communicated to KMG's senior management.  *See, e.g.*, *PXRE*, 600 F. Supp. 2d at 536.

*South Cherry Street, LLC v. Hennessee Group LLC*, 573 F.3d 98, 112 (2d Cir. 2009).  Rather, to plead scienter, a plaintiff must, at the very least, allege facts from which to infer that senior management was aware of specific facts demonstrating that an investigation was warranted.  *Id.* Here, Plaintiffs provide no detail as to who at KMG "considered doing" the investigation (CAC ¶ 96), let alone whether any KMG senior manager was aware any fact with respect to any of these purported sites that would even warrant an investigation.[21]  As such, these allegations are patently insufficient under *South Cherry*.  *See* 573 F.3d at 112.[22]

    *Fourth*, Plaintiffs fail to identify any specific information available to KMG that would contradict Tronox's comprehensive public disclosures regarding the "Forest Products Litigation." (CAC ¶ 99-101, 170-71.)  Plaintiffs provide no basis for their bald assertion that the settlement of past claims would have any bearing on Tronox's future exposure.  Likewise, Plaintiffs' reference to a memorandum purportedly prepared for a potential bidder of Tronox does not satisfy Plaintiffs' pleading burden.  (CAC ¶ 101.)  Plaintiffs' selective citation from one sentence of this document

---

[21]  Plaintiffs' conclusory reference to a document that allegedly lists certain sites merely assumes those sites should have been disclosed and omits any detail as to what information the memorandum contained, let alone (i) who at KMG was allegedly aware of the memorandum, these sites or the alleged contemplated investigation, (ii) when these unspecified individuals became aware of this information, or (iii) the impact of that memorandum on environmental reserves.  *See Cal. Pub. Employees Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 148 (3d Cir. 2004); *Federated,* 2005 WL 696894, at \*4.  Likewise, Plaintiffs' allegations that "the Kerr-McGee representatives on the Tronox Board" either knew or should have known of these alleged sites by virtue of their board positions fails to create a compelling inference of scienter.  *See, e.g.*, *Gildan*, 636 F. Supp. 2d at 273.

[22]  Plaintiffs' allegation that two members of the "environmental group" were "disciplined" for "rais[ing] concerns regarding the accuracy of [KMG's] environmental reserves," (CAC ¶ 97), does not establish a strong inference of scienter.  This allegation is lacking any particularity, including whether the alleged action occurred during a relevant time period or related to any of the reserves at issue, and is lifted, *in haec verba*, from the Adversary Complaint, and therefore should be stricken.  (*See supra* n.18.)  Plaintiffs' allegations regarding concerns raised by underwriters' counsel should be stricken for the same reasons.  Additionally, the apparent approval of the Registration Statement by the underwriters for the IPO and their counsel undermines completely any claimed inference that they were not comfortable with its contents.

without any indication of the facts supporting its conclusion is insufficient to give rise to an inference that any loss was either probable or estimable. *CALPERS*, 394 F.3d at 148. In any event, Plaintiffs do not allege any facts even suggesting that any senior officer at KMG knew either of this document, or the facts underlying it, at any relevant time. *PXRE*, 600 F. Supp. 2d at 538; *Dynex*, 531 F.3d at 196.[23]

*Finally*, Plaintiffs' allegations regarding KMG's negotiations with potential private equity buyers of Tronox (CAC ¶¶ 74-83) both fail to create a compelling inference of scienter and lack any particularity. For instance, Plaintiffs allege that "one potential purchaser said the magnitude of the Legacy Liabilities was 'criminal'" (CAC ¶ 77), without specifying who made the alleged statement, when he or she made this alleged statement, to whom the alleged statement was made, or even the context of the discussion generally. Even assuming, *arguendo*, that certain prospective buyers expressed differing views as to the scope of the Legacy Liabilities (CAC ¶ 12, 74-81, 83, 93), Plaintiffs fail to allege facts supporting an inference that any KMG employee did not believe at any relevant time that Tronox's reserves were adequate. *See AstraZeneca*, 559 F. Supp. 2d at 471. Context also matters here: Potential bidders engaged in negotiations may have been motivated to drive down the purchase price when formulating positions concerning reserves. And merely because a potential bidder may have reached a different business judgment regarding the scope of Tronox's liabilities does not establish scienter. *See Druskin*, 299 F. Supp. 2d at 1334; *In re Salomon Analyst Level 3 Litig.*, 373 F. Supp. 2d 248 at 252.[24]

---

[23] And even if an unrelated counsel had a different view of Tronox's potential liability, it is well-established that a plaintiff cannot plead scienter based on allegations that another party reached a different business judgment. *See Druskin v. Answerthink, Inc.*, 299 F. Supp. 2d 1307, 1334 (S.D. Fla. 2004); *In re Salomon Analyst Level 3 Litig.*, 373 F. Supp. 2d 248, 252 (S.D.N.Y. 2005).

