# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ——————————————— ) | Civil Action No. 09-CV-06220-SAS |
| IN RE TRONOX, INC. ) | |
| SECURITIES LITIGATION ) | Electronically filed |
| ——————————————— ) | |
| ) | |
| THIS DOCUMENT RELATES TO ) | |
| ALL CLASS ACTIONS ) | |
| ——————————————— ) | |

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement (the "Stipulation") is submitted in the above-captioned action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Subject to the approval of the United States District Court for the Southern District of New York (the "Court"), this Stipulation is entered into between and among (i) Lead Plaintiffs LaGrange Capital Partners, LP and LaGrange Capital Partners Offshore Fund, Ltd. (collectively, "Lead Plaintiffs"), Named Plaintiff The Fire and Police Pension Association of Colorado and Named Plaintiff The San Antonio Fire and Police Pension Fund (the "Named Plaintiffs," collectively with Lead Plaintiffs, "Plaintiffs"), on behalf of themselves and the Class (as defined below); (ii) Thomas W. Adams, Marty J. Rowland, Mary Mikkelson, (the "Tronox Individual Defendants"); (iii) Robert M. Wohleber, J. Michael Rauh, Luke R. Corbett, and Gregory F. Pilcher (the "Kerr-McGee Individual Defendants"); (iv) Kerr-McGee Corporation ("Kerr-McGee"); (v) Anadarko Petroleum Corporation ("Anadarko"); and (vi) Ernst & Young LLP ("E&Y"), by and through their respective counsel in the above-captioned consolidated class action (the "Action"). The Tronox Individual Defendants, the Kerr-McGee Individual Defendants, Kerr-McGee, Anadarko, and E&Y are collectively referred to as the

"Defendants."   Plaintiffs and Defendants are referred to collectively as the "Parties."   This Stipulation is intended by the Parties to fully, finally and forever settle and release all claims against the Defendants, upon and subject to the terms and conditions hereof (the "Settlement").

**WHEREAS:**

A.     On January 12, 2009, Tronox Incorporated ("Tronox") and its affiliated companies filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").   Pursuant to Section 362(a) of the Bankruptcy Code, all actions are automatically stayed against a debtor who files a voluntary petition under the Bankruptcy Code. Accordingly, Lead Plaintiffs did not name Tronox as a defendant in this Action.

B.     Between July 10, 2009 and August 12, 2009, three shareholder class actions were filed in this Court against certain of the Defendants for alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder based on allegedly false and misleading statements issued by Tronox and certain of its officers and directors in the period from November 21, 2005 through January 12, 2009.   On September 8, 2009, LaGrange Capital Partners, LP, LaGrange Capital Partners Offshore Fund, Ltd., The Fire and Police Pension Association of Colorado and The San Antonio Fire and Police Pension Fund, among others, moved to be appointed lead plaintiffs pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4 *et seq.*   On October 13, 2009, the Court appointed LaGrange Capital Partners, LP and LaGrange Capital Partners Offshore Fund, Ltd. as Lead Plaintiffs; the law firm of Gold Bennett Cera & Sidener LLP was appointed Lead Counsel; and the actions were consolidated under the caption *In re Tronox, Inc. Securities Litigation* (the "Action"). As reflected in the Court's October 13, 2009 Opinion and Order, it was agreed among counsel for

2

Plaintiffs that if the LaGrange entities were appointed to serve as lead plaintiff, The Fire and Police Pension Association of Colorado and The San Antonio Fire and Police Pension Fund would serve as Named Plaintiffs on behalf of bondholder claimants and work with the LaGrange entities.

C.     On November 24, 2009, Lead Plaintiffs filed the Consolidated Class Action Complaint For Violations of the Federal Securities Laws (the "Complaint").  The Complaint asserts claims on behalf of investors who purchased Tronox Class A and Class B common stock and/or Tronox Bonds during the period November 21, 2005 through and including January 12, 2009 (the "Class Period"), and alleged that Defendants issued materially false and misleading statements regarding the financial condition of Tronox, including its environmental and legacy liabilities, in violation of Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder. The Complaint asserted claims under Section 10(b) against all Defendants, and asserted "control person" claims under Section 20(a) against all Defendants except E&Y.  Plaintiffs' claims were based on allegations that Tronox was essentially insolvent at the time of the initial public offering ("IPO") and throughout the Class Period, materially understated its reserves for environmental liabilities throughout the Class Period and that such liabilities were not fully and adequately disclosed until Tronox filed for Chapter 11 bankruptcy protection on January 12, 2009.   The Complaint further alleged that certain of the Defendants controlled Tronox as of its initial public offering on November 21, 2005 and, through such control, dictated during the Class Period the recording of materially deficient reserves for environmental liabilities and Tronox's disclosures about reserves and, therefore, faced liability for the securities law violations alleged.

D.     On January 11, 2010, Kerr-McGee and Anadarko moved to dismiss the claims asserted against them arguing, among other things, that Plaintiffs had failed to adequately allege reliance and scienter, none of the alleged misstatements were attributed to Kerr-McGee or Anadarko

and the Complaint failed to plead facts demonstrating that they were "culpable participants" in a Section 10(b) violation by Tronox or the other Defendants for purposes of the "control person" claim. The Tronox and Kerr-McGee Individual Defendants moved to dismiss the claims asserted against them on January 19, 2010 arguing, among other things, that the Complaint failed to allege facts supporting a strong inference of scienter and that Plaintiffs failed to sufficiently allege misstatements by Defendants Corbett and Pilcher. E&Y moved to dismiss the claims against it on February 8, 2010 arguing, among other things, that the Complaint failed to allege facts permitting a strong inference of scienter, or to adequately allege reliance or loss causation.

E. In June 2010, while the motions to dismiss were pending, the Parties voluntarily engaged in a full day mediation session with a professional mediator in an effort to explore a potential resolution of the Action. However, the Parties were unable to reach a settlement at that time and the litigation continued to be aggressively prosecuted by the Lead Plaintiffs.

F. On June 28, 2010, the Court granted in part and denied in part Defendants' motions to dismiss. The Court denied the motions to dismiss filed by the Tronox Individual Defendants and E&Y in their entirety. Additionally, the Court ruled, among other things, that: Plaintiffs' claims against Kerr-McGee, Anadarko and the Kerr-McGee Individual Defendants for violations of Section 20(a) relating to misstatements after March 31, 2006 were dismissed without prejudice; Plaintiffs were granted leave to replead their claims that Kerr-McGee and/or the Kerr-McGee Individual Defendants controlled Tronox after March 31, 2006 (when Tronox was spun off from Kerr-McGee) and that Anadarko was a successor-in-interest to Kerr-McGee; and Plaintiffs' claims against Messrs. Corbett, Pilcher and Rauh, Kerr-McGee and Anadarko for violations of Section 10(b) were dismissed with prejudice based on the finding that these defendants made no actionable misstatements to the market regarding Tronox.

4

G.     On July 28, 2010, the Tronox Individual Defendants and E&Y filed their Answers to the Complaint.

H.     On July 30, 2010, Lead Plaintiffs filed the First Amended Consolidated Class Action Complaint (the "First Amended Complaint") which added substantial factual detail in support of the claims asserted for violations of Sections 10(b) and 20(a) during the Class Period dismissed in the Court's June 28, 2010 Order.[1]  The First Amended Complaint asserted the same Class Period as set forth in the Complaint.

I.     On August 27, 2010, Kerr-McGee and Wohleber moved to dismiss Plaintiffs' Section 20(a) claim for the period after March 31, 2006; Corbett and Pilcher moved to dismiss the claims against them in their entirety; and Anadarko again moved to dismiss the claim against it.

J.     On November 18, 2010, Lead Plaintiffs filed in the Bankruptcy Court a Stipulation And Agreed Order (I) Permitting Lead Plaintiffs To File Proof Of Claim Out Of Time And (II) Granting Lead Plaintiffs Limited Relief From the Automatic Stay And Other Related Relief (the "Bankruptcy Stipulation").  Among other things, the Bankruptcy Stipulation required Tronox to cooperate with Lead Plaintiffs in preserving and providing access to records and witnesses relevant to the claims in this Action and further provided that "the automatic stay shall be modified to the extent necessary to permit the Lead Plaintiffs to prosecute the Securities Litigation against Tronox in the District Court" with any recovery limited to the extent of any available insurance.

K.     On January 5, 2011, the Court denied certain of the Kerr-McGee Individual Defendants' motion to dismiss with respect to the period that pre-dates August 10, 2006; denied

---

[1]  The First Amended Complaint asserted claims under Section 10(b) against E&Y and the Tronox Individual Defendants for the full alleged Class Period and, with respect to Robert Wohleber, for the period covering November 21, 2005 through March 31, 2006.  The First Amended Complaint asserted claims under Section 20(a) against defendants Kerr-McGee, Thomas Adams, Mary Mikkelson, Marty Rowland and Luke Corbett for the full alleged Class Period; against defendant Anadarko for the period beginning August 10, 2006 through and including January 12, 2009; against defendant Michael Rauh for the period beginning November 21, 2005 through March 31, 2006; and against defendants Robert Wohleber and Gregory Pilcher for the period beginning November 21, 2005 through August 10, 2006.

Anadarko's motion to dismiss Plaintiffs' Section 20(a) claim that was predicated on control person liability and *respondeat superior* liability; and denied Kerr-McGee's motion to dismiss. The Court granted Anadarko's motion to dismiss Plaintiffs' Section 20(a) claim that was predicated on successor-in-interest liability and granted Luke Corbett's motion to dismiss Plaintiffs' Section 20(a) claim with respect to the period that post-dates August 10, 2006.

      L.      On February 4, 2011, Kerr-McGee, Anadarko, and the Kerr-McGee Individual Defendants answered the First Amended Complaint.

