# EXHIBIT A-1

Exhibit A-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ————————————————— ) | Civil Action No. 09-CV-06220-SAS |
| IN RE TRONOX, INC. ) | |
| SECURITIES LITIGATION ) | Electronically filed |
| ————————————————— ) | |
| ) | |
| THIS DOCUMENT RELATES TO ) | |
| ALL CLASS ACTIONS ) | |
| ————————————————— ) | |

## NOTICE OF PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT, SETTLEMENT FAIRNESS HEARING, AND MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

*A Federal Court authorized this Notice. This is not a solicitation from a lawyer.*

**NOTICE OF PENDENCY OF CLASS ACTION:** Please be advised that your rights may be affected by a class action lawsuit (the "Action") pending in the United States District Court for the Southern District of New York (the "Court") if, during the period from November 21, 2005 through and including January 12, 2009, (the "Class Period") you purchased or otherwise acquired Class A or Class B common stock ("Tronox Common Stock") and/or Tronox's 9½ percent senior notes due 2012 ("Tronox Bonds") (collectively "Tronox Securities") of Tronox, Inc. ("Tronox" or the "Company") and were damaged thereby.

**NOTICE OF SETTLEMENT:** Please also be advised that the Court-appointed Lead Plaintiffs, LaGrange Capital Partners, LP and LaGrange Capital Partners Offshore Fund, Ltd. (together "Lead Plaintiffs"), on behalf of themselves and the Class (as defined in ¶ 31 below), have reached agreements to settle the Action with the Company Defendants (defined in ¶ 1 below) and Ernst & Young LLP ("E&Y") for a total of $37 million in cash that, if approved, will resolve all claims in the Action (the "Settlement").[1]

**PLEASE READ THIS NOTICE CAREFULLY. This Notice explains important rights you may have, including the possible receipt of cash from the Settlement. If you are a Class Member, your legal rights will be affected whether or not you act.**

    1.    **Description of the Action and Class:** This Notice relates to a proposed Settlement of claims in a pending class action lawsuit brought by investors alleging that the prices of Tronox Securities were artificially inflated during the Class Period as a result of allegedly material false and misleading statements and omissions issued by Defendants and Tronox regarding the financial condition of Tronox, including its environmental and legacy liabilities, during the period November 21, 2005 through January 12, 2009. The Defendants are (1) Thomas Adams, CEO and Director of Tronox during part of the Class Period, Mary Mikkelson, Senior Vice President and Chief Financial Officer of Tronox during the Class Period, and Marty

---

[1] All capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings provided in the Stipulation and Agreement of Settlement dated August 3, 2012 (the "Stipulation"), which is available on the website established for the Settlement at www.gilardi.com/tronox.

Rowland, COO and Director of Tronox during part of the Class Period (the "Tronox Individual Defendants"); (2) Kerr-McGee Corporation ("Kerr-McGee"), Tronox's parent company prior to the IPO; (3) Anadarko Petroleum Corporation ("Anadarko"), the company that purchased Kerr-McGee following the IPO; (4) J. Michael Rauh, Director of Tronox during part of the Class Period, Robert Wohleber, Chairman of the Board of Tronox for part of the Class Period, Luke Corbett, Chairman and CEO of Kerr-McGee during the Class Period and Gregory Pilcher, Senior Vice President, Secretary, and General Counsel for Kerr-McGee during the Class Period (the "Kerr-McGee Individual Defendants" and collectively with the Tronox Individual Defendants, Kerr-McGee and Anadarko, the "Company Defendants"); and (5) E&Y, Tronox's auditor. On January 12, 2009, Tronox and its affiliated companies filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York. Pursuant to Section 362(a) of the Bankruptcy Code, all actions are automatically stayed against a debtor who files a voluntary petition under the Bankruptcy Code. Accordingly, Lead Plaintiffs have not named Tronox as a defendant in the Action. The proposed Settlement, if approved by the Court, will settle claims of all persons and entities who purchased or otherwise acquired Tronox Securities during the Class Period (i.e., from November 21, 2005 through and including January 12, 2009), and who were damaged thereby (the "Class"). The Class does not include certain persons and entities who are excluded from the Class by definition (*see* ¶ 31 below) or who validly elect to exclude themselves from the Class (*see* ¶¶ 93-95 below).

  2. **Statement of Class's Recovery:** Subject to Court approval, and as described more fully below, Lead Plaintiffs, on behalf of themselves and the Class, have agreed to settle all claims based on the purchase or acquisition of Tronox Securities during the Class Period that were or could have been asserted against Defendants in the Action in exchange for a total settlement payment of $37,000,000 in cash (the "Settlement Amount") to be deposited into an interest-bearing escrow account (the "Settlement Fund"). The Settlement Amount will be paid as follows:

    a. the Company Defendants will pay or cause to be paid $35,000,000; and

    b. E&Y will pay $2,000,000.

  The Net Settlement Fund (the Settlement Fund less Taxes, Notice and Administration Costs, and attorneys' fees and Litigation Expenses awarded by the Court) will be distributed in accordance with a plan of allocation that is approved by the Court, which will determine how the Net Settlement Fund shall be allocated among members of the Class. The proposed plan of allocation (the "Plan of Allocation") is set forth on pages ___ - ___ below.

  3. **Estimate of Average Amount of Recovery Per Share:** Lead Plaintiffs' damages expert estimates that approximately 55.2 million shares of Tronox Class A common stock, approximately 45.2 million shares of Tronox Class B common stock, and approximately 350,000 units of $1,000 par value Tronox Bonds purchased during the Class Period may have been affected by the conduct at issue in the Action. If all Class Members elect to participate in the Settlement, the estimated average recovery per affected share of Tronox Class A common stock, affected share of Tronox Class B common stock, and affected $1,000 par value Tronox Bond would be approximately $0.27, $0.33, and $21.05, respectively, before deduction of Court-awarded attorneys' fees and expenses and the costs of providing notice and administering the Settlement. Class Members should note, however, that this is only an estimate based on the overall number of potentially affected shares and bonds. Some Class Members may recover more or less than the estimated amount per share or bond.

  4. **Statement of Average Amount of Damages Per Share:** The Parties do not agree on the average amount of damages per share that would be recoverable if Lead Plaintiffs were to prevail in the Action. Defendants do not agree with the assertion that they engaged in any actionable conduct under the

federal securities laws or that any damages were suffered by any members of the Class as a result of their conduct.

5. **Statement of Attorneys' Fees and Expenses Sought:**  The Court-appointed Lead Counsel, Gold Bennett Cera & Sidener LLP, together with counsel to certain named plaintiff bond purchasers, have been prosecuting the Action on a wholly contingent basis since its inception in 2009, and have not received any payment of attorneys' fees for their representation of the class.  Lead Counsel and Bernstein Litowitz Berger & Grossmann LLP have advanced the funds to pay expenses necessarily incurred to prosecute the Action.  Lead Counsel will apply to the Court for an award of attorneys' fees from the Settlement Fund in an amount not to exceed 25% of the Settlement Fund.  In addition, Lead Counsel also will apply for the reimbursement of Litigation Expenses paid or incurred in connection with the prosecution and resolution of the Action, in an amount not to exceed $1,985,000, which may include the reasonable costs and expenses of Plaintiffs directly related to the representation of the Class.[2]  If the Court approves Lead Counsel's fee and expense application, the average cost per affected share of Tronox Class A and Class B common stock will be approximately $0.08 and $0.10, respectively, and the average cost per affected unit of Tronox Bonds will be approximately $6.39.

6. **Identification of Attorneys' Representative:**  Lead Plaintiffs and the Class are being represented by Solomon B. Cera, Esq., of Gold Bennett Cera & Sidener LLP.  Any questions regarding the Settlement should be directed to Solomon B. Cera or Thomas C. Bright at Gold Bennett Cera & Sidener LLP, 595 Market Street, San Francisco, CA 94105, (415) 777-2230, scera@gbcslaw.com, tbright@gbcslaw.com.