[24] Merely because KMG may have been willing to offer an indemnity to Apollo (CAC ¶¶ 12, 81) does not suggest that KMG believed that Tronox would incur $400 million in environmental liabilities. Plaintiffs' bare assertion that "Kerr-McGee decided against the sale to Apollo because

*(cont'd)*

2.     **Plaintiffs' Confidential Witness Allegations Are Insufficient To Create a Strong Inference of Scienter**

Plaintiffs' CW allegations do not raise a cogent or compelling inference of scienter. Plaintiffs are not permitted to rely on confidential witness allegations where, as here, witnesses are described in the complaint without "sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 221 (S.D.N.Y. 2008).[25]  Indeed, the majority of the CW allegations relate to hearsay or alleged "common knowledge" within KMG or Tronox, but fail to reference any specific facts or reports to substantiate the claims made.  (*See, e.g.*, CAC ¶¶ 128, 132, 134, 139, 143, 144.)  For instance, CW6 stated merely that "'he and others always believed that the legacy liabilities were understated," but admitted that he had no facts to support his claim and merely was speculating:  "We could not prove it but it was assumed."  (CAC ¶ 128.)  These allegations are insufficient because "'generic and conclusory allegations based on rumor or conjecture are indisputably insufficient to satisfy the heightened pleading requirements of [the PSLRA].'"  *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 140 (D. Conn. 2007), *aff'd*, 312 F. App'x 400 (2d Cir. 2009); *id.* at 139 n.17; *Gavish v. Revlon, Inc.*, 2004 WL 2210269, at *14 (S.D.N.Y. Sept. 30, 2004).

_____

*(cont'd from previous page)*

of the cost of the indemnity obligation" must be disregarded as "pleadings that . . . are no more than conclusions are not entitled to the assumption of truth."  *Iqbal*, 129 S. Ct. at 1950.

[25]  Plaintiffs do not allege that CW9 had *any* interactions with, or insight into, Defendant Corbett, let alone that he had such a familiarity with Corbett that he would be privy to Corbett's private discussions to sell KMG.  (CAC ¶ 129; *see e.g.*, CAC ¶¶ 126, 128, 129, 131-32, 134-40, 143-45.)  CW10 did not join Tronox until after the Spin Off, and therefore would have no knowledge with respect to KMG, let alone Anadarko.  (CAC ¶ 134.)  Plaintiffs provide no basis on which to infer that CW1, a low-level "Technical Specialist II in Electron Microscopy and Analytical Chemistry," would have any awareness of senior management's alleged discussion with Anadarko.  (CAC ¶ 125, 129.)  Moreover, Plaintiffs' allegations do not establish the source of the alleged "concerns" expressed at a pre-IPO meeting, or who raised those concerns.  (CAC ¶ 125.)

Plaintiffs' CW allegations also fail because none gives rise to an inference that any KMG senior officer had access to specific facts or reports contradicting any of the alleged misstatements made by Tronox.  *See Steinberg v. Ericsson LM Tel. Co.*, 2008 WL 5170640, at *13 (S.D.N.Y. Dec. 10, 2008).[26]  Plaintiffs' vague allusions to certain unspecified documents are also insufficient. For instance, Plaintiffs allege that CW4 "was aware in early 2005 of documents reflecting approximately 260 undisclosed sites where Tronox had environmental liabilities," but fail to allege any specific details regarding these documents or the sites.  (CAC ¶ 132.)  Such a "barebones sketch . . . utterly fails to meet" Plaintiffs' burden.  *CALPERS*, 394 F.3d at 148; *accord Federated*, 2005 WL 696894, at *4.[27]