      M.      Thereafter, the Parties engaged in extensive discovery, which included significant document productions by the Plaintiffs, as well as the review of terabytes of data (equivalent to tens of millions of pages of documents) produced by Tronox and the Defendants, as well as non-parties. Defendants deposed a representative from each of Lead Plaintiffs, Named Plaintiffs and Named Plaintiffs' investment advisors. The Parties also engaged and consulted with experts who prepared detailed expert reports, and the Parties deposed each other's expert witnesses.

      N.      On August 9, 2011, Lead Plaintiffs moved for class certification. On September 16, 2011, Defendants opposed Lead Plaintiffs' motion on a number of grounds, including: (i) that Lead Plaintiffs' investment strategy and trading decisions rendered the Lead Plaintiffs atypical of the Class and inadequate to serve as a class representative; (ii) that each of the Named Plaintiffs was subject to unique defenses that rendered them atypical of the Class; and (iii) that Plaintiffs were not entitled to a fraud-on-the-market presumption of reliance because they failed to establish that the alleged corrective disclosures impacted the price of Tronox Securities or that the market for Tronox Bonds was efficient. Certain Defendants also alleged that Plaintiffs had failed to establish that the market for Tronox Common Stock was efficient during the entire Class Period. On October 26, 2011, Lead Plaintiffs' motion was denied without prejudice, and with leave to renew, because the

Court requested the Parties to re-submit their respective submissions in support of and in opposition to class certification pursuant to a revised Order governing page limitations and timing. No decision on the merits of the motion was made at that time. On November 11, 2011, Lead Plaintiffs filed their renewed motion for class certification; Defendants opposed it on November 23, 2011. On December 7, 2011, Lead Plaintiffs filed a reply memorandum in further support of class certification.

O.   In March 2012, the Parties, with the consent of the Court, agreed to participate in a mediation conducted by the Hon. Daniel Weinstein (Ret.) of JAMS. The Parties submitted detailed mediation statements to Judge Weinstein and conducted extensive, protracted negotiations through him, both in person and telephonically. Plaintiffs engaged in these discussions with a view to exploring the possibility of resolution of the issues in dispute consistent with achieving the best relief possible in the interests of the Class. Thereafter, the Parties (with the exception of E&Y) reached an agreement in principle to settle in March 2012 and signed a term sheet on May 31, 2012.

P.   On March 2, 2012, the Parties entered into a stipulated agreement to extend certain discovery deadlines set forth in a Scheduling Order entered on January 13, 2012, pursuant to which and with the consent of the Court, Lead Plaintiffs agreed to withdraw their motion for class certification without prejudice to re-submit as previously filed, to allow the parties additional time to conduct discovery and explore the possibility of reaching a mediated settlement of the Action.

Q.   Lead Plaintiffs filed their second renewed motion for class certification on May 17, 2012. As of that date, E&Y was the only defendant with which Plaintiffs had not reached an agreement in principle to settle.

R.   Plaintiffs continued to conduct settlement negotiations with E&Y while the motion was pending. Plaintiffs and E&Y reached an agreement in principle to settle in late May 2012.

S.        Plaintiffs' Counsel have conducted an extensive investigation of the facts; successfully opposed Defendants' motions to dismiss; engaged in significant discovery and document production, and retained and consulted with experts. They have also researched the applicable law with respect to the claims of Lead Plaintiffs and the other Class Members (as defined herein) against the Defendants and the potential defenses thereto.

T.        Based upon their knowledge of the case acquired through discovery and litigation to date, as set forth above, Plaintiffs' Counsel have concluded that the terms and conditions of this Settlement are fair, reasonable and adequate to Plaintiffs and the other Class Members and in their best interests, and have agreed to settle the claims raised in the Action as against the Defendants pursuant to the terms and provisions of this Stipulation, after considering: (1) the substantial benefits that Plaintiffs and other Class Members will receive from settlement of the claims against the Defendants; (2) the attendant risks of litigation; and (3) the desirability of permitting the Settlement to be consummated as provided by the terms of this Stipulation.

U.        Nothing in this Stipulation shall be construed or deemed to be evidence of an admission or concession on the part of any Defendant with respect to any claim or any fault or liability or wrongdoing or damages whatsoever, or any infirmity in the defenses that the Defendants have asserted or may assert. This Stipulation shall not be construed or deemed to be a concession by any Plaintiff of any infirmity in the claims asserted in the Action against the Defendants.

V.        The Parties to this Stipulation recognize that the Action has been filed by Plaintiffs and defended by Defendants in good faith and with adequate basis in fact under Rule 11 of the Federal Rules of Civil Procedure; that the claims against the Defendants are being voluntarily settled on advice of counsel; and that the terms of the Settlement are fair, adequate and reasonable.

W.      Defendants deny any wrongdoing or liability whatsoever; and this Stipulation shall in no event be construed as or deemed to be evidence of or an admission or concession on the part of any Defendant with respect to any claim, or of any fault or liability or wrongdoing or damage whatsoever, or of any infirmity in the defenses that the Defendants have asserted or could assert, if the Action were to proceed.  Nonetheless, Defendants recognize that further litigation in the Action would be protracted and expensive, and that there is uncertainty and risk in any complex litigation. Defendants, have, therefore, determined that it is desirable and beneficial to them that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation.

**NOW THEREFORE,** it is hereby STIPULATED AND AGREED, by and among the Parties to this Stipulation, through their respective attorneys, subject to approval of the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the Parties from the Settlement, that this Action and all Settled Claims (as defined below) as against the Released Parties (as defined below) and all Released Claims Against Plaintiffs (as defined below) shall be compromised, settled, released and dismissed with prejudice, upon and subject to the following terms and conditions:

**<u>CERTAIN DEFINITIONS</u>**

1.      As used in this Stipulation, the following terms shall have the following meanings:

a.      "Action" means *In re Tronox, Inc. Securities Litigation*, No. 1:09-cv-06220-SAS, and includes all actions consolidated therein pursuant to the Court's October 13, 2009 Order.

b.      "Anadarko" means Anadarko Petroleum Company.

c.      "AP" means the action captioned *Tronox Inc. et al. v. Anadarko Petroleum Corp., et al.*, No. 09-1198 (ALG) (Bankr. S.D.N.Y.).

9

d.      "Authorized Claimant" means a Class Member who submits a Proof of Claim Form to the Claims Administrator, in accordance with the requirements established by the Court, that is approved for payment from the Net Settlement Fund.

e.      "Bankruptcy Case" means the case captioned *In re Tronox Inc., et al.*, No. 09-10156 (ALG) in the Bankruptcy Court.

f.      "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York.

g.      "Bankruptcy Court Order" means the Stipulation And Agreed Order By And Among Tronox, Inc., Certain Of Its Former Directors And Officers, Kerr-McGee Corporation, Anadarko Petroleum Corporation And Certain Of Their Current And Former Directors And Officers Authorizing Payment Of Settlement Amount From Proceeds Of D&O Insurance Policies, entered in the Bankruptcy Case on July 17, 2012 (Dkt. No. 2969).

h.      "Claim" means a claim for payment from the Net Settlement Fund.

i.      "Claim Form" or "Proof of Claim Form" means the form, substantially in the form attached hereto as Exhibit A-2, that a Claimant must complete should that Claimant seek to share in a distribution of the Net Settlement Fund.

j.      "Claimant" means a person or entity that submits a Claim Form to the Claims Administrator seeking to share in the proceeds of the Net Settlement Fund.

k.      "Claims Administrator" means Gilardi & Co., LLC, which has been retained by Lead Plaintiffs and Lead Counsel, subject to approval of the Court, to provide all notices approved by the Court to potential Class Members and to administer the Settlement.

l.      "Class" means, for purposes of this Settlement, all persons or entities who purchased or otherwise acquired shares of Tronox Class A and/or Class B common stock ("Tronox

Common Stock") and/or 9½% senior notes due 2012 ("Tronox Bonds") (collectively "Tronox Securities") during the period from November 21, 2005 through and including January 12, 2009 and who were damaged thereby.  Excluded from the Class are the following persons or entities: (i) Defendants and Tronox; (ii) the parents, successors, subsidiaries, affiliates and assigns of any Defendant or of Tronox; (iii) members of the Immediate Family of each of the Individual Defendants; (iv) any person who was a partner of E&Y or an officer or director of Tronox, Kerr-McGee or Anadarko, during the Class Period; and (v) any firm, trust, corporation, or other entity in which any of the Defendants has a controlling interest or had a controlling interest during the Class Period.  Also excluded from the Class are any persons or entities who exclude themselves by filing a timely request for exclusion in accordance with the requirements set forth in the Notice.

    m.  "Class Distribution Order" means the first order entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to the Authorized Claimants.

    n.  "Class Member" means a person or entity that is a member of the Class and does not exclude himself, herself or itself by filing a timely request for exclusion in accordance with the requirements set forth in the Notice.

    o.  "Class Period" means the period from November 21, 2005 through and including January 12, 2009.

    p.  "Company Defendants" means the Tronox Individual Defendants, the Kerr-McGee Individual Defendants, Kerr-McGee and Anadarko.

    q.  "Complaint" means the Consolidated Class Action Complaint for Violation of the Securities Laws that was filed in the Court on November 24, 2009.