7. **Reasons for the Settlement:**  Lead Plaintiffs' principal reason for entering into the Settlement is the substantial cash benefit payable to the Class now, without further risk or the delays inherent in further litigation.  The significant cash benefit under the Settlement must be considered against the significant risk that a smaller recovery -- or, indeed, no recovery at all -- might be achieved after contested motions, trial and likely appeals, a process that could last several years into the future.  For Defendants, who deny all allegations of wrongdoing or liability whatsoever, the principal reason for entering into the Settlement is to eliminate the expense, risks, and uncertainty of further litigation.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM BY _____, 2012** | This is the only way to be eligible to get a payment from the Settlement.  If you are a Class Member and you remain in the Class, you will be bound by the Settlement as approved by the Court and you will give up any Settled Claims (as defined in ¶ 83 below) that you have against Defendants and the other Released Parties (defined in ¶ 84 below), so, if you remain in the Class, it is in your interest to submit a Claim Form. |

---

[2] Should only one of the settlements become effective (*i.e.*, the settlement with the Company Defendants or the settlement with E&Y), attorneys' fees will be paid only on the portion of the Settlement Amount paid with respect to the effective settlement, and only the proportion of the total Litigation Expenses approved by the Court that is equal to the amount of the settlement that becomes effective *divided by* the total Settlement Amount will be paid, such payment to come from the amount paid by the Defendants whose settlement becomes effective.

| | |
|---|---|
| **EXCLUDE YOURSELF FROM THE CLASS BY SUBMITTING A WRITTEN REQUEST FOR EXCLUSION SO THAT IT IS _RECEIVED_ NO LATER THAN _____, 2012.** | If you exclude yourself from the Class, you will not be eligible to get any payment from the Settlement Fund. This is the only option that allows you to ever be part of any other lawsuit against any of the Defendants or the other Released Parties concerning the Settled Claims. |
| **OBJECT TO THE SETTLEMENT BY SUBMITTING A WRITTEN OBJECTION SO THAT IT IS _RECEIVED_ NO LATER THAN _____, 2012.** | If you do not like the proposed settlement with the Company Defendants, the proposed settlement with E&Y, the proposed Plan of Allocation, or the request for attorneys' fees and reimbursement of expenses, you may write to the Court and explain why you do not like them. You cannot object to the Settlement, the Plan of Allocation or the fee and expense request unless you are a Class Member and do not exclude yourself. |
| **GO TO THE HEARING ON _____, 2012 AT _:__ _.M., AND FILE A NOTICE OF INTENTION TO APPEAR SO THAT IT IS _RECEIVED_ NO LATER THAN _____, 2012.** | Filing a written objection and notice of intention to appear by _____, 2012 allows you to speak in Court about the fairness of the proposed settlement, the Plan of Allocation, or the request for attorneys' fees and reimbursement of expenses. If you submit a written objection, you may (but do not have to) attend the hearing and speak to the Court about your objection. |
| **DO NOTHING.** | If you are a member of the Class and you do not submit a Claim Form by _____, 2012, you will not be eligible to receive any payment from the Settlement Fund. You will, however, remain a member of the Class, which means that you give up your right to sue about the claims that are resolved by the Settlement and you will be bound by any judgments or orders entered by the Court in the Action. |

## WHAT THIS NOTICE CONTAINS

Why Did I Get This Notice? .......................................................................... Page __
What Is This Case About?  What Has Happened So Far? .............................. Page __
How Do I Know If I Am Affected By The Settlement? ................................... Page __
What Are Lead Plaintiffs' Reasons For The Settlement? ............................... Page __
What Might Happen If There Were No Settlement? ....................................... Page __
How Much Will My Payment Be? ................................................................. Page __
What Rights Am I Giving Up By Remaining In The Class? ........................... Page __
What Payment Are The Attorneys For The Class Seeking?  How Will The Lawyers Be Paid? ... Page __
How Do I Participate In The Settlement?  What Do I Need To Do? ................ Page __
What If I Do Not Want To Participate In The Settlement?  How Do I Exclude Myself? ... Page __
When And Where Will The Court Decide Whether To Approve The Settlement?

Do I Have To Come To The Hearing? May I Speak At The Hearing If I
Don't Like The Settlement?                                            Page __
What If I Bought Shares On Someone Else's Behalf?                      Page __
Can I See The Court File?  Whom Should I Contact If I Have Questions?  Page __

<div style="border:1px solid black;text-align:center;">

## WHY DID I GET THIS NOTICE?

</div>

8.      This Notice is being sent to you pursuant to an Order of the United States District Court for the Southern District of New York (the "Court") because you or someone in your family or an investment account for which you serve as custodian may have purchased or otherwise acquired one or more of the Tronox Securities during the Class Period.  The Court has directed us to send you this Notice because, as a potential Class Member, you have a right to know about your options before the Court rules on the proposed settlement of this case.  Additionally, you have the right to understand how a class action lawsuit may generally affect your legal rights.  If the Court approves the Settlement a claims administrator selected by Lead Plaintiffs and approved by the Court will make payments pursuant to the Settlement after any objections and appeals are resolved.

9.      In a class action lawsuit, the Court selects one or more people, known as class representatives, to sue on behalf of all people with similar claims, commonly known as the class or the class members.  In this Action, the Court has appointed LaGrange Capital Partners, LP and LaGrange Capital Partners Offshore Fund, Ltd. to serve as "Lead Plaintiffs" under a federal law governing lawsuits such as this one, and has approved Lead Plaintiffs' selection of the law firm of Gold Bennett Cera & Sidener LLP to serve as Lead Counsel in the Action.  A class action is a type of lawsuit in which the claims of a number of individuals are resolved together, thus providing the class members with both consistency and efficiency.  Once the class is certified, the Court must resolve all issues on behalf of the class members, except for any persons who choose to exclude themselves from the class.  (For more information on excluding yourself from the Class, please read "What If I Do Not Want Participate In the Settlement?  How Do I Exclude Myself?," on page __ below.)

10.     The Court in charge of this case is the United States District Court for the Southern District of New York, and the case is known as *In re Tronox, Inc., Securities Litigation*, File No. 09-CV-06220-SAS.  The Judge presiding over this case is the Honorable Shira A. Scheindlin, United States District Judge.  The people who are suing are called plaintiffs, and those who are being sued are called defendants.  In this case, the plaintiffs are Lead Plaintiffs, Named Plaintiff The Fire and Police Pension Association of Colorado and Named Plaintiff The San Antonio Fire and Police Pension Fund (collectively, "Plaintiffs"), and the Defendants are (1) the Tronox Individual Defendants; (2) Kerr-McGee; (3) Anadarko; (4) the Kerr-McGee Individual Defendants; and (5) E&Y.  If the Settlement is approved as to all Defendants, it will resolve all claims in the Action by Class Members against Defendants and will bring the Action to an end.

11.     This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.  The purpose of this Notice is to inform you of this case, that it is a class action, how you might be affected, and how to exclude yourself from the Class if you wish to do so.  It also is being sent to inform you of the terms of the proposed Settlement, and of a hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the proposed Settlement, the proposed Plan of Allocation, and the motion by Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses (the "Settlement Hearing").

12.     The Settlement Hearing will be held on _____, 2012 at _:__ p.m., before the Honorable Shira A. Scheindlin, in Courtroom 15C of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York, 10007 to determine:

(a)   whether the proposed Settlement is fair, reasonable, and adequate and should be approved by the Court;

(b)   whether the Settled Claims against the Defendants and the other Released Parties should be dismissed with prejudice as set forth in the Stipulation;

(c)   whether the proposed Plan of Allocation is fair and reasonable and should be approved by the Court; and

(d)   whether Lead Counsel's request for an award of attorneys' fees and reimbursement of Litigation Expenses should be approved by the Court.

13.    This Notice does not express any opinion by the Court concerning the merits of any claim in the Action, and the Court still has to decide whether to approve the Settlement.  If the Court approves either or both settlements, payments to Authorized Claimants will be made after any appeals are resolved, and after the completion of all claims processing.  Please be patient.

## WHAT IS THIS CASE ABOUT?  WHAT HAS HAPPENED SO FAR?

14.    The Action is a class action alleging violations of federal securities law by Defendants.

15.    Between July 10, 2009 and August 12, 2009, three (3) shareholder class actions were filed in the United States District Court for the Southern District of New York, entitled: *Alaska Electrical Pension Fund v. Kerr-McGee Corp., et al.,* No. 09-cv-6220 (SAS); *Oliver Shi v. Kerr-McGee Corp., et al.,* No. 09-cv-6490 (SAS); and *Monti Barnes v. Kerr-McGee Corp., et al.,* No. 09-cv-7116 (SAS).  These shareholder class actions alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder based on allegedly false and misleading statements issued by Tronox and certain of its officers and directors in the period from November 28, 2005 through January 12, 2009.  In October 2009, the Court ordered that these cases be consolidated and recaptioned as *In re Tronox, Inc., Securities Litigation,* Case No. 09-CV-06220-SAS; appointed LaGrange Capital Partners, LP and LaGrange Capital Partners Offshore Fund, Ltd. as Lead Plaintiffs for the Action; and approved Lead Plaintiffs' selection of Gold Bennett Cera & Sidener LLP as Lead Counsel.

16.    Plaintiffs' Counsel conducted an investigation that included, among other things, a review of Tronox's filings with the United States Securities and Exchange Commission, analyst research reports, investor presentations, news articles concerning Tronox and other public data; interviews of former Tronox employees; and legal analysis of the claims against Defendants and their potential defenses.

17.    On November 24, 2009, Lead Plaintiffs filed their Consolidated Class Action Complaint (the "Complaint"), which alleged that Defendants issued materially false and misleading statements regarding the financial condition of Tronox, including its environmental and legacy liabilities, in violation of Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder.  The Complaint asserted claims under Section 10(b) against all Defendants, and asserted "control person" claims under Section 20(a) against all Defendants except E&Y.  The claims asserted in the Complaint were based on allegations that Tronox was essentially insolvent at the time of the initial public offering ("IPO") and throughout the Class Period, materially understated its reserves for environmental liabilities throughout the Class Period and that such liabilities were not fully and adequately disclosed until Tronox filed for Chapter 11 bankruptcy protection on January 12, 2009.  The Complaint further alleged that certain of the Defendants controlled Tronox as of its initial public offering on November 21, 2005 and, through such control, dictated during the Class Period the recording of materially deficient reserves for environmental liabilities and Tronox's disclosures about reserves and, therefore, faced liability for the securities law violations alleged.  The Complaint further alleged that the price of Tronox Securities were artificially inflated as a result of Defendants' allegedly false and misleading

statements and omissions, and declined when the truth about the extent of Tronox's environmental remediation obligations and related tort claims was revealed.