Finally, Plaintiffs' confidential witness allegations amount to no more than generalized assertions that certain former employees possessed a different business judgment with respect to the adequacy of Tronox's reserves and are therefore legally deficient. (*See, e.g.*, CAC ¶¶ 128, 132,

---

[26]  Plaintiffs allege that CW2 stated that KMG conducted a review of wood treatment sites at some unspecified time after 1999.  (CAC ¶ 135.)  But Plaintiffs do not allege the results of that review, whether those results contradicted the reserves set by KMG or whether any senior official at KMG was ever made aware of the review.  (*Id.*)  Plaintiffs' allegations with respect to certain investigations of which CW12 claims to have knowledge (CAC ¶ 139) are similarly lacking. Plaintiffs do not specify any facts concerning the conclusions of this alleged investigation, let alone whether those conclusions contradicted any public statements regarding reserves or were even communicated to senior management.  Indeed, CW12 himself concedes that he "was not aware who specifically requested [his friend] to go [to these sites] or what he learned from his'" investigation.  (CAC ¶ 139.) In any event, CW12's information is based on hearsay from other individuals (CAC ¶ 139), and therefore is inadmissible.  (*Supra* pg. 19.)

[27] Likewise, Plaintiffs' allegations with respect to remediation costs or reserves at a small number of sites (CAC ¶ 137-38, 140) not only fail to establish the specific contents of those reports or which company officers reviewed them, but also do not establish that the overall reserves for environmental liabilities were in error.  *See, e.g.*, *Gavish*, 2004 WL 2210269, at *14 (allegation that defendant received "'extremely high levels of returns'" from one customer does not raise a sufficient inference that "overall reserves for returns were recklessly inadequate").  CW4's allegations that "Mikkelson changed financial documents and she did it by herself," (CAC ¶ 132), should not be surprising, considering that Mikkelson was the chief financial officer of Tronox, and was therefore in charge of Tronox's financial disclosures.  As such, CW4's allegations amounts to no more than an assertion that Mikkelson was doing her job.  To the extent that CW4 relies on the opinions of others, her statements are hearsay and therefore should be disregarded. (*Supra* pg. 19.)

133, 136, 139, 140.)  *See Druskin*, 299 F. Supp. 2d at 1334; *In re Salomon Analyst Level 3 Litig.*,

373 F. Supp. 2d at 252.  Indeed, Plaintiffs fail to allege that any confidential witness was qualified

to make judgments regarding reserves, or was even involved in the reserve-setting process.  *Elan*,

543 F. Supp. 2d at 217; *Malin*, 499 F. Supp. 2d at 141.[28]

### 3.   Plaintiffs' Failure to Allege a Sufficient Motive Undercuts Any Alleged Inference of Scienter

As will be addressed more fully in the Individual Defendants' briefs (and incorporated

herein) Plaintiffs also have failed to allege any compelling motive by Corbett, Wohleber and

Pilcher (or any other agent of KMG) to commit fraud that could be imputed to KMG as a matter of

law.[29]  Plaintiffs' allegation that defendants Corbett, Wohleber and Pilcher were motivated to "pass

[KMG's] environmental remediation and related tort liabilities onto Tronox and generate in excess

of $500 million in cash for [KMG] from the IPO," (CAC ¶ 146), fails to create a strong inference

of scienter.  Motivations such as these are insufficient because they could be imputed to any

company.  *See San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75

F.3d 801, 814 (2d Cir. 1996).  Indeed, "[c]ourts in this Circuit have consistently held that

allegations that a defendant was motivated to commit securities fraud by a desire to reduce its debt

burden . . . are insufficient to raise a scienter inference."  *In re Geopharma, Inc. Sec. Litig.*, 399 F.

Supp. 2d 432, 450 (S.D.N.Y. 2005).  Similarly, an alleged desire to "maximize proceeds from [an]

---

[28]  Plaintiffs' allegations regarding alleged GAAP violations (CAC ¶¶ 148-64) are also insufficient. The mere fact that Tronox has announced that it will restate earnings "does not support a strong, or even weak, inference of scienter."  *City of Brockston Ret. Sys. v. Shaw Group Inc.*, 540 F. Supp. 2d 464, 472 (S.D.N.Y. 2008).