11

r.     "Court" means the United States District Court for the Southern District of New York in which the Action is pending.

s.     "Defendants" means (i) Thomas W. Adams, Marty J. Rowland, Mary Mikkelson, (the "Tronox Individual Defendants"); (ii) Robert M. Wohleber, J. Michael Rauh, Luke R. Corbett, and Gregory F. Pilcher (the "Kerr-McGee Individual Defendants"); (iii) Kerr-McGee Corporation ("Kerr-McGee"); (iv) Anadarko Petroleum Corporation ("Anadarko"); and (v) Ernst & Young LLP ("E&Y").

t.     "Defendants' Counsel" means the law firms of Weil, Gotshal & Manges LLP (representing Kerr-McGee and Anadarko); Dechert LLP (representing Thomas W. Adams, Mary Mikkelson and Marty J. Rowland); Sullivan and Cromwell LLP (representing Gregory F. Pilcher, J. Michael Rauh, Robert M. Wohleber and Luke R. Corbett); and Baker Botts L.L.P. (representing Ernst & Young LLP).

u.     "Effective Date" means the first date by which all of the events and conditions specified in ¶ 36 of this Stipulation have been met and have occurred.

v.     "Escrow Account" means an escrow account named "Tronox, Inc. Securities Litigation Settlement Fund" maintained at Union Bank, N.A. to hold the Total Settlement Fund, which account, subject to the Court's supervisory authority, shall be maintained by an independent escrow agent.

w.     "Escrow Agent" means Union Bank, N.A.

x.     "Final" means when the last of the following with respect to the Final Judgment approving the Stipulation, substantially in the form of Exhibit B attached hereto, shall have occurred:  (i) the expiration of the time to file a motion to alter or amend the Final Judgment under Federal Rule of Civil Procedure 59(e) has passed without any such motion having been filed;

(ii) the expiration of the time in which to appeal from entry of the Final Judgment has passed without any appeal having been taken; and (iii) if a motion to alter or amend or for reconsideration is filed or if an appeal is taken, the determination of that motion or appeal in such a manner that affirms and leaves in place the Final Judgment without any material modification, substantially in accordance with the terms and conditions of this Stipulation.  For purposes of this paragraph, an "appeal" shall include any petition for a writ of certiorari or other writ that may be filed in connection with approval or disapproval of this Stipulation or the Settlement herein, or request for en banc review or reconsideration, and all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand, but shall not include any appeal which concerns only the issue of attorneys' fees and expenses, any plan of allocation of the Total Settlement Fund, or the Court's findings and conclusions pursuant to Section 21D(c)(1) of the Exchange Act, as amended by the PSLRA.

    y. "Final Judgment" means the judgment to be rendered by the Court, substantially in the form attached hereto as Exhibit B.

    z. "First Amended Complaint" means the First Amended Consolidated Class Action Complaint that was filed in the Court on July 30, 2010.

    aa. "Immediate Family" means an individual's spouse, parents, siblings, children, grandparents, grandchildren; the spouses of his or her parents, siblings and children; and the parents and siblings of his or her spouse, and includes step and adoptive relationships.  In this paragraph, "spouse" shall mean a husband, a wife, or a partner in a state-recognized domestic partnership or civil union.

    bb. "Individual Defendants" means Thomas W. Adams, Marty J. Rowland, Mary Mikkelson, Robert M. Wohleber, J. Michael Rauh, Luke R. Corbett and Gregory F. Pilcher.

13

cc. "Kerr-McGee" means Kerr-McGee Corporation, Anadarko's wholly-owned subsidiary, which was initially incorporated in 2001.

dd. "Lead Counsel" means the law firm of Gold Bennett Cera & Sidener LLP that was appointed Lead Counsel by the Court's October 13, 2009 Order.

ee. "Lead Plaintiffs" means LaGrange Capital Partners, LP and LaGrange Capital Partners Offshore Fund, Ltd.

ff. "Litigation Expenses" means costs and expenses incurred by Plaintiffs' Counsel in connection with commencing and prosecuting the Action (which may include the costs and expenses of Plaintiffs directly related to their representation of the Class), for which Lead Counsel intend to apply to the Court for reimbursement from the Total Settlement Fund.

gg. "Net Settlement Fund" means the Total Settlement Fund less: (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the Court; and (iv) any attorneys' fees awarded by the Court.

hh. "Notice" means the Notice of Pendency of Class Action and Proposed Settlement, Settlement Fairness Hearing, and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses, substantially in the form attached hereto as Exhibit A-1, which is to be sent to Class Members.

ii. "Notice and Administration Costs" means the costs, fees and expenses that are incurred by the Claims Administrator and/or Lead Counsel in connection with (i) providing notice to the Class; and (ii) administering the Claims process, as well as the costs, fees and expenses incurred in connection with the Escrow Account.

jj.     "Plaintiffs" means LaGrange Capital Partners, LP, LaGrange Capital Partners Offshore Fund, Ltd., The Fire and Police Pension Association of Colorado and The San Antonio Fire and Police Pension Fund.

kk.     "Plaintiffs' Counsel" means Lead Counsel, Bernstein Litowitz Berger & Grossmann LLP and all other legal counsel who, at the direction and under the supervision of Lead Counsel, performed services on behalf of the Class in the Action.

ll.     "Plan of Allocation" means the proposed plan or formula of allocation for distributing the Net Settlement Fund to Authorized Claimants set forth in the Notice.

mm.    "Preliminary Approval Order" means the order, substantially in the form attached hereto as Exhibit A, to be entered by the Court preliminarily approving the Settlement, certifying the Class for settlement purposes only, and directing that notice be provided to the Class.

nn.     "Related Parties" means each and all of the Defendants' (i) past and/or present directors, officers, employees, partners, principals, controlling shareholders, predecessors, successors, assigns, parents, subsidiaries, divisions, and affiliates, and the respective members of their Immediate Families, their respective heirs, executors, estates, administrators, and agents, each in their capacity as such; (ii) their insurers, co-insurers, reinsurers, attorneys, accountants or auditors, personal or legal representatives, each in their capacity as such; and (iii) as to the Individual Defendants, the respective members of their Immediate Families, their respective heirs, executors, estates, administrators, and agents, each in their capacity as such.

oo.     "Released Parties" means each and all of the Defendants and their Related Parties.

pp.     "Released Claims Against Plaintiffs" means any and all claims, causes of action and rights of every nature and description, including Unknown Claims (as defined below),

whether direct, derivative, individual, representative, or in any other capacity, arising under federal, state, local or foreign statutory or common law or any other law, rule or regulation, to the fullest extent that the law permits their release in this Action, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against the Defendants or the allegations, transactions, facts, matters or occurrences underlying such claims, except for claims relating to the enforcement of the terms of this Stipulation and the Settlement.  Nothing herein shall release, bar, waive, impair, prejudice or otherwise impact the rights of Anadarko to assert additional claims or defenses against Tronox, Inc. in the AP.

        qq.    "Settled Claims" means any and all claims, causes of action and rights of every nature and description, including Unknown Claims (as defined below), whether direct, derivative, individual, or representative, or in any other capacity, arising under federal, state, local or foreign statutory or common law or any other law, rule or regulation, to the fullest extent that the law permits their release in this Action, that Plaintiffs or any other member of the Class (a) asserted in the Complaint, the First Amended Complaint, or any other pleadings or briefs filed by Lead Plaintiffs in this Action, or (b) could have asserted in any forum that arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint or the First Amended Complaint (including without limitation all claims arising out of or relating to any disclosures, public filings, registration statements, or other statements by Tronox or any of the Defendants referred to or set forth in the Complaint, the First Amended Complaint, or any other pleadings or briefs filed by Lead Plaintiffs in this Action),  or any other pleadings or briefs filed by Lead Plaintiffs in this Action and that arise out of or are in any way related to the purchase, ownership or sale of Tronox Securities during the Class Period. Notwithstanding the foregoing, "Settled Claims" do not include, release, bar, waive, impair,

prejudice, or otherwise impact (i) the rights of Lead Plaintiffs and the Class under the Stipulation and Agreed Order dated November 16, 2010 between Lead Plaintiffs and the Debtors in the Bankruptcy Case; (ii) any claim or right to recovery of any Plaintiff or any other Class Member individually in the Bankruptcy Case based upon his, her or its status as a holder or beneficial owner of a Tronox, Inc. debt or equity security with respect to their rights to participate in the distribution of funds in the Bankruptcy Case; for the sake of clarity, nothing in this clause is intended to create a cause of action or claim, either directly or indirectly, against any Defendant in the Bankruptcy Case; (iii) Plaintiffs' and each other Class Member's right to participate in the distribution of any funds recovered from any of the Defendants by any governmental or regulatory agency; for the sake of clarity, nothing in this clause is intended to create a cause of action or claim, either directly or indirectly, against any Defendant and Plaintiffs are enjoined from seeking to have any government or regulatory agency institute or pursue claims against the Released Parties for Settled Claims; or (iv) claims relating to enforcement of the terms of this Stipulation or the Settlement.

      rr.    "Settlement Amount" means the thirty-seven million dollars ($37,000,000) which shall be paid as follows: (a) Anadarko, Kerr-McGee and the Kerr-McGee Individual Defendants shall pay, or shall cause their insurance carriers to pay $21,000,000 (the "Anadarko Settlement Payment"); (b) the Tronox Individual Defendants shall cause their insurance carriers to pay $14,000,000 (the "Tronox Settlement Payment"); and (c) E&Y shall pay $2,000,000 (the "E&Y Settlement Payment").

      ss.    "Settlement Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

      tt.    "Summary Notice" means the Summary Notice of Pendency of Class Action and Proposed Settlement, Settlement Fairness Hearing, and Motion for Attorneys' Fees and

Reimbursement of Litigation Expenses, substantially in the form attached hereto as Exhibit A-3, to be published as set forth in the Preliminary Approval Order.

uu.    "Taxes" means all federal, state and/or local taxes of any kind on any income earned by the Total Settlement Fund, including the expenses and costs of tax attorneys and accountants retained by Lead Counsel.

vv.    "Total Settlement Fund" means the Settlement Amount plus any income or interest earned thereon.

ww.    "Tronox Bonds" means the 9½% senior notes due 2012 issued by Tronox.

xx.    "Tronox Common Stock" means the Class A and Class B shares of common stock issued by Tronox.

yy.    "Tronox Securities" means Tronox Common Stock and Tronox Bonds collectively.

zz.    "Unknown Claims" means any Settled Claim which any Plaintiff or any other Class Member does not know or suspect to exist in his, her or its favor at the time of the release of such claims, and any Released Claims Against Plaintiffs which any Defendant or any other Released Party does not know or suspect to exist in his, her or its favor at the time of the release of such claims, which if known by him, her or it might have affected his, her or its decision(s) with respect to this Settlement.  With respect to any and all Settled Claims and Released Claims Against Plaintiffs, the Parties stipulate and agree that, upon the Effective Date, Plaintiffs and the Defendants shall expressly waive, and each other Class Member and each other Released Party shall be deemed to have waived, and by operation of the Final Judgment shall have expressly waived the provisions, rights and benefits conferred by California Civil Code § 1542 or any law of any state or territory of

the United States, or principle of common law, or foreign law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiffs and the Defendants, and each other Class Member and each other Released Party may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Settled Claims and Released Claims Against Plaintiffs, but Plaintiffs and the Defendants, and each other Class Member and each other Released Party, upon the Effective Date, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever settled and released any and all Settled Claims and Released Claims Against Plaintiffs, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Plaintiffs and Defendants acknowledge, and each other Class Member and each other Released Party by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Settled Claims and Released Claims Against Plaintiffs was separately bargained for and was a key element of the Settlement of which this release is a part.