18.    On January 11, 2010, Kerr-McGee and Anadarko moved to dismiss the claims asserted against them arguing, among other things, that Plaintiffs had failed to adequately allege reliance and scienter, that none of the alleged misstatements were attributed to Kerr-McGee or Anadarko and that the Complaint failed to plead facts demonstrating that they were "culpable participants" in a Section 10(b) violation by Tronox or the other Defendants for purposes of the "control person" claim. The Tronox and Kerr-McGee Individual Defendants moved to dismiss the Complaint on January 19, 2010 arguing, among other things, that the Complaint failed to allege facts supporting a strong inference of scienter and that Plaintiffs failed to sufficiently allege misstatements by Defendants Corbett and Pilcher; and E&Y moved to dismiss the claims against it on February 8, 2010 arguing, among other things, that the Complaint failed to allege facts permitting a strong inference of scienter, or to adequately allege reliance or loss causation.

19.    In June 2010, while the motions to dismiss were pending, the Parties voluntarily engaged in a full day mediation session with a professional mediator in an effort to explore a potential resolution of the Action. However, the Parties were unable to reach a settlement at that time and the litigation continued to be aggressively prosecuted by the Plaintiffs.

20.    On June 28, 2010, the Court granted in part and denied in part Defendants' motion to dismiss. The Court denied the motions to dismiss filed by the Tronox Individual Defendants and E&Y in their entirety. Additionally, the Court ruled, among other things, that: Plaintiffs' claims against Kerr-McGee, Anadarko and the Kerr-McGee Individual Defendants for violations of Section 20(a) relating to misstatements after March 31, 2006 were dismissed without prejudice; Plaintiffs were granted leave to replead their claims that Kerr-McGee and/or the Kerr-McGee Individual Defendants controlled Tronox after March 31, 2006 (when Tronox was spun off from Kerr-McGee) and that Anadarko was a successor-in-interest to Kerr-McGee; and Plaintiffs' claims against Messrs. Corbett, Pilcher and Rauh, Kerr-McGee and Anadarko for violations of Section 10(b) were dismissed with prejudice based on the finding that these defendants made no actionable misstatements to the market regarding Tronox.  On July 28, 2010, the Tronox Individual Defendants and E&Y filed their Answers to the Complaint.

21.    On July 30, 2010, Lead Plaintiffs filed their First Amended Consolidated Class Action Complaint (the "First Amended Complaint").  Like the Complaint, the First Amended Complaint asserted claims against the Defendants under Section 10(b) of the Exchange Act and Rule 10b-5, and under Section 20(a) of the Exchange Act. The First Amended Complaint alleged claims substantially similar to those in the Complaint but added substantial factual detail in support of the claims asserted for violations of Sections 10(b) and 20(a) during the Class Period dismissed in the Court's June 28, 2010 Order.  The First Amended Complaint asserted the same Class Period as set forth in the Complaint.

22.    On August 27, 2010, Kerr-McGee and Wohleber moved to dismiss Plaintiffs' Section 20(a) claim for the period after March 31, 2006; Corbett and Pilcher moved to dismiss the claims against them in their entirety; and Anadarko again moved to dismiss the claim against it.  On January 5, 2011, the Court denied Messrs. Wohleber, Corbett and Pilcher's motion to dismiss with respect to the period that pre-dates August 10, 2006; denied Anadarko's motion to dismiss Plaintiffs' Section 20(a) claim that was predicated on control person liability and *respondeat superior* liability; and denied Kerr-McGee's motion to dismiss.  The Court granted Anadarko's motion to dismiss Plaintiffs' Section 20(a) claim that was predicated on successor-in-interest liability and granted Mr. Corbett's motion to dismiss Plaintiffs' Section 20(a) claim with respect to the period that post-dates August 10, 2006.  On February 4, 2011, Kerr-McGee, Anadarko, and the Kerr-McGee Individual Defendants answered the First Amended Complaint.

23.     Thereafter, the Parties engaged in extensive discovery, which included significant document productions by the Plaintiffs, as well as the review of terabytes of data (equivalent to tens of millions of pages of documents) produced by Tronox and the Defendants, as well as non-parties.  Defendants deposed a representative from each of Lead Plaintiffs, Named Plaintiffs and Named Plaintiffs' investment advisors.  The Parties also engaged and consulted with experts who prepared detailed expert reports, and the Parties deposed each other's expert witnesses.

24.     On August 9, 2011, Lead Plaintiffs moved for class certification.  On September 16, 2011, Defendants opposed Lead Plaintiffs' motion on a number of grounds, including: (i) that Lead Plaintiffs' investment strategy and trading decisions rendered the Lead Plaintiffs atypical of the Class and inadequate to serve as class representatives; (ii) that each of the Named Plaintiffs was subject to unique defenses that rendered them atypical of the Class; and (iii) that Plaintiffs were not entitled to a fraud-on-the-market presumption of reliance because they failed to establish that the alleged corrective disclosures impacted the price of Tronox Securities or that the market for Tronox Bonds was efficient.  Certain Defendants also alleged that Plaintiffs had failed to establish that the market for Tronox Common Stock was efficient during the entire Class Period.  On October 26, 2011, Lead Plaintiffs' motion was denied without prejudice, and with leave to renew, because the Court requested the Parties to re-submit their respective submissions in support of and in opposition to class certification pursuant to a revised Order governing page limitations and timing.  No decision on the merits of the motion was made at that time.  On November 11, 2011, Lead Plaintiffs filed their renewed motion for class certification, Defendants opposed it on November 23, 2011, and on December 7, 2011, Lead Plaintiffs filed a reply memorandum in further support of class certification.

25.     In March 2012, the Parties, with the consent of the Court, agreed to participate in a mediation conducted by the Hon. Daniel Weinstein (Ret.) of JAMS.  The Parties submitted mediation statements to Judge Weinstein and conducted extensive, protracted negotiations through him, both in person and telephonically.  Plaintiffs engaged in these discussions with a view to exploring the possibility of resolution of the issues in dispute consistent with achieving the best relief possible in the interests of the Class.  Thereafter, the Parties (with the exception of E&Y) reached an agreement in principle to settle in March 2012 and signed a term sheet on May 31, 2012.

26.     On March 2, 2012, the Parties entered into a stipulated agreement to extend certain discovery deadlines set forth in a Scheduling Order entered on January 13, 2012, pursuant to which and with the consent of the Court, Lead Plaintiffs agreed to withdraw their motion for class certification without prejudice to re-submit as previously filed, to allow the parties additional time to conduct discovery and explore the possibility of reaching a mediated settlement of the Action.

27.     Lead Plaintiffs filed their second renewed motion for class certification on May 17, 2012.  As of that date, E&Y was the only defendant with which Plaintiffs had not reached an agreement in principle to settle.

28.     Thereafter, Plaintiffs and E&Y began discussing a possible resolution of the Action.  Plaintiffs and E&Y had several settlement discussions and arm's-length negotiations with respect to a compromise and settlement of the claims against E&Y.  Again, Plaintiffs engaged in these discussions with a view to exploring the possibility of resolution of the issues in dispute consistent with achieving the best relief possible in the interests of the Class.  Plaintiffs and E&Y reached an agreement in principle to settle in late May 2012.

29.     Plaintiffs' Counsel have drafted multiple complaints based on their intensive investigation of the alleged securities fraud, opposed Defendants' multiple motions to dismiss, engaged in significant discovery and document production, and retained and consulted with experts.  They have also researched the applicable law with respect to the claims of Lead Plaintiffs, Named Plaintiffs and the other Class Members (as defined herein) against the Defendants and the potential defenses thereto.  Additionally, the multiple mediation

statements prepared and exchanged as well as the Parties' respective presentations concerning damages and loss causation have provided Plaintiffs with a detailed basis upon which to assess the relative strengths and weaknesses of their position and Defendants' position.

30.    On _____, 2012, the Court preliminarily approved the Settlement, certified the Class for purposes of the Settlement, authorized this Notice to be sent to potential Class Members, and scheduled the Settlement Hearing to consider whether to grant final approval to the Settlement.


### HOW DO I KNOW IF I AM AFFECTED BY THE SETTLEMENT?

31.    If you are a member of the Class, you are subject to the Settlement unless you timely request to be excluded.  The Class consists of:

All persons or entities who purchased or otherwise acquired shares of Tronox Class A and/or Class B common stock ("Tronox Common Stock") and/or Tronox 9½% senior notes due 2012 ("Tronox Bonds") during the period from November 21, 2005 through and including January 12, 2009 and who were damaged thereby.

Excluded from the Class are the following persons or entities: (i) Defendants and Tronox; (ii) the parents, successors, subsidiaries, affiliates and assigns of any Defendant or of Tronox; (iii) members of the Immediate Family of each of the Individual Defendants; (iv) any person who was a partner of E&Y or an officer or director of Tronox, Kerr-McGee or Anadarko, during the Class Period; and (v) any firm, trust, corporation, or other entity in which any of the Defendants has a controlling interest or had a controlling interest during the Class Period.  The Class also does not include those persons and entities who timely request exclusion from the Class pursuant to this Notice (see "What If I Do Not Want To Participate In The Settlement?  How Do I Exclude Myself?," on page __ below).