[29]  Allegations that certain Tronox Individual Defendants were motivated to fraudulently conceal Tronox's alleged liabilities in order to increase their compensation and to maintain the purported illusion that Tronox was a successful company, (CAC ¶¶ 113, 120, 382), cannot be attributed to KMG because, as Plaintiffs allege, the Tronox Individual Defendants were acting as agents for Tronox—not KMG.  (CAC ¶ 113, 120.)  *See Dynex*, 531 F.3d at 195.  Plaintiffs' allegations that the Tronox Individual Defendants were aware of reserve deficiencies at Tronox due to their "associations with the Company" (CAC ¶ 121-23), fail for the same reason.

offering is an insufficient motive to show scienter." *In re Corning Sec. Litig.*, 2004 WL 1056063, at *27 (W.D.N.Y. Apr. 9, 2004), *aff'd*, 2005 WL 7143521 (2d Cir. 2005); *see also Rombach v. Chang*, 335 F.3d 164, 177 (2d Cir. 2004); *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 560 (S.D.N.Y. 2004).

As a result of Plaintiffs' failure to allege sufficiently that KMG was motivated to obtain a "concrete and personal" benefit, "a number of competing inferences regarding scienter arise." *Dynex*, 531 F.3d at 197. While Plaintiffs attempt to demonize the corporate transactions, the more cogent inference is that the board and individual officers were acting in their fiduciary capacity, in the interests of shareholders, to rationalize two disparate businesses. (*Supra* pg. 5 & n.5.) Another competing inference is that Tronox's reserves were reflective of the honestly held views and judgments of Tronox's management that were modified over time in light of market conditions and the emergence of new information, which Tronox warned could be the case. (Ex. D at 17.)

**D.     Plaintiffs Cannot Allege That KMG's Distribution of Class B Shares Constituted a Purchase or Sale of Securities**

The distribution of stock as a dividend does not constitute a purchase or sale of securities for purposes of the federal securities laws. *See In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 398 F. Supp. 2d 244, 260 (S.D.N.Y. 2005). Since, by Plaintiffs' own admission, Tronox's Class B shares were distributed to KMG shareholders in the form of a dividend, (CAC ¶ 15), the CAC must be dismissed with respect to any class member who only received Tronox Class B shares as a dividend. *See id.*[30]

---

[30] In addition, Plaintiffs fail to state a claim under Rules 10b-5(a) and (c). A plaintiff fails to plead "scheme" liability under SEC Rules 10b-5(a) and (c) where the plaintiff's allegations are premised solely on misleading statements or omissions. *See Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 177-78 (2d Cir. 2005); *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007). Since the alleged "scheme" by KMG concerns the only alleged "[non]*disclosure of the true magnitude of these liabilities and thereafter falsely reporting Tronox's financial results*" (CAC ¶

*(cont'd)*

### III.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER SECTION 20(A) AGAINST KMG OR ANADARKO[31]

As an initial matter, a claim under Section 20(a) is properly pled only where the plaintiff sufficiently alleges a primary violation of the federal securities laws by the controlled person, here, Tronox.  *See, e.g.*, *ATSI Commc'ns, Inc.*, 493 F.3d at 108.  (CAC ¶ 415.)  Therefore, Plaintiffs can state a primary claim under Section 10(b) against Tronox only if Tronox's senior management acted with requisite scienter.  *Dynex*, 531 F.3d at 194-95.  For the reasons set forth above and in the respective memoranda of law of the other defendants, Plaintiffs fail to state a primary claim against Tronox, and therefore Plaintiffs' Section 20(a) claim must be dismissed.

Plaintiffs' Section 20(a) claim also fails because they have not alleged that KMG or Anadarko "'was in some meaningful sense a culpable participant' in the primary violation." *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) (citation omitted); *Centerline*, 2009 WL 2391768, at *4.  While there is some debate among courts within the Second Circuit, the majority of courts require a plaintiff to plead, at a minimum, particularized facts of the controlling person's "conscious misbehavior or recklessness."  *In re Yukos Oil Sec. Litig.*, 2006 WL 3026024, at *23 (S.D.N.Y. Oct. 25, 2006) (citing cases).[32]  Accordingly, "[b]ecause Section 20(a) requires proof that the defendant acted with a particular state of mind, the PSLRA requires that, like scienter, the 'culpable participation' element of control person liability must be pled with particularity."  *Id.* (citing cases).  As shown above, Plaintiffs have failed to allege that KMG or Anadarko acted with

_____

*(cont'd from previous page)*

375.)  Plaintiffs' Rule 10b-5(b) claim warrants dismissal under SEC Rule 10b-5(a) or (c).  *See Lentell*, 396 F.3d at 177-78.