## PRELIMINARY APPROVAL OF SETTLEMENT

2.      Lead Plaintiffs will file the Stipulation and move for entry of the Preliminary Approval Order substantially in the form attached as Exhibit A, which will certify the Action to proceed as a class action, pursuant to Rule 23(a) and (b)(3), for settlement purposes only.   The

motion shall indicate that Defendants have stipulated for settlement purposes only to the certification of the Class, the appointment of Plaintiffs as Class Representatives and the appointment of Lead Counsel as Class Counsel. The motion shall be unopposed by the Defendants.

## SETTLEMENT CONSIDERATION

### *The Settlement Amount*

3.      In consideration of the Settlement of claims asserted in this Action, and subject to the terms and conditions of this Stipulation, no later than ten (10) business days after the later to occur of (i) entry of the Preliminary Approval Order; (ii) receipt of complete payment information for paying by wire transfer, including a W-9 for the Total Settlement Fund; and (iii) entry of the Bankruptcy Court Order, and in accordance with the wire transfer instructions to be provided by Lead Counsel, Anadarko, Kerr-McGee and the Kerr-McGee Individual Defendants, or their insurance carriers, shall deposit the Anadarko Settlement Payment into the Escrow Account; the Tronox Individual Defendants or their insurance carriers shall deposit the Tronox Settlement Payment into the Escrow Account; and E&Y shall deposit the E&Y Settlement Payment into the Escrow Account. The Defendants' payment obligations, as set forth above, are not joint and several obligations.

### *The Escrow Agent*

4.      Lead Counsel shall open an Escrow Account maintained by an independent Escrow Agent into which the Settlement Amount is to be deposited. The Escrow Agent shall invest any funds in the Escrow Account in United States Treasury Bills (or a mutual fund invested solely in such instruments) and shall collect and reinvest all interest accrued thereon, except that any residual cash balances of less than $100,000 may be invested in money market mutual funds comprised exclusively of investments secured by the full faith and credit of the United States. In the event that

the yield on United States Treasury bills is negative, in lieu of purchasing such Treasury Bills, all or any portion of the funds held by the Escrow Agent may be deposited in a non-interest bearing account that is fully insured by the FDIC. No risk related to the investment of the Total Settlement Fund in the Escrow Account shall be borne by any of the Defendants.

5.      All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and the funds and the Escrow Agent shall remain subject to the jurisdiction of the Court, until such time as such funds shall have been distributed or returned pursuant to the terms of this Stipulation and/or further order(s) of the Court.

6.      No portion of the Total Settlement Fund shall be disbursed except as provided in this Stipulation, as provided by an order of the Court, or with the written agreement of Defendants' Counsel.

## RELEASE OF CLAIMS

7.      The obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Action as against the Defendants, and shall fully and finally release any and all Settled Claims as against all Released Parties and shall also release any and all Released Claims Against Plaintiffs as against Plaintiffs, all of their respective counsel and all other Class Members. On the Effective Date, the Action shall be dismissed as against the Defendants with prejudice and without costs.

8.      Pursuant to the Final Judgment, upon the Effective Date, each of the Plaintiffs and all other Class Members, and each of their respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parents, subsidiaries, partners, directors, investors and agents in their capacity as such, will release and shall be deemed by operation of law to have fully, finally, and forever released, waived, discharged and dismissed each and every Settled Claim

21

against each and all of the Released Parties, whether or not the Plaintiffs or Class Members execute and deliver a Proof of Claim Form to the Claims Administrator.

9.     Pursuant to the Final Judgment, upon the Effective Date, each of the Defendants and each of the other Released Parties, and each of their respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parents, subsidiaries, partners, principals, directors, investors, investment advisors and agents in their capacity as such, will release and shall be deemed by operation of law to have fully, finally, and forever released, waived, discharged and dismissed each and every Released Claim Against Plaintiffs as against (i) all Plaintiffs and their respective attorneys, (ii) any other Class Member, and (iii) each of the foregoing individuals' and/or entities' respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parents, subsidiaries, partners, principals, directors, investors, investment advisors and agents in their capacity as such.

## MUTUAL RELEASE AMONG THE DEFENDANTS

10.     Upon final judicial approval of the Settlement, each of the Defendants, and each of their present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parents, subsidiaries, partners, principals, directors and agents in their capacity as such, will release as against any of the other Defendants and each of their present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parents, subsidiaries, partners, principals, directors and agents in their capacity as such, all claims (including but not limited to claims for contribution and indemnity), and causes of action, whether known or unknown, whether direct, derivative, individual, representative, or in any other capacity, arising under federal, state, local or foreign statutory or common law or any other law, rule or regulation that arise out of or are in any way related to the allegations, transactions, facts, matters or occurrences underlying the claims set forth

or referred to in the First Amended Complaint or the AP, except for claims relating to the enforcement of the Settlement. Nothing herein shall release, prejudice, waive, impact or impair the rights of Anadarko to assert additional claims or defenses against Tronox in the AP. Moreover, nothing herein shall release, prejudice, waive, impact or impair the rights of any of the Company Defendants to seek insurance coverage under their respective insurance policies in accordance with the terms of such policies; however, subject to the insurance carriers' payment of their respective portions of the Anadarko Settlement Payment and the Tronox Settlement Payment and the occurrence of the Effective Date, none of the Company Defendants or their insurance carriers will seek to recover any funds contributed to the Anadarko Settlement Payment and the Tronox Settlement Payment (or spent in connection with the Settlement or the claims released herein, including defense costs) from any of the other Company Defendants' insurance carriers or otherwise seek to modify the pro rata contributions of each insurance tower to the Anadarko Settlement Payment and the Tronox Settlement Payment. Finally, nothing herein shall release, prejudice, waive, impact, or impair the rights and obligations of the Kerr-McGee Individual Defendants and Kerr-McGee under the Kerr-McGee bylaws.

11. Notwithstanding paragraph 10 above, if the Settlement is terminated as to E&Y but not the Company Defendants, then the Mutual Release described in paragraph 10 shall be terminated and given no effect with respect to E&Y, remaining in effect only among and between the Company Defendants. If the Settlement is terminated as to the Company Defendants but not E&Y, the Mutual Release shall be terminated and given no effect.

## USE OF SETTLEMENT FUNDS

12. The Total Settlement Fund shall be used to pay: (a) Taxes; (b) Notice and Administration Costs; (c) any Litigation Expenses awarded by the Court; and (d) any attorneys' fees

awarded to Plaintiffs' Counsel by the Court. The balance remaining in the Escrow Account after these payments are made (the "Net Settlement Fund") shall be distributed to Authorized Claimants as provided below.

13.     Except as provided herein or pursuant to orders of the Court, the Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date.

14.     This is not a claims-made settlement. Upon the occurrence of the Effective Date, neither the Defendants nor any person or entity who or which paid any portion of the Settlement Amount on their behalf shall have any right to the return of the Settlement Amount or any portion thereof irrespective of the number of Claims filed, the collective amount of losses of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund.

15.     The Claims Administrator shall discharge its duties under Lead Counsel's supervision and subject to the jurisdiction of the Court. Except as otherwise provided herein, neither the Defendants nor the other Released Parties shall have any responsibility for the administration of the Settlement and shall have no liability to any person, including, but not limited to, the Class Members, in connection with such administration. Lead Counsel shall cause the Claims Administrator to mail the Notice and Proof of Claim Form to those members of the Class at the address of each such person as set forth in the records of Tronox or its transfer agent(s), or who otherwise may be identified through further reasonable effort. Lead Counsel will cause to be published the Summary Notice pursuant to the terms of the Preliminary Approval Order or whatever other form or manner might be ordered by the Court. Lead Counsel or the Claims Administrator shall be responsible for obtaining from Tronox its security holder lists (consisting of security purchaser or holder names and addresses) in electronic form, to be provided to the Claims

Administrator.  The Company Defendants shall exercise their best efforts to assist Lead Counsel or the Claims Administrator in this effort.

16.    Notwithstanding the fact that the Effective Date has not yet occurred, Lead Counsel, subject to entry of an order preliminarily approving the Settlement, may pay from the Total Settlement Fund, without further approval from Defendants, all reasonable Notice and Administration Costs actually incurred, up to a maximum aggregate total of $200,000.00.  Such costs and expenses shall include, without limitation, the actual costs of printing and mailing the Notice and Proof of Claim Form, reimbursements to nominee owners for forwarding the Notice and Proof of Claim Form to the beneficial owners of Tronox Securities, publication of the Summary Notice, the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing Notice and processing the submitted Claims, and the fees, if any, of the Escrow Agent.  After the occurrence of the Effective Date, all incurred unpaid costs above $200,000 shall be paid in accordance with the provisions of paragraph 33 below.  In the event that the Settlement is terminated pursuant to the terms of this Stipulation, all Notice and Administration Costs reasonably paid or reasonably incurred, including any related fees, shall not be returned or repaid to the Defendants or to any person or entity who or which paid any portion of the Settlement Amount on their behalf; provided, however, that the amount of Notice and Administration Costs and related fees expended will be assessed to each Defendant on a pro rata basis in proportion to that party's contribution to the total Settlement Amount, such contribution amounts to be provided to Lead Counsel by Defendants' respective counsel.  In such event, however, Lead Counsel shall provide the Defendants with an accounting of all monies disbursed from the Escrow Account.