**PLEASE NOTE:  RECEIPT OF THIS NOTICE DOES NOT MEAN THAT YOU ARE A CLASS MEMBER OR THAT YOU WILL BE ENTITLED TO RECEIVE PROCEEDS FROM THE SETTLEMENT.  IF YOU ARE A CLASS MEMBER AND YOU WISH TO BE ELIGIBLE TO PARTICIPATE IN THE DISTRIBUTION OF PROCEEDS FROM THE SETTLEMENT, YOU ARE REQUIRED TO SUBMIT THE CLAIM FORM THAT IS BEING DISTRIBUTED WITH THIS NOTICE AND THE REQUIRED SUPPORTING DOCUMENTATION AS SET FORTH THEREIN POSTMARKED NO LATER THAN _____, 2012.**

### WHAT ARE LEAD PLAINTIFFS' REASONS FOR THE SETTLEMENT?

32.    Lead Plaintiffs and Lead Counsel believe that the claims asserted against Defendants have merit. They recognize, however, the expense and length of continued proceedings necessary to pursue their claims against Defendants through trial and appeals, as well as the difficulties in establishing liability and damages at trial that this Action presented.  Lead Plaintiffs and Lead Counsel have taken into account the possibility that the class might not have been certified or the claims asserted in the Complaint might have been dismissed in response to Defendants' anticipated motions for summary judgment, and have also considered issues that would have been decided by a jury in the event of a trial of the Action, including whether Defendants acted with the requisite intent to mislead investors, and whether all of the Class Members' losses were caused by the alleged misrepresentations and the amount of damages.  Lead Plaintiffs and Lead Counsel considered arguments advanced by Defendants including that they applied the proper methodology in determining the amount of the reserves for environmental remediation and related tort liabilities; that Tronox's reserves were

adequate and they were corroborated by independent third parties; that the decline in the price of Tronox Securities was caused by factors unrelated to the alleged environmental liabilities; and, that even if liability were established, the amount of damages that could be attributed to the misrepresentations would be hotly contested.

33.    In light of these risks, the amount of the Settlement and the immediacy of recovery to the Class, Lead Plaintiffs and Lead Counsel believe that the proposed Settlement is fair, reasonable and adequate, and in the best interests of the Class.   Lead Plaintiffs and Lead Counsel believe that the Settlement provides a substantial benefit to the Class, namely $35,000,000 in cash from the Company Defendants and $2,000,000 in cash from E&Y (less the various deductions described in this Notice), as compared to the risk that the claims in the Action would produce a smaller, or no recovery after summary judgment, trial and appeals, possibly years in the future.

34.    Defendants have denied the claims asserted against them in the Action and deny having engaged in any wrongdoing or violation of law of any kind whatsoever.   Defendants have agreed to the Settlement solely to eliminate the burden and expense of continued litigation.   Accordingly, the Settlement may not be construed as an admission by any Defendants of wrongdoing.

## WHAT MIGHT HAPPEN IF THERE WERE NO SETTLEMENT?

35.    If there were no Settlement and Lead Plaintiffs failed to establish any essential legal or factual element of their claims, neither Lead Plaintiffs nor the other members of the Class would recover anything from Defendants.  Also, if Defendants were successful in proving any of their defenses, the Class likely would recover substantially less than the amount provided in the Settlement, or nothing at all.

## HOW MUCH WILL MY PAYMENT BE?

36.    At this time, it is not possible to make any determination as to how much any individual Class Member may receive from the Settlement.

37.    Pursuant to the Settlement, the Company Defendants have agreed to pay or cause to be paid thirty-five million dollars ($35,000,000) in cash and E&Y has agreed to pay two million dollars ($2,000,000) in cash (collectively, the "Settlement Amount").   The Settlement Amount will be deposited into an interest-bearing escrow account.   The Settlement Amount plus all interest earned thereon is referred to as the "Settlement Fund."  If the Settlement is approved by the Court and the Effective Date occurs, the "Net Settlement Fund" (that is, the Settlement Fund less (a) all federal, state and local taxes on any income earned by the Settlement Fund and the reasonable costs incurred in connection with determining the amount of and paying taxes owed by the Settlement Fund (including reasonable expenses of tax attorneys and accountants); (b) the costs and expenses incurred in connection with providing Notice to Class Members and administering the Settlement on behalf of Class Members; and (c) any attorneys' fees and Litigation Expenses awarded by the Court) will be distributed to Class Members as set forth in the proposed plan of allocation (the "Plan of Allocation") or such other plan as the Court may approve.

38.    The Net Settlement Fund will not be distributed until the Court has approved a plan of allocation, and the time for any petition for rehearing, appeal or review, whether by certiorari or otherwise, has expired.

39.    Neither Defendants nor any other person or entity that paid any portion of the Settlement Amount on their behalves are entitled to get back any portion of the Settlement Fund once the Court's Order or Final Judgment approving the Settlement becomes Final.  Defendants shall not have any liability, obligation or

responsibility for the administration of the Settlement or disbursement of the Net Settlement Fund or the Plan of Allocation.

40.     Approval of the Settlement is independent from approval of the plan of allocation.   Any determination with respect to the plan of allocation will not affect the Settlement, if approved.

41.     Only Class Members (*i.e.*, persons and entities who purchased or otherwise acquired Tronox Common Stock or Tronox Bonds from November 21, 2005 through and including January 12, 2009 **AND WERE DAMAGED AS A RESULT OF SUCH PURCHASES OR ACQUISITIONS**), will be eligible to share in the distribution of the Net Settlement Fund.   Each person or entity wishing to participate in the distribution must timely submit a valid Claim Form establishing membership in the Class, and including all required documentation, postmarked on or before _____, 2012 to the address set forth in the Claim Form that accompanies this Notice.

42.     Unless the Court otherwise orders, any Class Member who fails to submit a Claim Form postmarked on or before _____, 2012 shall be fully and forever barred from receiving payments pursuant to the Settlement but will in all other respects remain a Class Member and be subject to the provisions of the Stipulation, including the terms of any Final Judgment entered and the releases given.   This means that each Class Member releases the Settled Claims (as defined in paragraph 83 below) against the Released Parties (as defined in paragraph 84 below) and will be enjoined and prohibited from filing, prosecuting, or pursuing any of the Settled Claims against any of the Released Parties regardless of whether or not such Class Member submits a Claim Form.

43.     Information Required on the Claim Form:  Among other things, each Claim Form must state and provide sufficient documentation for the Claimant's opening and closing positions in Tronox Securities on the dates specified in the Claim Form and all transactions in Tronox Securities during the periods specified in the Claim Form.

44.     Participants and beneficiaries in the Tronox ERISA Plans should not include any information relating to their transactions within the plan in any Claim Form that they may submit in this Action.  Claims based on the Tronox ERISA Plans' purchases of Tronox Securities during the Class Period may be made by the plan's trustees.  To the extent any of the Defendants or any of the other persons or entities excluded from the Class are participants in the plans, such persons' or entities' proportionate share in the plans' purchases or acquisitions shall not be included in any Claim Form submitted by the plans and such persons or entities shall not receive, either directly or indirectly, any portion of the recovery that may be obtained from the Settlement by the Tronox ERISA Plans.

45.     The Court has reserved jurisdiction to allow, disallow, or adjust on equitable grounds the Claim of any Class Member.

46.     Each Claimant shall be deemed to have submitted to the jurisdiction of the United States District Court for the Southern District of New York with respect to his, her or its Claim Form.

47.     Persons and entities that are excluded from the Class by definition or that exclude themselves from the Class will not be eligible to receive a distribution from the Net Settlement Fund and should not submit Claim Forms.

## PROPOSED PLAN OF ALLOCATION

48.     The objective of the Plan of Allocation is to equitably distribute the settlement proceeds to those Class Members who suffered economic losses as a proximate result of the alleged wrongdoing.  In developing the Plan of Allocation, Lead Plaintiffs' damages expert calculated the amount of estimated alleged artificial inflation in Tronox Securities which purportedly was proximately caused by the alleged fraud.  In calculating

the estimated alleged artificial inflation, Lead Plaintiffs' damages expert considered price changes of Tronox Securities in reaction to certain public announcements regarding Tronox and the allegations in the First Amended Complaint and the evidence developed in support thereof, as advised by Lead Counsel.

49.     The calculations made pursuant to the Plan of Allocation are not intended to be estimates of, nor indicative of, the amounts that Class Members might have been able to recover after a trial.  Nor are the calculations pursuant to the Plan of Allocation intended to be estimates of the amounts that will be paid to Authorized Claimants pursuant to the Settlement.  The computations under the Plan of Allocation are only a method to weigh the claims of Authorized Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund.

50.     The Plan of Allocation generally measures the amount of loss that a Class Member can claim for purposes of making *pro rata* allocations of the cash in the Net Settlement Fund to Authorized Claimants.  The Plan of Allocation is not a formal damage analysis.  Recognized Loss Amounts are based primarily on the change in the level of alleged artificial inflation in the price of the respective Tronox Securities at the time of purchase or acquisition and at the time of sale.  In this case, Lead Plaintiffs allege that Defendants made false statements and omitted material facts between November 21, 2005 through and including January 12, 2009, which had the effect of artificially inflating the prices of Tronox Securities.