[31]  The elements of a Section 20(a) claim are set out in *In re Centerline Holdings Co. Sec. Litig.*, 2009 WL 2391768, at *4 (S.D.N.Y. Aug. 4, 2009) (Scheindlin, J.).

[32] This approach is in keeping with the PSLRA, which dictates that its heightened pleading standard applies to "any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind."  15 U.S.C. § 78u-4(b)(2).

scienter with respect to Plaintiffs' claim under Section 10(b).  (*Supra* Section II.C.)  Plaintiffs

therefore have failed to adequately allege culpable participation against either KMG or Anadarko.

*See, e.g.*, *id.*[33]

Finally, Plaintiffs have not adequately alleged that KMG controlled Tronox after March 30,

2006.  To establish control for purposes of alleging a 20(a) violation, "[a] complaint must allege

facts from which it can be inferred that the defendant had actual power or influence over the

controlled person."  *Harrison v. Rubenstein*, 2007 WL 582955, at *19 (S.D.N.Y. Feb. 26, 2007).

Assuming, *arguendo*, that Plaintiffs' allegations that KMG had the ability to control Tronox

because KMG owned the majority of Tronox's publicly traded shares and retained the ability to

appoint the majority of the directors to Tronox's board are sufficient under Section 20(a), (CAC ¶¶

28, 46-47, 103), neither condition applied after the Spin Off, when KMG distributed all of its

shares of Tronox stock to KMG's shareholders (*id.* ¶ 103), and all of KMG's executives resigned

their positions at Tronox (*id.* ¶ 17).  Indeed, "[o]n April 1, 2006, Tronox became an independent

company" (*id.* ¶ 17) and Plaintiffs have failed to allege that KMG retained the ability to control

Tronox after March 30, 2006.  Moreover, Plaintiffs do not adequately allege that Anadarko

controlled Tronox at any time—either before or after the Spin Off.[34]

---

[33]  In any event, Plaintiffs do not—and cannot—allege that KMG or Anadarko was a culpable participant in any alleged activities by Tronox after the Spin-Off.  (*See supra* II.C.)

[34]  Plaintiffs appear to allege that KMG, and later Anadarko, retained control over Tronox by virtue of the Master Separation Agreement that — according to the belief of one unidentified Tronox employee — provided that Tronox would lose an indemnity from KMG were Tronox to change its reserve calculations.  (CAC ¶¶ 4, 90.)  Taking this allegation as true for purposes of this motion, it fails for three reasons.  First, Plaintiffs do not allege that the purported indemnity agreement actually gave KMG the ability to dictate reserves to Tronox.  Second, Plaintiffs allege elsewhere in the CAC the indemnity was illusory because Tronox "would not have sufficient cash flow to spend the reserved amounts and thus qualify for indemnification."  (CAC ¶ 87.)  If, as Plaintiffs allege, Tronox did not have sufficient cash flow to qualify for indemnification, then Tronox would not possibly have felt compelled to take any action to preserve an indemnification

*(cont'd)*

## CONCLUSION

For the foregoing reasons, defendants Anadarko Petroleum Corporation and Kerr-McGee

Corporation respectfully submit that Plaintiffs' Consolidated Amended Complaint should be

dismissed with prejudice.

Dated: New York, New York
       January 11, 2010

                  Respectfully submitted,

                  SKADDEN, ARPS, SLATE,
                    MEAGHER & FLOM LLP

                      /s/ Jay B. Kasner
                  Jay B. Kasner (jay.kasner@skadden.com)
                  Susan L. Saltzstein (susan.saltzstein@skadden.com)
                  Joseph A. Matteo (joseph.matteo@skadden.com)
                  Four Times Square
                  New York, New York 10036
                  (212) 735-3000

                  Attorneys for Defendants
                    Anadarko Petroleum Corporation and
                    Kerr-McGee Corporation

---

*(cont'd from previous page)*
that it could never hope to receive.  Finally, these allegations should be stricken as they are based
entirely on the Adversary Complaint.  (*Supra* n.18.)