## ATTORNEYS' FEES AND LITIGATION EXPENSES

17.     Lead Counsel will apply to the Court for (i) an award of attorneys' fees to Plaintiffs' Counsel and (ii) reimbursement of Litigation Expenses incurred in connection with the prosecution of this Action in amounts not to exceed those set forth in the Notice such amounts to be paid from the Total Settlement Fund.  None of the Defendants, nor any other Released Party, shall take any position with respect to Lead Counsel's application for an award of attorneys' fees and/or Litigation Expenses.

18.     Any attorneys' fees and Litigation Expenses that are awarded by the Court shall be paid to Lead Counsel from the Total Settlement Fund immediately upon their award after entry by the Court of the Final Judgment, notwithstanding the existence of any timely filed objections thereto, or potential appeal therefrom, or collateral attack on the Settlement or any part thereof.  In the event that the Effective Date does not occur, or the Final Judgment or the order granting the attorneys' fees and Litigation Expense award is reversed, vacated or modified, or this Stipulation is canceled or terminated for any other reason, and in the event that the attorneys' fees and Litigation Expense award has been paid to any extent to Plaintiffs' Counsel, then Plaintiffs' Counsel shall be obligated to refund to the Escrow Account such amounts of fees and expenses as are consistent with any reversal, vacatur or modification plus interest at the same net rate as earned on the Total Settlement Fund no later than ten (10) business days after receiving from the relevant Defendants' Counsel or a court of appropriate jurisdiction notice of such an event.  Plaintiffs' Counsel, as a condition of receiving such fees and expenses, agrees that it is subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph.

19.     An award of attorneys' fees and/or Litigation Expenses is not a necessary term of this Stipulation or a condition of this Stipulation, the Settlement or the releases provided herein.  Lead

Plaintiffs and Lead Counsel may not cancel or terminate the Stipulation or the Settlement based on the Court's or any appellate court's ruling with respect to attorneys' fees and/or Litigation Expenses. Any appeal relating to an award of attorneys' fees or Litigation Expenses will not affect the finality of the Settlement, the Final Judgment or the releases provided herein.

20.     Lead Counsel shall have the sole authority to allocate the Court-awarded attorneys' fees amongst Plaintiffs' Counsel in a manner which they, in good faith, believe reflects the contributions of such counsel to the prosecution and settlement of the Action. The Defendants and the other Released Parties shall have no responsibility for any payment of attorneys' fees and expenses to Lead Counsel, or any other Plaintiff's Counsel, over and above payment of their respective settlement payments as specified in Paragraph 1(rr). The Defendants and the other Released Parties shall have no responsibility for any payment or allocation of any other fees or expenses, in the event that any other person asserts a claim for fees or expenses.

## TAXES

21.     The Parties shall treat the Total Settlement Fund as a "Qualified Settlement Fund" for purposes of §468B of the Internal Revenue Code of 1986, as amended, and the Treasury Regulations promulgated thereunder. Gilardi & Co., as administrator of the Total Settlement Fund within the meaning of Treasury Regulation §1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out Paragraphs 20-24 of this Stipulation including, as necessary, making a "relation back election," as described in Treasury Regulation § 1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith. As administrator, Gilardi & Co. shall be responsible for filing or causing to be filed all informational and other tax returns for the Total Settlement Fund (including, without limitation, the returns described in Treas.

Reg. §§1.468B-2(k)(1) and 1.468B-2(1)(2)) and paying from the Total Settlement Fund any Taxes owed thereon. Defendants' Counsel agree to provide promptly to Lead Counsel the statement described in Treasury Regulation Section 1.468B-3(e). The Parties and their counsel shall jointly make such elections as are necessary or advisable to carry out the provisions of this Paragraph 21.

22.     All Taxes arising with respect to income earned by the Total Settlement Fund shall be paid out of the Total Settlement Fund, and shall be timely paid by the Escrow Agent pursuant to the disbursement instructions to be set forth in the Escrow Agreement, and without prior order of the Court. Any tax returns prepared for the Total Settlement Fund (as well as the election set forth therein) shall be consistent with the previous paragraph and in all events shall reflect that all Taxes (including any interest or penalties) on the income earned by the Total Settlement Fund shall be paid out of the Total Settlement Fund as provided herein.

23.     The Total Settlement Fund shall indemnify each of the Defendants and the other Released Parties for all Taxes imposed on the income earned by the Total Settlement Fund. Without limiting the foregoing, from the Total Settlement Fund, the Escrow Agent shall reimburse Defendants within ten (10) days of written demand jointly submitted by Lead Counsel and Defendants' Counsel for any such Taxes to the extent they are imposed on Defendants for a period during which the Total Settlement Fund does not qualify as a "qualified settlement fund." All amounts payable pursuant to Paragraphs 21-25 shall be paid from the Total Settlement Fund without prior order of the Court.

24.     For purposes of Paragraphs 21-25, references to the Total Settlement Fund shall include any income or interest earned on the Settlement Amount.

25.     Defendants shall have no responsibility for or involvement in maintaining or investing the Settlement Amount or the Total Settlement Fund or for the establishment or

maintenance of the Escrow Account, for the payment of Taxes, or for the distribution of the Total

Settlement Fund or the administration of the Settlement.  Defendants take no position with respect to

the provisions of this Stipulation governing those issues.  Defendants shall have no further or other

liability or obligations to Lead Plaintiffs, Lead Counsel, Plaintiffs' Counsel or any other Class

Member with respect to the Total Settlement Fund except for making the payments of the Settlement

Amount in the manner and at the times expressly stated in this Stipulation.

## CLAIMS ADMINISTRATOR

26.    The Claims Administrator shall administer the process of receiving, reviewing and

approving or denying Claims under Lead Counsel's supervision and subject to the jurisdiction of the

Court.  Other than the Company Defendants' obligation to use their best efforts to assist Lead

Plaintiffs in obtaining from Tronox its security holder lists as forth in Paragraph 15 above, none of

the Defendants or other Released Parties shall have any responsibility whatsoever for the

administration of the Settlement or the claims process and shall have no liability whatsoever to any

person, including, but not limited to, Lead Plaintiffs, any other Class Members, Lead Counsel or

Plaintiffs' Counsel in connection with such administration.

27.    The Claims Administrator shall receive Claims and determine first, whether the

Claim is a valid Claim, in whole or in part; and second, each Authorized Claimant's *pro rata* share

of the Net Settlement Fund based upon each Authorized Claimant's loss amount (as set forth in the

Plan of Allocation to be submitted by Lead Counsel to the Court for approval, or in such other plan

of allocation as the Court approves).

28.    The Plan of Allocation to be proposed by Lead Counsel (which is set forth in the

Notice attached hereto as Exhibit 1 to Exhibit A) is not a necessary term of this Stipulation, and it is

not a condition of this Stipulation, the Settlement, or the releases provided herein that any particular

plan of allocation be approved by the Court.  Lead Plaintiffs and Lead Counsel may not cancel or terminate the Stipulation or the Settlement based on the Court's or any appellate court's ruling with respect to the Plan of Allocation or any plan of allocation in this Action.  No Defendant or any other Released Party shall object to, or have any responsibility or liability whatsoever for allocation of the Net Settlement Fund.  Any appeal relating to the allocation of the Net Settlement Fund, the administration of the Settlement or the claims process will not affect the finality of the Settlement, the Final Judgment, or the releases provided herein.

29.     Any Class Member who does not submit a valid Claim Form will not be entitled to receive any distribution from the Net Settlement Fund but will otherwise be bound by all of the terms of this Stipulation and Settlement, including the terms of the Final Judgment to be entered in the Action and the releases provided for herein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against any Released Party concerning any Settled Claim.

30.     Lead Counsel shall be responsible for supervising the administration of the Settlement and disbursement of the Net Settlement Fund.  No Defendant or any other Released Party, shall have any liability, obligation or responsibility whatsoever for the administration of the Settlement or disbursement of the Net Settlement Fund.  No Defendant or any other Released Party, shall be permitted to review, contest or object to any Claim Form or any decision of the Claims Administrator or Lead Counsel with respect to accepting or rejecting any Claim Form or Claim for payment by a Class Member.  Lead Counsel shall have the right, but not the obligation, to waive what it deems to be formal or technical defects in any Claim Forms submitted in the interests of achieving substantial justice.

31.     For purposes of determining the extent, if any, to which a Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

a.      Each Class Member shall be required to submit a Claim Form, substantially in the form attached hereto as Exhibit 2 to Exhibit A, supported by such documents as are designated therein, including proof of the transactions and holdings claimed and the claimed incurred losses, or such other documents or proof as the Claims Administrator or Lead Counsel, in their discretion, may deem acceptable.

b.      All Claim Forms must be submitted by the date that will be set by the Court in the Preliminary Approval Order and specified in the Notice, unless such deadline is extended by Order of the Court.  Any Class Member who fails to submit a Claim Form by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless, by Order of the Court, late-filed Claim Forms are accepted), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement including the terms of the Final Judgment and the releases provided for herein, and will be barred and enjoined from bringing any action, claim or other proceeding of any kind against any Defendant or other Released Party concerning any Settled Claim.  Provided that it is received before the motion for the Class Distribution Order is filed, a Claim Form shall be deemed to be submitted when posted, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon.  In all other cases, the Claim Form shall be deemed to have been submitted when actually received by the Claims Administrator.

c.      Each Claim Form shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, who shall determine in accordance with this

31

Stipulation and the Court-approved plan of allocation the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below.

        d.      Claim Forms that do not meet the submission requirements may be rejected. Prior to rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing, to give the Claimant the chance to remedy any curable deficiencies in the Claim Form submitted.  The Claims Administrator, under the supervision of Lead Counsel, shall notify, in a timely fashion and in writing, all Claimants whose Claim the Claims Administrator proposes to reject in whole or in part, setting forth the reasons therefore, and shall indicate in such notice that the Claimant whose Claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below.

        e.      If any Claimant whose Claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) days after the date of mailing of the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court.

        f.      The administrative determinations of the Claims Administrator accepting and rejecting Claims shall be presented to the Court, on notice to Defendants' Counsel, for approval by the Court in the Class Distribution Order.