## CALCULATION OF RECOGNIZED LOSS AMOUNTS

### *Tronox Class A and Class B Common Stock ("Tronox Common Stock")*

51.     The calculation of Recognized Loss Amounts for Tronox Common Stock is based on the following price declines that occurred in response to alleged corrective disclosures which removed artificial inflation from the price of the stock:

| | |
|---|---|
| July 11, 2007: | $0.63 per share |
| February 13, 2008: | $1.60 per share |
| February 14, 2008: | $0.49 per share |
| July 30, 2008: | $0.16 per share |
| August 1, 2008: | $0.15 per share |
| August 18, 2008: | $0.27 per share |
| August 22, 2008: | $0.12 per share |
| September 17, 2008: | $0.06 per share |
| January 12, 2009: | $0.03 per share |

52.     For shares of Tronox Class A common stock that were purchased in the 11/21/2005 Initial Public Offering, and

(a)     sold prior to 7/11/2007, the Recognized Loss Amount is $0;
(b)     sold from 7/11/2007 through 2/12/2008, the Recognized Loss Amount is $0.16 per share;
(c)     sold on 2/13/2008, the Recognized Loss Amount is $0.56 per share;
(d)     sold from 2/14/2008 through 7/29/2008, the Recognized Loss Amount is $0.68 per share;
(e)     sold from 7/30/2008 through 7/31/2008, the Recognized Loss Amount is $0.72 per share;
(f)     sold from 8/1/2008 through 8/17/2008, the Recognized Loss Amount is $0.76 per share;
(g)     sold from 8/18/2008 through 8/21/2008, the Recognized Loss Amount is $0.83 per share;
(h)     sold from 8/22/2008 through 9/16/2008, the Recognized Loss Amount is $0.86 per share;
(i)     sold from 9/17/2008 through 1/11/2009, the Recognized Loss Amount is $0.87 per share;
(j)     retained at the end of 1/11/2009, the Recognized Loss Amount is $0.88 per share.

53. For shares of Tronox Common Stock that were <u>purchased from 11/22/2005 through 7/10/2007</u>, and

(a) sold prior to 7/11/2007, the Recognized Loss Amount is $0;
(b) sold from 7/11/2007 through 2/12/2008, the Recognized Loss Amount is $0.63 per share;
(c) sold on 2/13/2008, the Recognized Loss Amount is $2.23 per share;
(d) sold from 2/14/2008 through 7/29/2008, the Recognized Loss Amount is $2.72 per share;
(e) sold from 7/30/2008 through 7/31/2008, the Recognized Loss Amount is $2.88 per share;
(f) sold from 8/1/2008 through 8/17/2008, the Recognized Loss Amount is $3.03 per share;
(g) sold from 8/18/2008 through 8/21/2008, the Recognized Loss Amount is $3.30 per share;
(h) sold from 8/22/2008 through 9/16/2008, the Recognized Loss Amount is $3.42 per share;
(i) sold from 9/17/2008 through 1/11/2009, the Recognized Loss Amount is $3.48 per share;
(j) retained at the end of 1/11/2009, the Recognized Loss Amount is $3.51 per share.

54. For shares of Tronox Common Stock that were <u>purchased from 7/11/2007 through 2/12/2008</u>, and

(a) sold prior to 2/13/2008, the Recognized Loss Amount is $0;
(b) sold on 2/13/2008, the Recognized Loss Amount is $1.60 per share;
(c) sold from 2/14/2008 through 7/29/2008, the Recognized Loss Amount is $2.09 per share;
(d) sold from 7/30/2008 through 7/31/2008, the Recognized Loss Amount is $2.25 per share;
(e) sold from 8/1/2008 through 8/17/2008, the Recognized Loss Amount is $2.40 per share;
(f) sold from 8/18/2008 through 8/21/2008, the Recognized Loss Amount is $2.67 per share;
(g) sold from 8/22/2008 through 9/16/2008, the Recognized Loss Amount is $2.79 per share;
(h) sold from 9/17/2008 through 1/11/2009, the Recognized Loss Amount is $2.85 per share;
(i) retained at the end of 1/11/2009, the Recognized Loss Amount is $2.88 per share.

55. For shares of Tronox Common Stock that were <u>purchased on 2/13/2008</u>, and

(a) sold on 2/13/2008, the Recognized Loss Amount is $0;
(b) sold from 2/14/2008 through 7/29/2008, the Recognized Loss Amount is $0.49 per share;
(c) sold from 7/30/2008 through 7/31/2008, the Recognized Loss Amount is $0.65 per share;
(d) sold from 8/1/2008 through 8/17/2008, the Recognized Loss Amount is $0.80 per share;
(e) sold from 8/18/2008 through 8/21/2008, the Recognized Loss Amount is $1.07 per share;
(f) sold from 8/22/2008 through 9/16/2008, the Recognized Loss Amount is $1.19 per share;
(g) sold from 9/17/2008 through 1/11/2009, the Recognized Loss Amount is $1.25 per share;
(h) retained at the end of 1/11/2009, the Recognized Loss Amount is $1.28 per share.

56. For shares of Tronox Common Stock that were <u>purchased from 2/14/2008 through 7/29/2008</u>, and

(a) sold prior to 7/30/2008, the Recognized Loss Amount is $0;
(b) sold from 7/30/2008 through 7/31/2008, the Recognized Loss Amount is $0.16 per share;
(c) sold from 8/1/2008 through 8/17/2008, the Recognized Loss Amount is $0.31 per share;
(d) sold from 8/18/2008 through 8/21/2008, the Recognized Loss Amountis $0.58 per share;
(e) sold from 8/22/2008 through 9/16/2008, the Recognized Loss Amount is $0.70 per share;
(f) sold from 9/17/2008 through 1/11/2009, the Recognized Loss Amount is $0.76 per share;
(g) retained at the end of 1/11/2009, the Recognized Loss Amount is $0.79 per share.

57.     For shares of Tronox Common Stock that were <u>purchased from 7/30/2008 through 7/31/2008</u>, and

(a)     sold prior to 8/1/2008, the Recognized Loss Amount is $0;
(b)     sold from 8/1/2008 through 8/17/2008, the Recognized Loss Amount is $0.15 per share;
(c)     sold from 8/18/2008 through 8/21/2008, the Recognized Loss Amount is $0.42 per share;
(d)     sold from 8/22/2008 through 9/16/2008, the Recognized Loss Amount is $0.54 per share;
(e)     sold from 9/17/2008 through 1/11/2009, the Recognized Loss Amount is $0.60 per share;
(f)     retained at the end of 1/11/2009, the Recognized Loss Amount is $0.63 per share.

58.     For shares of Tronox Common Stock that were <u>purchased from 8/1/2008 through 8/17/2008</u>, and

(a)     sold prior to 8/18/2008, the Recognized Loss Amount is $0;
(b)     sold from 8/18/2008 through 8/21/2008, the Recognized Loss Amount is $0.27 per share;
(c)     sold from 8/22/2008 through 9/16/2008, the Recognized Loss Amount is $0.39 per share;
(d)     sold from 9/17/2008 through 1/11/2009, the Recognized Loss Amount is $0.45 per share;
(e)     retained at the end of 1/11/2009, the Recognized Loss Amount is $0.48 per share.

59.     For shares of Tronox Common Stock that were <u>purchased from 8/18/2008 through 8/21/2008</u>, and

(a)     sold prior to 8/22/2008, the Recognized Loss Amount is $0;
(b)     sold from 8/22/2008 through 9/16/2008, the Recognized Loss Amount is $0.12 per share;
(c)     sold from 9/17/2008 through 1/11/2009, the Recognized Loss Amount is $0.18 per share;
(d)     retained at the end of 1/11/2009, the Recognized Loss Amount is $0.21 per share.

60.     For shares of Tronox Common Stock that were <u>purchased from 8/22/2008 through 9/16/2008</u>, and

(a)     sold prior to 9/17/2008, the Recognized Loss Amount is $0;
(b)     sold from 9/17/2008 through 1/11/2009, the Recognized Loss Amount is $0.06 per share;
(c)     retained at the end of 1/11/2009, the Recognized Loss Amount is $0.09 per share.

61.     For shares of Tronox Common Stock that were <u>purchased from 9/17/2008 through 1/11/2009</u>, and

(a)     sold prior to 1/12/2009, the Recognized Loss Amount is $0;
(b)     retained at the end of 1/11/2009, the Recognized Loss Amount is $0.03 per share.