        32.      Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited

to that Claimant's status as a Class Member and the validity and amount of the Claimant's Claim. No discovery shall be allowed on the merits of this Action or this Settlement in connection with the processing of Claim Forms.

33.     Lead Counsel will apply to the Court, on notice to Defendants' Counsel, for a Class Distribution Order: (a) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (b) approving payment of any administration fees and expenses associated with the administration of the Settlement from the Escrow Accounts and (c) if the Effective Date has occurred, directing payment of the Net Settlement Fund to the Authorized Claimants from the Escrow Account.

34.     Payment pursuant to the Class Distribution Order shall be final and conclusive against all Class Members.  All Class Members whose Claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Final Judgment to be entered in the Action and the releases provided for therein, and will be barred and enjoined from bringing any action against any and all of the Defendants or other Released Parties concerning any and all of the Settled Claims.

35.     All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.

## THE EFFECTIVE DATE AND RELATED CONDITIONS

36.     The Effective Date of this Stipulation shall be conditioned on the occurrence of all of the following events: (a) the Court has entered the Preliminary Approval Order, substantially in the form attached as Exhibit A hereto; (b) the Court has entered the Final Judgment, substantially in the

form of Exhibit B attached hereto; and (c) the Final Judgment has become Final, as defined in Paragraph 1(x) hereof.

37.    Upon the occurrence of all of the events referenced in Paragraph 36, any and all remaining interest or right of Defendants in or to the Total Settlement Fund, if any, shall be absolutely and forever extinguished.

## TERMINATION OF SETTLEMENT

38.    In the event that this Stipulation is not approved by the Court or the order approving this Stipulation and entering the Final Judgment does not become Final, or this Stipulation is terminated, canceled, or the Effective Date fails to occur for any reason, each of the Defendants' respective settlement payments, together with any interest earned thereon, less any Taxes paid or due with respect to such income and less any Notice and Administration Costs actually incurred or paid or payable, shall be refunded directly to Defendants or to the persons or entities that contributed to the Settlement Amount, per written instructions from Defendants' respective counsel.  With respect to the Anadarko Settlement Payment or the E&Y Settlement Payment, any amounts refunded shall be in proportion to each Defendants' or their carriers' contributions to the total Settlement Amount, and shall be paid within ten (10) business days of termination of the Settlement, with payment thereof to be made pursuant to written instructions from Defendants' respective counsel.  With respect to the Tronox Settlement Payment, any amounts refunded shall be in proportion to Tronox Individual Defendants' contributions to the Settlement Amount, and shall be paid within (10) business days of termination of the Settlement, with payment thereof to be made pursuant to written instructions from Tronox Individual Defendants' counsel.  The amount of such Taxes, Notice and Administration Costs, and related fees expended will be assessed to each Defendant on a pro rata basis in proportion to that party's contribution to the total Settlement Amount.

39.     Notwithstanding that the Defendants are not jointly and severally liable for each other's settlement payments, in the event that either the Tronox Settlement Payment or the Anadarko Settlement Payment is not made, then the Settlement shall terminate as to the Company Defendants but not as to E&Y.  Similarly, if the Court does not approve the Settlement with respect to the Company Defendants or the Settlement with respect to the Company Defendants otherwise fails to be become effective, but the Court does approve the Settlement with respect to E&Y, the Settlement shall terminate as to the Company Defendants but not as to E&Y.  In such event as described in either of the two preceding sentences, (a) any amounts paid as part of the Tronox Settlement Payment shall be refunded directly to the persons or entities that contributed to the Settlement Amount (each amount refunded shall be together with any interest earned thereon, less any Taxes paid or due with respect to such income and less any Notice and Administration Costs actually incurred or paid or payable from such amount assessed on a pro rata basis in proportion to each Defendant's contribution to the total Settlement Amount) and per instructions from Tronox Individual Defendants' counsel within seven (7) business days of termination of the Settlement as to the Company Defendants; (b) any amounts paid as part of the Anadarko Settlement Payment shall be refunded directly to the persons or entities that contributed to the Settlement Amount (each amount refunded shall be together with any interest earned thereon, less any Taxes paid or due with respect to such income and less any Notice and Administration Costs actually incurred or paid or payable from such amount assessed on a pro rata basis in proportion to each Defendant's contribution to the total Settlement Amount) within seven (7) business days of termination of the Settlement as to the Company Defendants; (c) the form of judgment shall be modified accordingly without further notice to the Class; (d) the releases by Plaintiffs and the other Class Members set forth in this Stipulation, the Notice and the Claim Form shall be given only with respect to E&Y and its Related Parties and

35

not with respect to the Company Defendants and their Related Parties; (e) Plaintiffs and the Company Defendants shall be restored to their respective positions in the litigation immediately prior to March 13, 2012; (e) except for purposes of ¶ 49 below, the defined terms "Defendants" and "Parties," as set forth in the first paragraph and ¶ 1(s) of this Stipulation shall not include the Company Defendants, the defined terms "Related Parties" and "Released Parties" as set forth in ¶¶ 1(nn) and 1(oo) of this Stipulation shall not include and shall specifically *exclude* the Company Defendants and its Related Parties, and the defined term "Settlement Amount" as set forth in ¶ 1(rr) shall mean only the E&Y Settlement Payment; (f) the terms and provisions of this Stipulation, with the exception of ¶ 49 herein, shall have no further force and effect with respect to the Company Defendants and shall not be used in the Action or in any other proceeding for any purpose with respect to the Company Defendants other than for purposes of judgment reduction and settlement credit, and any order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc* with respect to the Company Defendants; and (g) the Mutual Release contained in Paragraph 10 shall be terminated and given no effect.

40.    In the event that E&Y does not make the E&Y Settlement Payment, then the Settlement shall terminate as to E&Y but not as to the Company Defendants.  Similarly, if the Court does not approve the Settlement with respect to E&Y or the Settlement with respect to E&Y otherwise fails to be become effective, but the Court does approve the Settlement with respect to the Company Defendants, the Settlement shall terminate as to E&Y but not as to the Company Defendants.  In such event as described in either of the two preceding sentences, (a) any amounts paid as part of the E&Y Settlement Payment (together with any interest earned thereon, less any Taxes paid or due with respect to such income and less any Notice and Administration Costs actually incurred or paid or payable from such amount, assessed on a pro rata basis in proportion to E&Y's

contribution to the total Settlement Amount) shall be returned to E&Y within seven (7) business days of termination of the Settlement as to E&Y; (b) the form of judgment shall be modified accordingly without further notice to the Class; (c) the releases by Plaintiffs and the other Class Members set forth in this Stipulation, the Notice and the Claim Form shall be given only with respect to the Company Defendants and their Related Parties and not with respect to E&Y and its Related Parties; (d) Plaintiffs and E&Y shall be restored to their respective positions in the litigation immediately prior to May 28 2012; (e) except for purposes of ¶ 49 below, the defined terms "Defendants" and "Parties," as set forth in the first paragraph and ¶ 1(s) of this Stipulation shall not include E&Y, the defined terms "Related Parties" and "Released Parties" as set forth in ¶¶ 1(nn) and 1(oo) of this Stipulation shall not include and shall specifically *exclude* E&Y and its Related Parties, and the defined term "Settlement Amount" as set forth in ¶ 1(rr) shall mean only the Anadarko Settlement Payment and the Tronox Settlement Payment; (f) the terms and provisions of this Stipulation, with the exception of ¶ 49 herein, shall have no further force and effect with respect to E&Y and shall not be used in the Action or in any other proceeding for any purpose with respect to E&Y other than for purposes of judgment reduction and settlement credit, and any order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc* with respect to E&Y; and (g) the Mutual Release contained in Paragraph 10 shall be terminated and given no effect with respect to E&Y, remaining in effect only among and between the Company Defendants.

41.     The Defendants shall have the option to terminate the Settlement provided for in this Stipulation in the event that the total number of Tronox Securities purchased during the Class Period by members of the Class who submit requests to be excluded from the Class, in accordance with the requirements stated in this Stipulation and the Preliminary Approval Order, exceeds the

percentage(s) stated in a confidential supplemental agreement entered into by Lead Plaintiffs and the Defendants (the "Supplemental Agreement"). The Supplemental Agreement entered into by Lead Plaintiffs and the Defendants shall not be filed with the Court unless and until the Court asks the parties to do so or a dispute arises between Lead Plaintiffs and the Defendants concerning interpretation or application of the Supplemental Agreement. In either of those events, the Supplemental Agreement shall be filed with the Court and the Parties shall request that it be filed and maintained by the Court under seal. In the event of an objection to the Settlement based upon the confidentiality of the percentage(s) stated in the Supplemental Agreement, and notwithstanding anything to the contrary in this Paragraph or the Supplemental Agreement, Lead Plaintiffs and the Defendants may mutually agree to waive confidentiality.

42. Notwithstanding the foregoing, the Stipulation shall not become null and void as a result of the election by one or more of the Defendants to exercise their option(s) to withdraw from the Stipulation pursuant to the Supplemental Agreement until the conditions set forth in the Supplemental Agreement have been satisfied. In the event that E&Y elects to exercise its option to withdraw from the Stipulation pursuant to the Supplemental Agreement, then the Settlement shall terminate as to E&Y but not as to the Company Defendants. In the event that each and all of the Company Defendants elect to exercise their option to withdraw from the Stipulation pursuant to the Supplemental Agreement, and only if each and all of the Company Defendants elects to exercise their option to withdraw, then the Settlement shall terminate as to the Company Defendants but not as to E&Y.