62.     For shares of Tronox Common Stock that were purchased on 1/12/2009, the Recognized Loss Amount is $0.

## *Tronox 9.5% Notes ("Tronox Bonds")*

63.     The calculation of Recognized Loss Amounts for Tronox 9.5% Notes is based on the following price declines that occurred in response to alleged corrective disclosures which removed artificial inflation from the price of the Notes<u>:</u>

|  |  |
|---|---|
| February 13, 2008: | $21.25 per $1,000 par value Note |
| February 14, 2008: | $38.75 per $1,000 par value Note |
| August 18, 2008: | $10.00 per $1,000 par value Note |

November 10, 2008:   $10.00 per $1,000 par value Note

64.   For Tronox 9.5% Notes that were purchased from 11/21/2005 through 2/12/2008, and

(a)   sold prior to 2/13/2008, the Recognized Loss Amount is $0;

(b)   sold on 2/13/2008, the Recognized Loss Amount per $1,000 par value Note is $21.25;

(c)   sold from 2/14/2008 through 8/17/2008, the Recognized Loss Amount per $1,000 par value Note is $60.00;

(d)   sold from 8/18/2008 through 11/9/2008, the Recognized Loss Amount per $1,000 par value Note is $70.00;

(e)   retained at the end of 11/9/08, the Recognized Loss Amount per $1,000 par value Note  is $80.00.

65.   For Tronox 9.5% Notes that were purchased on 2/13/2008, and

(a)   sold on 2/13/2008, the Recognized Loss Amount is $0;

(b)   sold from 2/14/2008 through 8/17/2008, the Recognized Loss Amount per $1,000 par value Note is $38.75;

(c)   sold from 8/18/2008 through 11/9/2008, the Recognized Loss Amount per $1,000 par value Note is $48.75;

(d)   retained at the end of 11/9/08, the Recognized Loss Amount per $1,000 par value Note is $58.75.

66.   For Tronox 9.5% Notes that were purchased from 2/14/2008 through 8/17/2008, and

(a)   sold prior to 8/18/2008, the Recognized Loss Amount is $0;

(b)   sold from 8/18/2008 through 11/9/2008, the Recognized Loss Amount per $1,000 par value Note is $10.00;

(c)   retained at the end of 11/9/2008, the Recognized Loss Amount per $1,000 par value Note is $20.00.

67.   For Tronox 9.5% Notes that were purchased from 8/18/2008 through 11/9/2008, and

(a)   sold prior to 11/10/2008, the Recognized Loss Amount is $0;

(b)   retained at the end of 11/9/08, the Recognized Loss Amount per $1,000 par value Note is $10.00.

68.   For Tronox 9.5% Notes that were purchased from 11/10/2008 through 1/12/2009, the Recognized Loss Amount is $0.

## ADDITIONAL PROVISIONS

69.   The Net Settlement Fund will be allocated among all Authorized Claimants whose prorated payment is $20.00 or greater.  If both the settlement with the Company Defendants and the settlement with E&Y are approved, the Net Settlement Fund will be the total Settlement Amount plus interest thereon, less any Taxes, Notice and Administration Costs, and less any attorneys' fees and Litigation Expenses awarded by the Court; if only one of the settlements is approved the Net Settlement Fund will be the amount paid by the defendants whose settlement is approved, plus interest thereon, less any Taxes, Notice and Administration Costs, and less any attorneys' fees and Litigation Expenses awarded by the Court as set forth in footnote 2 above.

70.   Each Authorized Claimant's Recognized Claim shall be the total of his, her or its Recognized Loss Amounts.  Each Authorized Claimant shall recover his, her, or its Recognized Claim.  If the sum total of

15

Recognized Claims of all Authorized Claimants who are entitled to receive payment out of the Net Settlement Fund is greater than the Net Settlement Fund, however, each Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Fund. The *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

71. If the Net Settlement Fund exceeds the sum total amount of the Recognized Claims of all Authorized Claimants entitled to receive payment out of the Net Settlement Fund, the excess amount in the Net Settlement Fund shall be distributed *pro rata* to all Authorized Claimants entitled to receive payment.

72. If the prorated payment to any Authorized Claimant calculates to less than $20.00, it will not be included in the calculation and no distribution will be made to that Authorized Claimant.

73. If a Class Member has more than one purchase/acquisition or sale of Tronox Securities during the Class Period, all purchases/acquisitions and sales shall be matched with like securities (Tronox Class A common stock, Tronox Class B common stock or Tronox Bonds) on a First In, First Out ("FIFO") basis.

74. Purchases or acquisitions and sales of Tronox Securities shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date. The receipt or grant by gift, inheritance or operation of law of Tronox Securities during the Class Period shall not be deemed a purchase, acquisition or sale of these shares of Tronox Securities for the calculation of an Authorized Claimant's Recognized Claim nor shall the receipt or grant be deemed an assignment of any claim relating to the purchase/acquisition of Tronox Securities unless (i) the donor or decedent purchased or otherwise acquired such Tronox Securities during the Class Period; (ii) no Claim Form was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such Tronox Securities; and (iii) it is specifically so provided in the instrument of gift or assignment.

75. The date of covering a "short sale" is deemed to be the date of purchase or acquisition of the Tronox Security. The date of a "short sale" is deemed to be the date of sale of the Tronox Security. In accordance with the Plan of Allocation, however, the Recognized Loss Amount on "short sales" is zero. In the event that a Claimant had a short position in a Tronox Security prior to the opening of trading on the first day of the Class Period, the earliest purchases of that Tronox Security shall be matched against such opening short position, and not be entitled to a recovery, until that short position is fully covered.

76. Tronox Common Stock and Tronox Bonds are the only securities eligible for recovery under the Plan of Allocation. Option contracts are not securities eligible to participate in the Settlement. With respect to Tronox Securities purchased or sold through the exercise of an option, the purchase/sale date of the Tronox Security is the exercise date of the option and the purchase/sale price is the exercise price of the option.

77. To the extent a Claimant had a market gain with respect to his, her, or its overall transactions in Tronox Securities during the Class Period, the value of his, her or its Recognized Claim will be zero. Such Claimants will in any event be bound by the Settlement. To the extent that a Claimant suffered an overall market loss with respect to his, her, or its overall transactions in Tronox Securities during the Class Period, but that market loss was less than the total Recognized Claim calculated above, then the Claimant's Recognized Claim shall be limited to the amount of the actual market loss.

78. For purposes of determining whether a Claimant had a market gain with respect to his, her, or its overall transactions in Tronox Securities during the Class Period or suffered a market loss, the Claims

Administrator shall determine the difference between (i) the Total Purchase Amount[3] and (ii) the sum of the Sales Proceeds[4] and the Holding Value.[5] This difference will be deemed a Claimant's market gain or loss with respect to his, her, or its overall transactions in Tronox Securities during the Class Period.

79.    If any funds remain in the Net Settlement Fund because of uncashed distributions or other reasons, then, after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants cash their distribution checks, any balance remaining in the Net Settlement Fund one (1) year after the initial distribution of such funds shall be redistributed to Authorized Claimants who have cashed their initial distribution and who would receive at least $20.00 from such redistribution, after payment of any unpaid costs or fees incurred in administering the funds, including for such redistribution. Additional redistributions to Authorized Claimants who have cashed their prior distribution checks and who would receive at least $20.00 on such additional redistributions, subject to the conditions previously noted, may occur thereafter if Lead Counsel, in consultation with the Claims Administrator, determines that additional redistribution, after the deduction of any additional fees and expenses that would be incurred with respect to such redistributions, would be cost-effective. At such time as it is determined that the redistribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance of the Net Settlement Fund shall be contributed to non-sectarian, not-for-profit 501(c)(3) organizations recommended by Lead Counsel and approved by the Court.

80.    Payment pursuant to the Plan of Allocation, or such other plan as may be approved by the Court, shall be conclusive against all Authorized Claimants. No person shall have any claim against Plaintiffs, Plaintiffs' Counsel, Defendants, Defendants' Counsel or any of the other Released Parties, or the Claims Administrator or other agent designated by Lead Counsel arising from distributions made substantially in accordance with the Stipulation, the plan of allocation approved by the Court, or further orders of the Court. Plaintiffs, Defendants, Defendants' Counsel, and the other Released Parties shall have no responsibility or liability whatsoever for the investment or distribution of the Settlement Fund, the Net Settlement Fund, the Plan of Allocation, or the determination, administration, calculation, or payment of any Claim Form or nonperformance of the Claims Administrator, the payment or withholding of taxes owed by the Settlement Fund, or any losses incurred in connection therewith.

81.    The Plan of Allocation set forth herein is the plan that is being proposed by Lead Plaintiffs and Lead Counsel to the Court for approval. The Court may approve this plan as proposed or it may modify the Plan of Allocation without further notice to the Class. Any orders regarding a modification of the Plan of Allocation will be posted to the settlement website, www.gilardi.com/tronox.

<div style="border:1px solid black; text-align:center;">

**WHAT RIGHTS AM I GIVING UP BY REMAINING IN THE CLASS?**

</div>

82.    If you remain in the Class, you will be bound by any orders issued by the Court. If the Settlement is approved, the Court will enter a judgment (the "Final Judgment"). The Final Judgment will dismiss with prejudice the claims against Defendants and will provide that, upon the Effective Date of the Settlement, each of the Plaintiffs and all other Class Members, and each of their respective present or past

---

[3] The "Total Purchase Amount" is the total the amount the Claimant paid (excluding commissions and other charges) for all Tronox Securities purchased or acquired during the Class Period.

[4] The "Sales Proceeds" is the total amount received for sales of Tronox Securities sold during the Class Period.