43. Any decision with respect to an application for attorneys' fees or Litigation Expenses, or with respect to any plan of allocation, shall not be considered material to this Stipulation and Settlement and shall not be grounds for termination.

## RELEASES AND BAR ORDER

44.     Upon the Effective Date hereof, the Plaintiffs and each of the other Class Members who do not timely request exclusion from the Class in accordance with the requirements of the Notice, attached as Exhibit 1 to Exhibit A hereto, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished and discharged all Settled Claims against each and all of the Released Parties, whether or not such Class Member executes and delivers a Proof of Claim and Release or is an Authorized Claimant.

45.     The Proof of Claim and Release to be executed by Class Members who seek payment from the Net Settlement Fund shall release all Settled Claims against the Released Parties and shall be substantially in the form contained in Exhibit 2 to Exhibit A attached hereto.

46.     Notwithstanding anything to the contrary above, the Settled Claims do not include claims (i) to enforce the Final Judgment, this Stipulation or the Settlement set forth herein, and any or all of their terms, including but not limited to the releases provided for herein and in the Final Judgment; or (ii) belonging to Defendants against their insurers.

47.     If the Settlement contemplated by this Stipulation is approved by the Court, Lead Counsel and Defendants' Counsel shall jointly request that the Court enter a Final Judgment which shall be substantially in the form attached hereto as Exhibit B.  The proposed Final Judgment shall contain, *inter alia*, the releases described in Paragraphs 8 and 9 of this Stipulation.

48.     The Final Judgment to be entered in this Action shall also provide, in accordance with the Private Securities Litigation Reform Act of 1995 ("PSLRA"), as codified at 15 U.S.C. § 78u-4(f)(7)(A), that any and all claims for contribution arising out of any Settled Claims (i) by any person or entity against any of the Released Parties, and (ii) by any of the Released Parties against any person or entity, other than as set out in 15 U.S.C. § 78u-4(f)(7)(A)(ii), are hereby permanently

barred, extinguished, discharged, satisfied, and unenforceable.  Accordingly, without limitation to any of the above, (i) any person or entity is hereby permanently enjoined from commencing, prosecuting, or asserting against any of the Released Parties any such claim for contribution, and (ii) the Released Parties are hereby permanently enjoined from commencing, prosecuting, or asserting against any person or entity, any such claim for contribution, (iii) except that nothing herein shall release, prejudice, waive, impact, or impair the rights and obligations of the Kerr-McGee Individual Defendants and Kerr-McGee under the Kerr-McGee bylaws.  In accordance with 15 U.S.C. § 78u-4(f)(7)(B), any final verdict or judgment that might be obtained by or on behalf of the Class or a Class Member against any person or entity based upon or arising out of any Settled Claim for which such person or entity and any Released Parties are found to be jointly liable shall be reduced by the greater of (i) an amount that corresponds to the percentage of responsibility of any such Released Party for common damages or (ii) the amount paid to the Class by or on behalf of each such Released Party for common damages.

## <u>NO ADMISSION OF WRONGDOING</u>

49.     This Stipulation, whether or not consummated, and any proceedings taken pursuant to it:

        a.     shall not be offered or received against any of the Defendants as evidence of, or construed as or deemed to be evidence of, any presumption, concession or admission by any of the Defendants with respect to the truth of any fact alleged by Lead Plaintiffs and/or Named Plaintiffs or the validity of any claim that was or could have been asserted against any of the Defendants in this Action or in any litigation, or of any liability, negligence, fault or wrongdoing of any of the Defendants;

b.  shall not be offered or received against any of the Defendants as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any of the Defendants, or against any of the Lead Plaintiffs, any of the Named Plaintiffs or any other Class Members as evidence of any infirmity in the claims of the Lead Plaintiffs, Named Plaintiffs or the other Class Members;

c.  shall not be offered or received against any of the Defendants or against any of the Lead Plaintiffs, any of the Named Plaintiffs or any other Class Members as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the Defendants, or against any of the Lead Plaintiffs, any of the Named Plaintiffs or any other Class Members, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; provided, however, that if this Stipulation is approved by the Court, the Defendants, Lead Plaintiffs, Named Plaintiffs and any other Class Member may refer to it to effectuate the protection from liability granted them hereunder or otherwise to enforce the terms of the Settlement;

d.  shall not be construed against any Defendant, any Lead Plaintiff, any Named Plaintiff or any other Class Member as an admission, concession or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; and

e.  shall not be construed as or received in evidence as an admission, concession or presumption against any Lead Plaintiff, any Named Plaintiff or any other Class Member that any of their claims are without merit or that damages recoverable under the First Amended Complaint would not have exceeded the Settlement Amount.

41

## MISCELLANEOUS PROVISIONS

50.     All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

51.     Each Defendant or their respective designees contributing to the Total Settlement Fund warrant that, as to the payments made by or on behalf of it, at the time of such payment that the Defendant or their respective designees made or caused to be made pursuant to paragraph 3 above, such Defendant or their respective designees were not insolvent, nor will the payment required to be made by or on behalf of such Defendant or their respective designees render it insolvent, within the meaning of and/or for the purposes of the United States Bankruptcy Code, including §§ 101 and 547 thereof.  This representation is made by each of the Defendants or their respective designees and not by their counsel.

52.     If a case is commenced in respect of any of the Company Defendants or any other person or entity contributing funds to the Total Settlement Fund on behalf of any of the Company Defendants under Title 11 of the United States Code (Bankruptcy), or a trustee, receiver, conservator, or other fiduciary is appointed under any similar law with respect to any of them, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Total Settlement Fund or any portion thereof by or on behalf of any of the Company Defendants to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited to the Total Settlement Fund by others, then, at the election of Lead Plaintiffs, Lead Plaintiffs and the Company Defendants shall jointly move the Court to vacate and set aside the releases given and the Final Judgment entered in favor of the Company Defendants and the Company Defendants' Related Parties pursuant to this Stipulation, which releases and Judgment shall be null and void, and those

42

parties shall be restored to their respective positions in the litigation immediately prior to March 13, 2012 and, within seven (7) business days, the Tronox Settlement Payment shall be returned to the Tronox Individual Defendants or their insurance carriers and the Anadarko Settlement Payment shall be refunded directly to the persons or entities that contributed to the Settlement Amount, including any attorneys' fees or Litigation Expenses paid to Plaintiffs' Counsel based on the Tronox Settlement Payment or Anadarko Settlement Payment, less any Taxes paid or due with respect to such amounts and less any Notice and Administration Costs actually incurred or paid or payable from such amounts (such Taxes and Notice and Administration Costs and related fees shall be assessed in proportion to the Company Defendants' respective contributions to the total Settlement Amount), as provided in paragraphs 16 and 39 above, provided, however, that the provisions in this Paragraph shall expire and terminate upon the initial distribution from the Net Settlement Fund to Class Members pursuant to a Class Distribution Order.  In the event of such expiration, this Stipulation shall otherwise remain in full force and effect.

53.     If a case is commenced in respect of E&Y or any other person or entity contributing funds to the Total Settlement Fund on behalf of E&Y under Title 11 of the United States Code (Bankruptcy), or a trustee, receiver, conservator, or other fiduciary is appointed under any similar law with respect to any of them, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Total Settlement Fund or any portion thereof by or on behalf of E&Y to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited to the Total Settlement Fund by others, then, at the election of Lead Plaintiffs, Lead Plaintiffs and E&Y shall jointly move the Court to vacate and set aside the releases given and the Judgment entered in favor of E&Y and E&Y's Related Parties pursuant to this Stipulation, which releases and Judgment

shall be null and void, and those parties shall be restored to their respective positions in the litigation immediately prior to May 28, 2012 and, within seven (7) business days, the E&Y Settlement Payment shall be returned to E&Y, including any attorneys' fees or Litigation Expenses paid to Plaintiffs' Counsel based on the E&Y Settlement Payment, less any Taxes paid or due with respect to such amount and less any Notice and Administration Costs actually incurred or paid or payable from such amount (such Taxes and Notice and Administration Costs and related fees shall be assessed in proportion to E&Y's contribution to the total Settlement Amount), as provided in paragraphs 16 and 40 above, provided, however, that the provisions in this Paragraph shall expire and terminate upon the initial distribution from the Net Settlement Fund to Class Members pursuant to a Class Distribution Order.  In the event of such expiration, this Stipulation shall otherwise remain in full force and effect.

54.    The parties to this Stipulation intend the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by the Lead Plaintiffs, any other Class Members and their attorneys against the Released Parties with respect to all Settled Claims. Accordingly, Lead Plaintiffs and Defendants agree not to assert in any forum that this Action was brought by Lead Plaintiffs, any other Plaintiff, or any plaintiff in the actions consolidated in the Action, or defended by Defendants in bad faith or without a reasonable basis.  The parties hereto shall assert no claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense or settlement of this Action.  The parties to this Stipulation agree that the amount paid and the other terms of the Settlement were negotiated at arm's-length in good faith by the parties, including mediations conducted under the auspices of a professional mediator, and reflect settlements that were reached voluntarily after consultation with experienced legal counsel.

55.     While retaining the right to deny that the claims asserted in this Action were meritorious, Defendants in any statement made to any media representative (whether or not for attribution) will not deny that the Action was commenced and prosecuted in good faith and is being settled voluntarily after consultation with competent legal counsel.  In all events, Lead Plaintiffs and Defendants shall refrain from any accusations of wrongful or actionable conduct by either party concerning the prosecution and resolution of this Action, and shall not otherwise suggest that the Settlement constitutes an admission of any claim or defense alleged.

56.     This Stipulation may not be modified or amended, nor may any of its provisions be waived, except in writing signed by or on behalf of the Parties or their respective successors-in-interest.  No representations, warranties, or inducements have been made to any party concerning the Stipulation or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents and the Supplemental Agreement.

57.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

58.     The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and Litigation Expenses to Lead Counsel and enforcing the terms of this Stipulation.