[5] The Claims Administrator shall ascribe a value of $0.03 per share of Tronox Class A and Class B common stock, and $160.00 per $1,000 par value Tronox Bond purchased or acquired from November 21, 2005 through and including January 12, 2009 and still held as of the close of business on January 12, 2009 (the "Holding Value").

heirs, executors, estates, administrators, predecessors, successors, assigns, parents, subsidiaries, partners, directors, investors and agents in their capacity as such shall be deemed by operation law to have fully, finally, and forever released, waived, discharged, and dismissed each and every Settled Claim (as defined in paragraph 83 below) against each and all of the Released Parties (as defined in paragraph 84 below), whether or not the Plaintiffs or Class Members execute and deliver a Claim Form to the Claims Administrator.

83.    "Settled Claims" means any and all claims, causes of action and rights of every nature and description, including Unknown Claims (as defined below), whether direct, derivative, individual, or representative, or in any other capacity, arising under federal, state, local or foreign statutory or common law or any other law, rule or regulation, to the fullest extent that the law permits their release in this Action, that Plaintiffs or any other member of the Class (a) asserted in the Complaint, the First Amended Complaint, or any other pleadings or briefs filed by Lead Plaintiffs in this Action, or (b) could have asserted in any forum that arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint or the First Amended Complaint (including without limitation all claims arising out of or relating to any disclosures, public filings, registration statements, or other statements by Tronox or any of the Defendants referred to or set forth in the Complaint, the First Amended Complaint, or any other pleadings or briefs filed by Lead Plaintiffs in this Action),  or any other pleadings or briefs filed by Lead Plaintiffs in this Action and that arise out of or are in any way related to the purchase, ownership or sale of Tronox Securities during the Class Period.  Notwithstanding the foregoing, "Settled Claims" do not include, release, bar, waive, impair, prejudice, or otherwise impact (i) the rights of Lead Plaintiffs and the Class under the Stipulation and Agreed Order dated November 16, 2010 between Lead Plaintiffs and the Debtors in the Bankruptcy Case; (ii) any claim or right to recovery of any Plaintiff or any other Class Member individually in the Bankruptcy Case based upon his, her or its status as a holder or beneficial owner of a Tronox, Inc. debt or equity security with respect to their rights to participate in the distribution of funds in the Bankruptcy Case; for the sake of clarity, nothing in this clause is intended to create a cause of action or claim, either directly or indirectly, against any Defendant in the Bankruptcy Case; (iii) Plaintiffs' and each other Class Member's right to participate in the distribution of any funds recovered from any of the Defendants by any governmental or regulatory agency; for the sake of clarity, nothing in this clause is intended to create a cause of action or claim, either directly or indirectly, against any Defendant and Plaintiffs are enjoined from seeking to have any government or regulatory agency institute or pursue claims against the Released Parties for Settled Claims; or (iv) claims relating to enforcement of the terms of this Stipulation or the Settlement.

84.    "Released Parties" means each and all of the Defendants and their Related Parties, i.e., each and all of the Defendants' (i) past and/or present directors, officers, employees, partners, principals, controlling shareholders, predecessors, successors, assigns, parents, subsidiaries, divisions, and affiliates, and the respective members of their Immediate Families, their respective heirs, executors, estates, administrators, and agents, each in their capacity as such; (ii) their insurers, co-insurers, reinsurers, attorneys, accountants or auditors, personal or legal representatives, each in their capacity as such; and (iii) as to the Individual Defendants, the respective members of their Immediate Families, their respective heirs, executors, estates, administrators, and agents, each in their capacity as such.

85.    "Unknown Claims" means any Settled Claim which any Plaintiff or any other Class Member does not know or suspect to exist in his, her or its favor at the time of the release of such claims, and any Released Claims Against Plaintiffs which any Defendant or any other Released Party does not know or suspect to exist in his, her or its favor at the time of the release of such claims, which if known by him, her or it might have affected his, her or its decision(s) with respect to this Settlement.  With respect to any and all Settled Claims and Released Claims Against Plaintiffs, the Parties stipulate and agree that, upon the Effective Date, Plaintiffs and the Defendants shall expressly waive, and each other Class Member and each other Released

Party shall be deemed to have waived, and by operation of the Final Judgment shall have expressly waived the provisions, rights and benefits conferred by California Civil Code § 1542 or any law of any state or territory of the United States, or principle of common law, or foreign law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiffs and the Defendants, and each other Class Member and each other Released Party may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Settled Claims and Released Claims Against Plaintiffs, but Plaintiffs and the Defendants, and each other Class Member and each other Released Party, upon the Effective Date, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever settled and released any and all Settled Claims and Released Claims Against Plaintiffs, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  Plaintiffs and Defendants acknowledge, and each other Class Member and each other Released Party by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Settled Claims and Released Claims Against Plaintiffs was separately bargained for and was a key element of the Settlement of which this release is a part.

86.    The Final Judgment also will provide that, upon the Effective Date of the Settlement, each of the Defendants and each of the other Released Parties, and each of their respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parents, subsidiaries, partners, principals, directors, investors, investment advisors and agents in their capacity as such shall be deemed by operation of law to have fully, finally, and forever released, waived, discharged and dismissed all claims, causes of action and rights of every nature and description, including Unknown Claims, whether direct, derivative, individual, representative, or in any other capacity, arising under federal, state, local or foreign statutory or common law or any other law, rule or regulation, to the fullest extent that the law permits their release in this Action, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against the Defendants or the allegations, transactions, facts, matters or occurrences underlying such claims, except for claims relating to the enforcement of the terms of the Stipulation or the Settlement against (i) all Plaintiffs and their respective attorneys, (ii) any other Class Member, and (iii) each of the foregoing individuals' and/or entities' respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parents, subsidiaries, partners, principals, directors, investors, investment advisors and agents in their capacity as such.  Nothing herein shall release, bar, waive, impair, prejudice or otherwise impact the rights of Anadarko to assert additional claims or defenses against Tronox, Inc. in the AP.

87.    If only the settlement with Company Defendants is approved or becomes effective, then the release of Settled Claims described above will only be given with respect to the Company Defendants and their Related Parties, and E&Y and its Related Parties will not be released.  If only the settlement with E&Y is approved or becomes effective, then the release of Settled Claims described above will only be given with respect to E&Y and its Related Parties and the Company Defendants and their Related Parties will not be released.  Similarly, the release of claims against Plaintiffs and other Class Members described in ¶ 86 will be given only by the defendants whose settlement becomes effective and their Related Parties.

---

## WHAT PAYMENT ARE THE ATTORNEYS FOR THE CLASS SEEKING? HOW WILL THE LAWYERS BE PAID?

88.    Plaintiffs' Counsel have not received any payment for their services in pursuing claims against the Defendants on behalf of the Class, nor have Plaintiffs' Counsel been reimbursed for their out-of-pocket expenses.  Before final approval of the Settlement, Lead Counsel will apply to the Court for an award of attorneys' fees from the Settlement Fund in an amount not to exceed 25% of the Settlement Fund.  At the same time, Lead Counsel also intends to apply for the reimbursement of Litigation Expenses not to exceed $1,985,000, which may include an application for reimbursement of the reasonable costs and expenses incurred by Plaintiffs directly related to their representation of the Class.  The Court will determine the amount of any award of attorneys' fees or reimbursement of Litigation Expenses.  Should only one of the settlements become effective (i.e., the settlement with the Company Defendants or the settlement with E&Y), attorneys' fees will be paid only on the portion of the Settlement Amount paid with respect to the effective settlement, and only the proportion of the total Litigation Expenses approved by the Court that is equal to the amount of the settlement that becomes effective divided by the total Settlement Amount will be paid, such payment to come from the amount paid by the Defendants whose settlement becomes effective.

---

## HOW DO I PARTICIPATE IN THE SETTLEMENT? WHAT DO I NEED TO DO?

89.    To be eligible for a payment from the proceeds of the Settlement, you must be a member of the Class and you must timely complete and return the Claim Form with adequate supporting documentation **postmarked no later than _____, 2012**.  A Claim Form is included with this Notice, or you may obtain one from the website maintained by the Claims Administrator for the Settlement, www.gilardi.com/tronox, or you may request that a Claim Form be mailed to you by calling the Claims Administrator toll free at 1-888-213-8535.  If you request exclusion from the Class or do not submit a timely and valid Claim Form, you will not be eligible to share in the Net Settlement Fund.  Please retain all records of your ownership of and transactions in Tronox Common Stock and Tronox Bonds, as they may be needed to document your Claim.

90.    As a Class Member, you are represented by Lead Plaintiffs and Lead Counsel, unless you enter an appearance through counsel of your own choice at your own expense.  You are not required to retain your own counsel, but if you choose to do so, such counsel must file a notice of appearance on your behalf and must serve copies of his or her notice of appearance on the attorneys listed in the section entitled, "When and Where Will the Court Decide Whether to Approve the Settlement?," below.

91.    If you are a Class Member and do not wish to remain a Class Member, you may exclude yourself from the Class by following the instructions in the section entitled, "What If I Do Not Want To Participate in the Settlement?  How Do I Exclude Myself?," below.

92.    If you are a Class Member and you wish to object to the Settlement, the proposed Plan of Allocation, or Lead Counsel's application for attorneys' fees and reimbursement of Litigation Expenses, and if you do not exclude yourself from the Class, you may present your objections by following the instructions in the section entitled, "When and Where Will the Court Decide Whether to Approve the Settlement?," below.