59.     The waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

60.     This Stipulation, its exhibits and the Supplemental Agreement constitute the entire agreement among the parties hereto concerning this Settlement, and no representations, warranties or

inducements have been made by any party hereto concerning this Stipulation and its exhibits other than those contained and memorialized in such documents.

61.     This Stipulation may be executed in one or more original and/or faxed counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the signatories of this Stipulation shall exchange among themselves original signed counterparts.

62.     This Stipulation shall be binding upon and inure to the benefit of the successors and assigns of the parties hereto.

63.     The construction, interpretation, operation, effect and validity of this Stipulation, and all documents necessary to effectuate it, shall be governed by the internal laws of the State of New York without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

64.     This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the parties, it being recognized that it is the result of arm's-length negotiations between the parties, and all parties have contributed substantially and materially to the preparation of this Stipulation.

65.     All counsel and any other persons executing this Stipulation and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to this Stipulation to effectuate its terms.

66.     Lead Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court approval of the Preliminary Approval Order, this Stipulation and the Settlement, and

to promptly agree upon and execute all such other documents as may be reasonably required to obtain final approval by the Court of the Settlement.

67.     All agreements made and orders entered during the course of this Action relating to confidentiality of information shall survive this Stipulation.

68.     Except as otherwise provided herein, each party shall bear its own costs.

69.     If any party is required to give notice to the other parties under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery or e-mail or facsimile transmission with confirmation of receipt.   Notice shall be provided as follows:


If to Attorneys for Lead Plaintiffs:

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 777-2230
Facsimile: (415) 777-5189
Attn: Solomon B. Cera, Esq.
E-mail: scera@gbcslaw.com
Attn: Thomas C. Bright, Esq.
E-mail: tbright@gbcslaw.com


If to Attorneys for Named Plaintiffs:

Bernstein Litowitz Berger
  & Grossmann LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 554-1400
Facsimile:  (212) 554-1444
Attn: Hannah G. Ross, Esq.
E-mail: hannah@blbglaw.com
Attn: Laura H. Gundersheim, Esq.
E-mail: laurag@blbglaw.com


If to Attorneys for Defendants Kerr-McGee
Corporation and Anadarko Petroleum Corporation:

Weil, Gotshal & Manges LLP
767 Fifth Avenue

47

New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Attn: Jonathan D. Polkes, Esq.
E-mail: jonathan.polkes@weil.com
Attn: Miranda S. Schiller, Esq.
E-mail: miranda.schiller@weil.com
Attn: Stefania D. Venezia, Esq.
E-mail: stefania.venezia@weil.com

If to Attorneys for Defendants Thomas H. Adams,
Mary Mikkelson and Marty J. Rowland:

Dechert LLP
115 S. LaSalle Street, Suite 2600
Chicago, IL 60603
Telephone: (312) 646-5800
Facsimile: (312) 646-5858
Attn: David H. Kistenbroker, Esq.
E-mail: david.kistenbroker@dechert.com
Attn: Joni S. Jacobsen, Esq.
E-mail: joni.jacobsen@dechert.com

If to Attorneys for Defendants Gregory F. Pilcher,
J. Michael Rauh, Robert M. Wohleber and
Luke R. Corbett:

Sullivan and Cromwell, LLP
125 Broad Street
New York, NY 10004
Telephone: (212)558-3836
Facsimile: (212) 558-3588
Attn: Penny Shane, Esq.
E-mail: shanep@sullcrom.com
Attn: Kristin Keranen, Esq.
E-mail: keranenk@sullcrom.com

If to Attorneys for Defendant Ernst & Young LLP:

Baker Botts L.L.P.
2001 Ross Avenue
Dallas, TX  75201-2980
Telephone: (214) 953-6949
Facsimile: (214) 661-4949
Attn: Robb L. Voyles, Esq.
E-mail: robb.voyles@bakerbotts.com
Attn: Timothy W. Mountz, Esq.
E-mail: t.mountz@bakerbotts.com
Attn: Jessica B. Pulliam, Esq.
E-mail: jessica.pulliam@bakerbotts.com

DATED:  August 3, 2012

**GOLD BENNETT CERA & SIDENER LLP**

By:_____

Solomon B. Cera
Thomas C. Bright
595 Market Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 777-2230
Facsimile: (415) 777-5189
scera@gbcslaw.com
tbright@gbcslaw.com

*Attorneys for Lead Plaintiffs*

**WEIL, GOTSHAL & MANGES LLP**

By:_____

Jonathan D. Polkes
Miranda S. Schiller
Stefania D. Venezia
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
jonathan.polkes@weil.com
miranda.schiller@weil.com
stefania.venezia@weil.com

*Attorneys for Defendants
Kerr-McGee   Corporation   and   Anadarko
Petroleum Corporation*

**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**

By:_____

Hannah G. Ross
Laura H. Gundersheim
1285 Avenue of the Americas
New York, New York 10019
Tel: 212-554-1400
Fax: 212-554-1444
hannah@blbglaw.com
laurag@blbglaw.com

*Attorneys for Named Plaintiffs*

**DECHERT LLP**

By:_____

David H. Kistenbroker
Joni S. Jacobsen
115 S. LaSalle Street, Suite 2600
Chicago, IL 60603
Telephone: (312) 646-5800
Facsimile: (312) 646-5858
david.kistenbroker@dechert.com
joni.jacobsen@dechert.com

*Attorneys for Defendants Thomas H. Adams,
Mary Mikkelson and Marty J. Rowland*

DATED:  August 3, 2012

**GOLD BENNETT CERA & SIDENER LLP**

By:_____
Solomon B. Cera
Thomas C. Bright
595 Market Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 777-2230
Facsimile: (415) 777-5189
scera@gbcslaw.com
tbright@gbcslaw.com

*Attorneys for Lead Plaintiffs*

**WEIL, GOTSHAL & MANGES LLP**

By: *Miranda Schiller*
Jonathan D. Polkes
Miranda S. Schiller
Stefania D. Venezia
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
jonathan.polkes@weil.com
miranda.schiller@weil.com
stefania.venezia@weil.com

*Attorneys for Defendants
Kerr-McGee   Corporation   and   Anadarko
Petroleum Corporation*

**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**

By: _____
Hannah G. Ross
Laura H. Gundersheim
1285 Avenue of the Americas
New York, New York 10019
Tel: 212-554-1400
Fax: 212-554-1444
hannah@blbglaw.com
laurag@blbglaw.com

*Attorneys for Named Plaintiffs*

**DECHERT LLP**

By:_____
David H. Kistenbroker
Joni S. Jacobsen
115 S. LaSalle Street, Suite 2600
Chicago, IL 60603
Telephone: (312) 646-5800
Facsimile: (312) 646-5858
david.kistenbroker@dechert.com
joni.jacobsen@dechert.com

*Attorneys for Defendants Thomas H. Adams,
Mary Mikkelson and Marty J. Rowland*

DATED:  August 3, 2012

**GOLD BENNETT CERA & SIDENER LLP**

By:_____
Solomon B. Cera
Thomas C. Bright
595 Market Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 777-2230
Facsimile: (415) 777-5189
scera@gbcslaw.com
tbright@gbcslaw.com

*Attorneys for Lead Plaintiffs*

**WEIL, GOTSHAL & MANGES LLP**

By:_____
Jonathan D. Polkes
Miranda S. Schiller
Stefania D. Venezia
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
jonathan.polkes@weil.com
miranda.schiller@weil.com
stefania.venezia@weil.com

*Attorneys for Defendants
Kerr-McGee   Corporation   and   Anadarko
Petroleum Corporation*

**BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP**

By: _____
Hannah G. Ross
Laura H. Gundersheim
1285 Avenue of the Americas
New York, New York 10019
Tel: 212-554-1400
Fax: 212-554-1444
hannah@blbglaw.com
laurag@blbglaw.com

*Attorneys for Named Plaintiffs*

**DECHERT LLP**

By:_____
David H. Kistenbroker
Joni S. Jacobsen
115 S. LaSalle Street, Suite 2600
Chicago, IL 60603
Telephone: (312) 646-5800
Facsimile: (312) 646-5858
david.kistenbroker@dechert.com
joni.jacobsen@dechert.com

*Attorneys for Defendants Thomas H. Adams,
Mary Mikkelson and Marty J. Rowland*

49

**SULLIVAN AND CROMWELL, LLP**

By: _Kristin E Keranen_

Penny Shane
Kristin Keranen
125 Broad Street
New York, NY 10004
Telephone: (212)558-3836
Facsimile: (212) 558-3588
shanep@sullcrom.com
keranenk@sullcrom.com

*Attorneys for Defendants Gregory F. Pilcher,*
*J. Michael Rauh, Robert M. Wohleber and Luke*
*R.Corbett*

**BAKER BOTTS L.L.P.**

By:_____

Robb L. Voyles
Timothy W. Mountz
Jessica B. Pulliam
2001 Ross Avenue
Dallas, TX  75201-2980
Telephone: (214) 953-6949
Facsimile: (214) 661-4949
robb.voyles@bakerbotts.com
t.mountz@bakerbotts.com
jessica.pulliam@bakerbotts.com

*Attorneys for Defendant*
*Ernst & Young LLP*

# 654996

**SULLIVAN AND CROMWELL, LLP**

By:_____
Penny Shane
Kristin Keranen
125 Broad Street
New York, NY 10004
Telephone: (212)558-3836
Facsimile: (212) 558-3588
shanep@sullcrom.com
keranenk@sullcrom.com

*Attorneys for Defendants Gregory F. Pilcher,*
*J. Michael Rauh, Robert M. Wohleber and Luke*
*R.Corbett*

**BAKER BOTTS L.L.P.**

By:_____
Robb L. Voyles
Timothy W. Mountz
Jessica B. Pulliam
2001 Ross Avenue
Dallas, TX  75201-2980
Telephone: (214) 953-6949
Facsimile: (214) 661-4949
robb.voyles@bakerbotts.com
t.mountz@bakerbotts.com
jessica.pulliam@bakerbotts.com

*Attorneys for Defendant*
*Ernst & Young LLP*

# 654996