---

## WHAT IF I DO NOT WANT TO BE PARTICIPATE IN THE SETTLEMENT? HOW DO I EXCLUDE MYSELF?

93.    Each Class Member will be bound by all determinations and judgments in this lawsuit, including those concerning the Settlement, whether favorable or unfavorable, unless such person or entity mails or

delivers a written Request for Exclusion from the Class, addressed to *In re Tronox, Inc., Securities Litigation -* EXCLUSIONS, - c/o Gilardi & Co. LLC, P.O. Box 8040, San Rafael, CA 94912-8040. The exclusion request must be *received* no later than _____, 2012. You will not be able to exclude yourself from the Class after that date. Each Request for Exclusion must (a) state the name, address and telephone number of the person or entity requesting exclusion; (b) state that such person or entity "requests exclusion from the Class in *In re Tronox, Inc., Securities Litigation*, File No. 09-CV-06220-SAS"; (c) state the number of shares of Tronox Class A and Class B common stock and the number of $1,000 par value Tronox Bonds that the person or entity requesting exclusion purchased/acquired and/or sold during the Class Period, as well as the dates and prices of each such purchase/acquisition and sale, or include brokerage statements that reflect the number of shares of Tronox Class A and Class B common stock and the number of $1,000 par value Tronox Bonds that the person or entity requesting exclusion purchased/acquired and/or sold during the Class Period and the dates and prices of each such purchase/acquisition and sale; and (d) be signed by the person or entity requesting exclusion or an authorized representative. A Request for Exclusion shall not be effective unless it provides all the information called for in this paragraph and is received within the time stated above, or is otherwise accepted by the Court.

94.    If you do not want to be part of the Class, you must follow these instructions for exclusion even if you have pending, or later file, another lawsuit, arbitration, or other proceeding relating to any Settled Claim against any of the Released Parties.

95.    If you ask to be excluded from the Class, you will not be eligible to receive any payment out of the Net Settlement Fund or any other benefit provided for in the Stipulation.

96.    Defendants have the right to terminate the Settlement if valid requests for exclusion are received from persons and entities entitled to be members of the Class in an amount that exceeds an amount agreed to by Lead Plaintiffs and Defendants.

> **WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?**
> **DO I HAVE TO COME TO THE HEARING?**
> **MAY I SPEAK AT THE HEARING IF I DON'T LIKE THE SETTLEMENT?**

97.    Class Members do not need to attend the Settlement Hearing. The Court will consider any submission made in accordance with the provisions below even if a Class Member does not attend the hearing. You can participate in the Settlement without attending the Settlement Hearing.

98.    The Settlement Hearing will be held on _____, 2012 at __:__ _ m. before the Honorable Shira A. Scheindlin, in Courtroom 15C of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York, 10007. The Court reserves the right to approve the Settlement and/or the Plan of Allocation at or after the Settlement Hearing without further notice to the members of the Class.

99.    Any Class Member who does not request exclusion may object to the proposed settlement with the Company Defendants and/or E&Y, the proposed Plan of Allocation, or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses. Objections must be in writing. You must file any written objection, together with copies of all other papers and briefs supporting the objection, with the Clerk's Office at the United States District Court for the Southern District of New York at the address set forth below on or before _____, 2012. You must also serve the papers on Lead Counsel for the Class and Defendants' Counsel at the addresses set forth below so that the papers are *received* on or before _____, 2012.

**Clerk's Office:**

United States District Court
For The Southern District Of New York
Clerk of the Court
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York, 10007

**Lead Counsel for the Class:**

Gold Bennett Cera
& Sidener LLP
Solomon B. Cera, Esq.
Thomas C. Bright, Esq.
595 Market Street
San Francisco, CA 94105

**Defendants' Counsel:**

Weil, Gotshal & Manges LLP
Jonathan D. Polkes, Esq.
Miranda S. Schiller, Esq.
Stefania D. Venezia, Esq.
767 Fifth Avenue
New York, NY 10153

Dechert LLP
David H. Kistenbroker, Esq.
Joni S. Jacobsen, Esq.
115 S. LaSalle Street, Suite 2600
Chicago, IL 60603

Sullivan and Cromwell, LLP
Penny Shane, Esq.
Kristin Keranen, Esq.
125 Broad Street
New York, NY 10004

Baker Botts L.L.P.
Robb L. Voyles, Esq.
Timothy W. Mountz, Esq.
Jessica B. Pulliam, Esq.
2001 Ross Avenue
Dallas, TX  75201-2980

100.   Any objection to the Settlement (a) must state the name, address and telephone number of the person or entity objecting and must be signed by the objector; (b) must contain a statement of the Class Member's objection or objections, and the specific reasons for each objection, including any legal and evidentiary support the Class Member wishes to bring to the Court's attention; and (c) must include documents sufficient to prove the number of shares of Tronox Class A and Class B common stock and the number of $1,000 par value Tronox Bonds that the objecting Class Member purchased/acquired and sold during the Class Period, as well as the dates and prices of each such purchase/acquisition and sale.  You may not object to the Settlement, the Plan of Allocation or the motion for attorneys' fees and reimbursement of expenses if you excluded yourself from the Class or if you are not a member of the Class.

101.   You may file a written objection without having to appear at the Settlement Hearing.  You may not, however, appear at the Settlement Hearing to present your objection unless you first filed and served a written objection in accordance with the procedures described above, unless the Court orders otherwise.

102.   If you wish to be heard orally at the hearing in opposition to the approval of the Settlement, the Plan of Allocation, or Lead Counsel's request for an award of attorneys' fees and reimbursement of expenses, and if you file and serve a timely written objection as described above, you must also file a notice of appearance with the Clerk's Office and serve it on Lead Counsel and Defendants' Counsel at the addresses set forth above so that it is *received* on or before _____, 2012.  Persons who intend to object and desire to present evidence at the Settlement Hearing must include in their written objection or notice of appearance the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the hearing.

103.   You are not required to hire an attorney to represent you in making written objections or in appearing at the Settlement Hearing.  However, if you decide to hire an attorney, it will be at your own

expense, and that attorney must file a notice of appearance with the Court and serve it on Lead Counsel so that the notice is *received* on or before _____, 2012.

104.   The Settlement Hearing may be adjourned by the Court without further written notice to the Class.  If you intend to attend the Settlement Hearing, you should confirm the date and time with Lead Counsel.

**Unless the Court orders otherwise, any Class Member who does not object in the manner described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the proposed Settlement, the proposed Plan of Allocation, or Lead Counsel's request for an award of attorneys' fees and reimbursement of expenses.  Class Members do not need to appear at the hearing or take any other action to indicate their approval.**

| WHAT IF I BOUGHT SHARES ON SOMEONE ELSE'S BEHALF? |
|---|

105.   If you purchased or otherwise acquired Tronox Class A and/or Class B common stock and/or Tronox Bonds during the period from November 21, 2005 through and including January 12, 2009, for the beneficial interest of a person or entity other than yourself, you must either (a) within seven (7) calendar days of receipt of this Notice, request from the Claims Administrator sufficient copies of the Notice and Claim Form (the "Notice Packet") to forward to all such beneficial owners and within seven (7) calendar days of receipt of those Notice Packets forward them to all such beneficial owners; or (b) within seven (7) calendar days of receipt of this Notice, provide a list of the names and addresses of all such beneficial owners to *In re Tronox, Inc., Securities Litigation*, c/o Gilardi & Co. LLC, P.O. Box 8040, San Rafael, CA 94912-8040.  If you choose the second option, the Claims Administrator will send a copy of the Notice and the Claim Form to the beneficial owners.  Upon full compliance with these directions, such nominees may seek reimbursement of their reasonable expenses actually incurred, by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought.  Copies of this Notice and the Claim Form may also be obtained from website maintained by the Claims Administrator, www.gilardi.com/tronox, by calling the Claims Administrator toll-free at 1-888-213-8535.

| CAN I SEE THE COURT FILE?  WHOM SHOULD I CONTACT IF I HAVE QUESTIONS? |
|---|

106.   This Notice contains only a summary of the terms of the proposed Settlement.  For more detailed information about the matters involved in this Action, you are referred to the papers on file in the Action, including the Stipulation, which may be inspected during regular office hours at the Office of the Clerk, United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York, 10007.  Additionally, copies of the Stipulation and any related orders entered by the Court will be posted on the website maintained by the Claims Administrator, www.gilardi.com/tronox.  All inquiries concerning this Notice or the Claim Form should be directed to:

*In re Tronox, Inc., Securities Litigation*
c/o Gilardi & Co. LLC
P.O. Box 8040
San Rafael, CA 94912-8040
1-888-213-8535
www.gilardi.com/tronox

**OR**

Solomon B. Cera, Esq.
Thomas C. Bright, Esq.
GOLD BENNETT CERA
& SIDENER LLP
595 Market Street
San Francisco, CA 10019
1-800-778-1822
scera@gbcslaw.com
tbright@gbcslaw.com

**DO NOT CALL OR WRITE THE COURT OR THE OFFICE OF THE CLERK OF COURT
REGARDING THIS NOTICE.**

Dated: _____, 2012

By Order of the Clerk of Court
United States District Court
for the Southern District of New York

#660582