**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____ )   Civil Action No. 09-CV-06220-SAS
 )
IN RE TRONOX, INC. )
SECURITIES LITIGATION )   Electronically filed
_____ )
 )
THIS DOCUMENT RELATES TO )
ALL CLASS ACTIONS )
 )
_____ )

**LEAD PLAINTIFFS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR (I) PRELIMINARY APPROVAL**
**OF SETTLEMENT, (II) CERTIFICATION OF THE CLASS FOR PURPOSES**
**OF SETTLEMENT AND (III) APPROVAL OF NOTICE TO THE CLASS**

GOLD BENNETT CERA & SIDENER LLP
Solomon B. Cera
Thomas C. Bright
595 Market Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 777-2230
Facsimile: (415) 777-5189

*Lead Counsel and Attorneys for Lead Plaintiffs*

Dated:  August 3, 2012

#126186

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND OF THE LITIGATION .................................................................................... 4

ARGUMENT ......................................................................................................................... 11

I.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............. 11

    A.     The Settlement Is The Result Of Good Faith,  Arm's-Length Negotiations By Well-Informed And Experienced Counsel .................................................... 12

    B.     The Substantial Benefits For The Class, Weighed Against Litigation Risks, Support Preliminary Approval ...................................................................... 13

II.    CERTIFICATION OF THE CLASS  FOR SETTLEMENT PURPOSES IS APPROPRIATE ......................................................................................................... 15

    A.     The Class Satisfies The Requirements Of Rule 23(a) .................................. 17

        1.     The Class Members Are Too Numerous To Be Joined ...................... 17

        2.     There Are Common Questions Of Law And Fact .............................. 18

        3.     Plaintiffs' Claims Are Typical Of Those Of The Class ...................... 19

        4.     Plaintiffs Will Fairly And Adequately Protect The Interests Of The Class .......... 20

    B.     The Class Satisfies The Requirements Of Rule 23(b)(3) .............................. 21

        1.     Common Legal And Factual Questions Predominate ........................ 22

        2.     A Class Action Is Superior To Other Methods Of Adjudication ........ 22

III.   NOTICE TO THE CLASS SHOULD BE APPROVED ................................................ 24

CONCLUSION ..................................................................................................................... 25

## TABLE OF AUTHORITIES

Page(s)

CASES

*Affiliated Ute Citizens v. United States*
    406 U.S. 128 (1972)........................................................................................ 16

*Amchem Prods., Inc. v. Windsor*
    521 U.S. 591 (1997)................................................................................. 16, 22

*Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*
    504 F.3d 229 (2d Cir. 2007)............................................................... 17, 18, 19

*Cohen v. J.P. Morgan Chase & Co.*
    262 F.R.D. 153 (E.D.N.Y. 2009) ................................................................... 12

*Consol. Rail Corp. v. Town of Hyde Park*
    47 F.3d 473 (2d Cir. 1995)........................................................................ 17, 18

*D'Amato v. Deutsche Bank*
    236 F.3d 78 (2d Cir. 2001)............................................................................. 13

*Denney v. Deutsche Bank AG*
    443 F.3d 253 (2d Cir. 2006)........................................................................... 16

*Fait v. Regions Financial Corp.*
    655 F.3d 105 (2d Cir. 2011)........................................................................... 14

*In re Drexel Burnham Lambert Grp., Inc.*
    960 F.2d 285 (2d Cir. 1992)........................................................................... 21

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*
    No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *13 (S.D.N.Y. Nov. 8, 2010) 12, 13

*In re Giant Interactive Grp., Inc. Sec. Litig.*
    No. 07 Civ. 10588 (PAE), 2011 WL 5244707, at *3 (S.D.N.Y. Nov. 2, 2011) .............. 16

*In re Globalstar Sec. Litig.*
    No. 01 Civ 1748 (PKC), 2004 WL 2754674, at *4 (S.D.N.Y. Dec. 1, 2004) ................. 18

*In re IMAX Sec. Litig.*
    No. 06 Civ. 6128 (NRB), 2012 WL 2359653, at *9 (S.D.N.Y. June 20, 2012) .............. 11

*In re Initial Pub. Offering Sec. Litig.*
    243 F.R.D. 79 (S.D.N.Y. 2007) ............................................................... 12, 22

*In re Marsh & McLennan Cos. Sec. Litig.*
    No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009).......... passim

*In re Monster Worldwide, Inc. Sec. Litig.*
    251 F.R.D. 132 (S.D.N.Y. 2008) ................................................................... 23

*In re NASDAQ Market-Makers Antitrust Litig.*
    176 F.R.D. 99 (S.D.N.Y. 1997) ..................................................................... 12

*In re Oxford Health Plans, Inc.*
    191 F.R.D. 369 (S.D.N.Y. 2000) ................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

*In re Pfizer Inc. Sec. Litig.*
    No. 04 Civ. 9866 (LTS)(HBP), 2012 WL 1059671, at *3 (S.D.N.Y. Mar. 29, 2012) 18, 20

*In re Polaroid ERISA Litig.*
    240 F.R.D. 65 (S.D.N.Y. 2006) ................................................................. 21

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*
    163 F.R.D. 200 (S.D.N.Y. 1995) ........................................................ 11, 16

*In re Sadia S.A. Sec. Litig.*
    269 F.R.D. 298 (S.D.N.Y. July 20, 2010) .......................................... 17, 20

*In re Sadia S.A. Sec. Litig.*
    No. 08 Civ. 9528 (SAS), 2011 WL 6825235, at *1 (S.D.N.Y. Dec. 28, 2011) ............... 12

*In re Telik, Inc. Sec. Litig.*
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ...................................................... 13

*In re Tronox, Inc. Sec. Litig.*
    262 F.R.D. 338 (S.D.N.Y. 2009) .............................................................. 5

*In re Tronox, Inc. Sec. Litig.*
    No. 09 Civ. 6220 (SAS), 2010 WL 2835545 (S.D.N.Y. June 28, 2010) ...................... 7, 16

*In re Veeco Instruments, Inc. Sec. Litig.*
    235 F.R.D. 220 (S.D.N.Y. 2006) ............................................................ 22

*In re Warner Chilcott Ltd. Sec. Litig.*
    No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008) ............ 25

*Lapin v. Goldman Sachs & Co.*
    254 F.R.D. 168 (S.D.N.Y. 2008) ............................................................ 18

*Menkes v. Stolt-Nielsen S.A.*
    270 F.R.D. 80 (D. Conn. 2010) ............................................................... 25

*Moore v. Paine Webber, Inc.*
    306 F.3d 1247 (2d Cir. 2002) ................................................................ 22

*Nieves v. Cmty. Choice Health Plan*
    No. 08 CV 321 (VB) (PED), 2012 WL 857891, at *4 (S.D.N.Y. Feb. 24, 2012) ...... 11, 12

*Robidoux v. Celani*
    987 F.2d 931 (2d Cir. 1993) ............................................................. 17, 20

*Robinson v. Metro-North Commuter R.R.*
    267 F.3d 147 (2d Cir. 2001) ................................................................. 18

*Teachers' Ret. Sys. of La. v. ACLN Ltd.*
    No. 01 Civ. 11814 (LAP), 2004 WL 2997957, at *3 (S.D.N.Y. Dec. 27, 2004) ........ 17, 20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*
    396 F.3d 96 (2d Cir. 2005) ......................................................... 11, 12, 24

*Weinberger v. Kendrick*
    698 F.2d 61 (2d Cir. 1982) .................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**STATUTES, RULES AND REGULATINS**

15 U.S.C. § 78u-4(a)(7) ................................................................ 24

Federal Rules of Civil Procedure

    Rule 23 ................................................................ 4, 24, 25

    Rule 23(a) ................................................................ *passim*

    Rule 23(a)(3) ................................................................ 19

    Rule 23(a)(4) ................................................................ 20

    Rule 23(b) ................................................................ 16

    Rule 23(b)(3) ................................................................ *passim*

    Rule 23(g) ................................................................ 21

Securities Exchange Act of 1934

    Section 10(b) ................................................................ 5, 7, 19

    Section 20(a) ................................................................ *passim*

Lead Plaintiffs LaGrange Capital Partners, LP and LaGrange Capital Partners Offshore Fund, Ltd. (collectively, "Lead Plaintiffs"), on behalf of themselves and the Class, respectfully submit this memorandum of law in support of Lead Plaintiffs' motion for: (i) preliminary approval of the settlement of this securities class action (the "Action") as set forth in the Stipulation and Agreement of Settlement dated August 3, 2012 (the "Stipulation") entered between Lead Plaintiffs and Named Plaintiffs The Fire and Police Pension Association of Colorado and The San Antonio Fire and Police Pension Fund (the "Named Plaintiffs," and collectively with Lead Plaintiffs, "Plaintiffs"), and defendants Thomas W. Adams, Marty J. Rowland, Mary Mikkelson, (the "Tronox Individual Defendants"); Robert M. Wohleber, J. Michael Rauh, Luke R. Corbett, and Gregory F. Pilcher (the "Kerr-McGee Individual Defendants"); Kerr-McGee Corporation ("Kerr-McGee"); Anadarko Petroleum Corporation ("Anadarko"); and Ernst & Young LLP ("E&Y") (collectively, the "Defendants");[1] (ii) certification of the proposed Class and Plaintiffs as Class representatives and appointment of Lead Counsel as Class counsel solely for purposes of the Settlement; (iii) approval of the form and manner of giving notice of the proposed Settlement to Class Members; and (iv) scheduling a hearing on final approval of the Settlement and Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses.

## INTRODUCTION

Plaintiffs have reached an agreement with Defendants to settle this Action for a total of $37 million in cash – $35 million of which is for settlement of the claims against the Tronox

---

[1] The Stipulation is attached as Exhibit 1 to Lead Plaintiffs' Notice of Motion for (I) Preliminary Approval of Settlement, (II) Certification of the Class for Purposes of Settlement and (III) Approval of Notice to the Class.  Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Stipulation.

Individual Defendants, Kerr-McGee Individual Defendants, Kerr-McGee and Anadarko (the "Company Defendants") and $2 million of which is for settlement of the claims against E&Y. If approved by the Court, the Settlement will dismiss and release all claims asserted against Defendants in the Action and resolve the Action.

Lead Plaintiffs and Lead Counsel believe that the proposed Settlement represents an excellent result and is in the best interests of the Class. The Settlement provides the Class with a substantial and immediate monetary benefit in the form of cash payments totaling $37 million. This significant benefit to the Class must be considered in the context of the serious risks that further protracted and contested litigation might lead to no recovery, or to a smaller recovery, from Defendants in this Action. Lead Plaintiffs and Lead Counsel recognized that this Action presented a number of substantial risks in establishing the liability of Defendants, including challenges in establishing that Tronox had improperly recorded its reserves for the costs of environmental remediation and related tort claims in violation of Generally Accepted Accounting Principles, in establishing that the corporate defendants (Kerr-McGee and Anadarko) could be held responsible for the alleged misstatements, in proving that E&Y's audit reports were materially false and misleading, and in proving that the Defendants had acted with *scienter*. The Action also presented substantial risks relating to loss causation and establishing the amount of damages that could be attributed to the alleged misrepresentations. The risks of the litigation were increased because Tronox Incorporated ("Tronox") had filed for bankruptcy in January 2009 and, thus, could not be a potential source of recovery in the Action. In light of these risks, Lead Plaintiffs and Lead Counsel believe that the proposed $37 million Settlement is fair, reasonable and adequate, and in the best interests of the Class.

Moreover, the Settlement was reached only after the parties had engaged in substantial litigation and intense settlement discussions, including a mediation presided over by former Judge, the Honorable Daniel Weinstein (Ret.), and at a time when all the Parties understood the strengths and weaknesses of their respective positions in the litigation.  Plaintiffs' Counsel conducted a thorough investigation of the claims in the Action, which included a review of publicly available information; interviews with confidential witnesses; consultation with experts; and legal analysis of the claims against Defendants and their potential defenses.  Plaintiffs became further informed about the strengths and weaknesses of the case through the litigation of two rounds of motions to dismiss by Defendants and briefing of the motion for class certification.  The Parties also engaged in substantial discovery, including the review of tens of millions of pages of documents, before an agreement-in-principle to settle was reached.  Finally, the mediation statements and presentations provided Plaintiffs with a further basis upon which to assess the relative strengths and weaknesses of their position and Defendants' positions in the Action.

Plaintiffs, who are sophisticated investors of the type favored by Congress when passing the Private Securities Litigation Reform Act of 1995 ("PSLRA"), have closely supervised this litigation and have recommend that the Settlement be approved.  Further, Plaintiffs' Counsel, which have extensive experience in prosecuting securities class actions and other class actions, have concluded that the Settlement is in the best interests of the Class.

At the final settlement hearing ("Settlement Hearing"), the Court will have before it more detailed motion papers submitted in support of the proposed Settlement, and will be asked to make a determination as to whether the Settlement is fair, reasonable and adequate.  At this time, Lead Plaintiffs request only that the Court grant preliminary approval of the Settlement so that

notice may be provided to the Class.  Specifically, Lead Plaintiffs request that this Court enter the [Proposed] Order Preliminarily Approving Proposed Settlement and Providing for Notice (the "Preliminary Approval Order"), attached as Exhibit A to the Stipulation, which, among other things, will:

(i)    Preliminarily approve the Settlement on the terms set forth in the Stipulation;

(ii)   Approve the form and content of the Notice, Claim Form and Summary Notice attached as Exhibits 1, 2 and 3 to the Preliminary Approval Order;

(iii)  Find that the procedures established for distribution of the Notice and Claim Form and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and Section 21D(a)(7) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(7), as amended by the PSLRA; and

(iv)   Schedule the Settlement Hearing and set out a schedule and procedures for: disseminating the Notice and Claim Form and publishing the Summary Notice; requesting exclusion from the Class; objecting to the Settlement, the proposed Plan of Allocation, and/or Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses; and submitting papers in support of final approval of the Settlement.

Lead Plaintiffs also request certification of the Class, certification of Plaintiffs as Class representatives and appointment of Lead Counsel as counsel for the Class, for purposes of the Settlement only, under Rule 23 of the Federal Rules of Civil Procedure.

## BACKGROUND OF THE LITIGATION

Beginning in July 2009, three securities class action complaints were filed in this Court alleging that Tronox and certain of its officers had made false and misleading statements concerning Tronox's financial condition, including the extent of its liabilities for environmental remediation obligations and related tort claims.  In October 2009, the Court ordered that these cases be consolidated and recaptioned as *In re Tronox, Inc., Securities Litigation*, Case No. 09-

CV-06220-SAS; appointed LaGrange Capital Partners, LP and LaGrange Capital Partners Offshore Fund, Ltd. as Lead Plaintiffs for the Action; and approved Lead Plaintiffs' selection of Gold Bennett Cera & Sidener LLP as Lead Counsel.[2]

Plaintiffs' Counsel conducted a thorough factual and legal investigation of the claims in the Action. This investigation included a review of Securities and Exchange Commission filings by Tronox, Kerr-McGee and Anadarko, securities analyst reports regarding Tronox and Kerr-McGee, investor presentations, news articles concerning Tronox and other public data; a review of information from Tronox's Bankruptcy Case; interviews with former employees of Tronox, Kerr-McGee and Anadarko; consultation with experts in areas such as accounting, market efficiency, loss causation and damages; and legal analysis of the claims against Defendants and their potential defenses.

On November 24, 2009, Lead Plaintiffs filed the Consolidated Class Action Complaint For Violations of the Federal Securities Laws (the "Complaint"). The Complaint asserted claims on behalf of investors who purchased Tronox Common Stock and/or 9½ percent senior notes due 2012 ("Tronox Bonds") during the period from November 21, 2005 through and including January 12, 2009 (the "Class Period"), and alleged that Defendants issued materially false and misleading statements regarding the financial condition of Tronox in violation of Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder. The Complaint asserted claims under Section 10(b) against all Defendants, and asserted "control person" claims under

---

[2] As reflected in the Court's October 13, 2009 Opinion and Order, Plaintiffs' Counsel agreed that if the LaGrange entities, who had purchased Tronox Common Stock, were appointed to serve as Lead Plaintiffs, Named Plaintiffs The Fire and Police Pension Association of Colorado and The San Antonio Fire and Police Pension Fund, who had purchased Tronox Bonds, would serve as Named Plaintiffs on behalf of bondholder claimants and would work with Lead Plaintiffs. *See In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 345 n.51 (S.D.N.Y. 2009).

Section 20(a) against all Defendants except E&Y.  Plaintiffs' claims were based on allegations that Tronox was essentially insolvent at the time of its initial public offering ("IPO") on November 21, 2005 and throughout the Class Period, materially understated its reserves for environmental liabilities and related tort claims throughout the Class Period and that such liabilities were not fully and adequately disclosed until Tronox filed for Chapter 11 bankruptcy protection on January 12, 2009.  The Complaint further alleged that certain of the Defendants controlled Tronox as of its IPO and, through such control, dictated during the Class Period the recording of materially deficient reserves for environmental liabilities and Tronox's disclosures about reserves and, therefore, faced liability for the securities law violations alleged.[3]  The Complaint further alleged that the prices of Tronox Common Stock and Tronox Bonds (the "Tronox Securities") were artificially inflated as a result of Defendants' allegedly false and misleading statements and omissions, and declined when the truth as to the extent of Tronox's environmental remediation obligations and related tort claims was slowly revealed.

On January 11, 2010, Kerr-McGee and Anadarko moved to dismiss the claims asserted against them.  The Tronox Individual Defendants and Kerr-McGee Individual Defendants moved to dismiss the Complaint on January 19, 2010; and E&Y did the same on February 8, 2010.

In June 2010, while the motions to dismiss were pending, the Parties voluntarily engaged in a mediation with a professional mediator in an effort to explore a potential resolution of the Action.  However, the Parties were unable to reach a settlement at that time and the litigation continued to be aggressively prosecuted by the Plaintiffs.

---

[3]  Because Tronox's voluntary bankruptcy petition automatically stayed all actions against it, Lead Plaintiffs did not name Tronox as a defendant in the Action.

On June 28, 2010, the Court issued an Opinion and Order denying in part and granting in part Defendants' motion to dismiss.  *See In re Tronox, Inc. Sec. Litig.*, No. 09 Civ. 6220 (SAS), 2010 WL 2835545 (S.D.N.Y. June 28, 2010).  The Court denied the motions to dismiss filed by the Tronox Individual Defendants and E&Y in their entirety.  Plaintiffs' claims against Kerr-McGee, Anadarko and the Kerr-McGee Individual Defendants for violations of Section 20(a) relating to misstatements after March 31, 2006 were dismissed without prejudice; Plaintiffs were granted leave to replead their claims that Kerr-McGee and/or the Kerr-McGee Individual Defendants controlled Tronox after March 31, 2006 (when Tronox was spun off from Kerr-McGee) and that Anadarko was liable as a successor-in-interest to Kerr-McGee.  Plaintiffs' claims against Defendants Corbett, Pilcher, Rauh, Kerr-McGee and Anadarko for violations of Section 10(b) were dismissed with prejudice based on the finding that these defendants made no actionable misstatements to the market regarding Tronox.

On July 28, 2010, the Tronox Individual Defendants and E&Y filed their Answers to the Complaint.

On July 30, 2010, Lead Plaintiffs filed their First Amended Consolidated Class Action Complaint (the "First Amended Complaint").  Like the Complaint, the First Amended Complaint asserted claims against the Defendants under Section 10(b) of the Exchange Act and Rule 10b-5, and under Section 20(a) of the Exchange Act.  The First Amended Complaint alleged claims substantially similar to those in the Complaint but added substantial factual detail in support of the claims asserted for violations of Sections 10(b) and 20(a) during the Class Period.

On August 27, 2010, Kerr-McGee and Wohleber moved to dismiss Plaintiffs' Section 20(a) claim for the period after March 31, 2006; Corbett and Pilcher moved to dismiss the claims against them in their entirety; and Anadarko moved to dismiss the claim against it.

On November 18, 2010, Lead Plaintiffs filed a stipulation and agreed order in Bankruptcy Court that required Tronox to cooperate with Plaintiffs in preserving and providing access to records and witnesses relevant to the claims in this Action and provided that the automatic stay in bankruptcy "shall be modified to the extent necessary to permit the Lead Plaintiffs to prosecute the Securities Litigation against Tronox in the District Court" with any recovery limited to the extent of any available insurance.

On January 5, 2011, the Court denied Wohleber, Corbett and Pilcher's renewed motion to dismiss with respect to the period that pre-dates August 10, 2006; denied Anadarko's motion to dismiss Plaintiffs' Section 20(a) claim predicated on control person liability and *respondeat superior* liability; and denied Kerr-McGee's motion to dismiss.  The Court granted Anadarko's motion to dismiss Plaintiffs' Section 20(a) claim to the extent it was predicated on successor-in-interest liability and granted Corbett's motion to dismiss Plaintiffs' Section 20(a) claim with respect to the period after August 10, 2006.

On February 4, 2011, Kerr-McGee, Anadarko, and the Kerr-McGee Individual Defendants answered the First Amended Complaint.

Thereafter, the Parties engaged in extensive discovery, which included significant document productions by the Plaintiffs, as well as the production of terabytes of data produced by Defendants, Tronox and other non-parties (equivalent to tens of millions of pages of documents), which were reviewed and analyzed by Plaintiffs' Counsel and their experts.

On August 9, 2011, Lead Plaintiffs moved for class certification.  In connection with the class certification motion, Defendants deposed a representative from each of Lead Plaintiffs, Named Plaintiffs and Named Plaintiffs' investment advisors.  The Parties also engaged and consulted with experts who prepared detailed expert reports, and the Parties deposed each other's

expert witnesses.  On September 16, 2011, Defendants filed their opposition to Lead Plaintiffs' motion for class certification.

On October 26, 2011, Lead Plaintiffs' motion for class certification was denied without prejudice and with leave to renew, because the Court requested the Parties to re-submit their respective submissions in support of and in opposition to class certification pursuant to a revised Order governing page limitations and timing.  No decision on the merits of the motion was made at that time.  On November 11, 2011, Lead Plaintiffs filed their renewed motion for class certification; Defendants opposed it on November 23, 2011.  On December 7, 2011, Lead Plaintiffs filed a reply memorandum in further support of class certification.

On March 2, 2012, the Parties entered into a stipulated agreement to extend certain discovery deadlines, pursuant to which and with the consent of the Court, Lead Plaintiffs agreed to withdraw their motion for class certification (without prejudice to re-submit as previously filed) in order to allow the parties additional time to conduct discovery and to explore the possibility of reaching a mediated settlement of the Action.

In March 2012, the Parties, with the consent of the Court, agreed to participate in a mediation conducted by the Hon. Daniel Weinstein (Ret.) of JAMS.  The Parties submitted mediation statements to Judge Weinstein and conducted extensive, protracted negotiations through him, both in person and telephonically.  Plaintiffs engaged in these discussions with a view to exploring the possibility of resolution of the issues in dispute consistent with achieving the best relief possible in the interests of the Class.  Thereafter, the Parties (with the exception of E&Y) reached an agreement in principle to settle in March 2012 and signed a term sheet on May 31, 2012.

Lead Plaintiffs filed their second renewed motion for class certification on May 17, 2012. As of that date, E&Y was the only defendant with which Plaintiffs had not reached an agreement in principle to settle. Plaintiffs continued to conduct settlement negotiations with E&Y while the motion was pending. Plaintiffs and E&Y had several settlement discussions and arm's-length negotiations with respect to a compromise and settlement of claims against E&Y, and reached an agreement in principle to settle in late May 2012.

As noted above, prior to reaching each of the agreements-in-principle to settle, Plaintiffs, through Plaintiffs' Counsel, had conducted an extensive investigation of the facts and analysis of the applicable law; drafted multiple complaints based on their investigation; successfully opposed, in significant part, two rounds of Defendants' motions to dismiss; engaged in significant discovery and document production; fully briefed the motion for class certification; and retained and consulted with experts. Additionally, the multiple mediation statements prepared and exchanged as well as the Parties' respective presentations concerning liability and damages at mediation also provided Plaintiffs with a detailed basis upon which to assess the strengths and weaknesses of the Class's claims against Defendants.

In light of the substantial benefits achieved (the payment of $37,000,000 for the benefit of the Class), the cost and risks of continuing the litigation against Defendants through trial and appeals, and the fact that the proposed Settlement is the result of arm's-length negotiations assisted by an experienced mediator and has been approved by the Court-appointed Lead Plaintiffs, it is respectfully submitted that the Settlement warrants the Court's preliminary approval so that notice can be provided to the Class. It is further submitted that the Court should, for purposes of the Settlement only, certify the Class, certify Plaintiffs as Class representatives and appoint Lead Counsel as Class counsel.

# ARGUMENT

## I.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The settlement of complex class action litigation is favored by public policy and strongly encouraged by the courts. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context.  The compromise of complex litigation is encouraged by the courts and favored by public policy.") (internal quotation marks and citation omitted); *In re IMAX Sec. Litig.*, No. 06 Civ. 6128 (NRB), 2012 WL 2359653, at *9 (S.D.N.Y. June 20, 2012) ("we emphasize that there is a 'strong judicial policy in favor of settlements, particularly in the class action context'"); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").

When reviewing a proposed settlement in the context of preliminary approval, courts make a preliminary determination regarding the fairness, reasonableness, and adequacy of the settlement terms prior to allowing notice to be sent to the potential class.  At the preliminary approval stage, the Court's function is "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Prudential*, 163 F.R.D. at 209.  "Preliminary approval of a class action settlement . . . is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *Nieves v. Cmty. Choice Health Plan*, No. 08 CV 321 (VB) (PED), 2012 WL 857891, at *4 (S.D.N.Y. Feb. 24, 2012) (internal quotation marks and citation omitted).

In making this preliminary determination, "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)); *accord Nieves*, 2012 WL 857891, at *4; *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y. 2009).

Lead Plaintiffs now request only that the Court take the first step in the settlement approval process and grant preliminary approval of the Settlement. As summarized below, and as will be detailed further in a subsequent motion for final approval of the Settlement, the proposed Settlement is well "within the range of possible approval." *Initial Pub. Offering*, 243 F.R.D. at 87.

### A.      The Settlement Is The Result Of Good Faith, Arm's-Length Negotiations By Well-Informed And Experienced Counsel

A proposed settlement is entitled to a strong "presumption of fairness" when it is the product of "arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart*, 396 F.3d at 116; *see also In re Sadia S.A. Sec. Litig.*, No. 08 Civ. 9528 (SAS), 2011 WL 6825235, at *1 (S.D.N.Y. Dec. 28, 2011) (same); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *13 (S.D.N.Y. Nov. 8, 2010) (same).

Here, the Settlement was achieved only after intense and prolonged arm's-length negotiations and substantial discovery. The Parties' settlement efforts included an unsuccessful mediation in June 2010, which was undertaken while the motions to dismiss were pending. After resolution of the motions to dismiss and substantial discovery, the Parties renewed their

settlement efforts with the assistance of Judge Weinstein, a highly experienced mediator of complex class actions.  The mediation with Judge Weinstein, which included the submission of mediation statements, extensive negotiations and presentations, both in person and by telephone, led to an agreement in principle to settle with all Defendants except E&Y in March 2012. Plaintiffs and E&Y could not reach an agreement in March 2012 but continued their negotiations and ultimately reached an agreement in principle to settle in late May 2012.

The prolonged negotiations and the involvement of an experienced mediator like Judge Weinstein further support the presumption of fairness and the conclusion that the Settlement achieved was free of collusion.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *Flag Telecom*, 2010 WL 4537550, at *14 ("The presumption in favor of the negotiated settlement in this case is strengthened by the fact that settlement was reached in an extended mediation supervised by Judge Weinstein."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008) ("Judge Weinstein's role in the settlement negotiations strongly supports a finding that they were conducted at arm's-length and without collusion.").

Moreover, as noted above, the Parties and their counsel were well-informed about the strengths and weaknesses of the case prior to reaching the agreements to settle.

### B.   The Substantial Benefits For The Class, Weighed Against Litigation Risks, Support Preliminary Approval

The proposed Settlement creates a total settlement amount of $37 million in cash.  As will be explained in greater detail in advance of the Settlement Hearing, this recovery provides a substantial benefit to the Class in light of the risks posed by continued litigation.

While Plaintiffs believe that the claims asserted against Defendants are meritorious, they recognize that this Action presented a number of substantial risks with respect to establishing liability and damages. First, Plaintiffs faced significant hurdles in establishing that statements made by Tronox and its officers were materially false and misleading and made with *scienter*, and that Tronox had improperly recorded its reserves for the costs of environmental remediation and related tort claims in violation of Generally Accepted Accounting Principles, in light of arguments that Defendants had applied the proper methodology and that Tronox's reserves were adequate and corroborated by independent third parties.  Second, even if Plaintiffs established that Defendants had made materially misleading statements or omissions, they faced additional challenges in establishing that Kerr-McGee, the Kerr-McGee Individual Defendants and Anadarko were responsible as control persons, for the alleged misstatements and omissions under the federal securities law.  Plaintiffs also clearly faced substantial challenges in proving that the Defendants had acted with *scienter*, especially when considering the difficulty of showing that reserve estimates were not within the range of appropriate judgments.  *E.g.*, *Fait v. Regions Financial Corp.,* 655 F.3d 105, 113 (2d Cir. 2011).  Most significantly, Plaintiffs faced considerable challenges in establishing loss causation for each of the stock and bond drops and in determining the amount of damages that could be attributed to the alleged misrepresentations. Similarly, there were significant challenges to establishing E&Y's liability because Plaintiffs would have had to prove not only that that E&Y's audit reports were false but that the misrepresentations were intentional or reckless.  Finally, the risks of recovery on any judgment were also a factor here because Tronox had filed for bankruptcy in January 2009 and was not available as a potential source of recovery in the Action and the insurance coverage of the Tronox Individual Defendants and the Kerr-McGee Individual Defendants were wasting assets

that could have been substantially reduced or depleted if the Action had proceeded to trial. When viewed in the context of these significant litigation risks and the uncertainties involved with any litigation, the substantial payment of $37,000,000 makes the Settlement an excellent result for the Class.

The Settlement was negotiated at arm's-length, by counsel who are experienced in complex securities litigation and who were acting in an informed manner.  In addition to conducting an extensive pre-filing investigation, and detailed briefing in opposition to Defendants' motions to dismiss, Plaintiffs also consulted with experts on, among other things, accounting, market efficiency, damages and loss causation, and had the benefit of mediation statements and presentations by Defendants setting forth their arguments on liability and damages.  As a result, Plaintiffs and Plaintiffs' Counsel had an adequate basis for assessing the strength of the Class's claims and Defendants' defenses when they entered into the Settlement.

## II. CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE

In granting preliminary settlement approval, the Court should also certify the Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Class, which has been stipulated to by the Parties, consists of:

> all persons or entities who purchased or otherwise acquired shares of Tronox Class A and/or Class B common stock ("Tronox Common Stock") and/or 9½% senior notes due 2012 ("Tronox Bonds") (collectively "Tronox Securities") during the period from November 21, 2005 through and including January 12, 2009 and who were damaged thereby

Stipulation ¶ 1(l).  In addition, the following persons and entities are excluded from the Class: (i) Defendants and Tronox; (ii) the parents, successors, subsidiaries, affiliates and assigns of any Defendant or of Tronox; (iii) members of the Immediate Family of each of the Individual Defendants; (iv) any person who was a partner of E&Y or an officer or director of Tronox, Kerr-

McGee or Anadarko, during the Class Period; and (v) any firm, trust, corporation, or other entity in which any of the Defendants has a controlling interest or had a controlling interest during the Class Period.  Also excluded from the Class are any persons or entities who exclude themselves by filing a timely request for exclusion in accordance with the requirements set forth in the Notice.  *See id.* ¶ 1(l).[4]

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement.  *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009).  Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants."  *In re Giant Interactive Grp., Inc. Sec. Litig.*, No. 07 Civ. 10588 (PAE), 2011 WL 5244707, at *3 (S.D.N.Y. Nov. 2, 2011) (quoting *Prudential*, 163 F.R.D. at 205).

A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b).  *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006).  Nevertheless, the manageability concerns of Rule 23(b)(3) are not at issue for a settlement class.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested").

---

[4]  The Court dismissed the claims of purchasers of Tronox common stock in the initial public offering (*see In re Tronox, Inc. Sec. Litig.*, 2010 WL 2835545, at *11) on the basis that they were not entitled to the fraud-on-the-market presumption of reliance.  The Court did not address whether such purchasers were entitled to the presumption of reliance set forth in *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-54 (1972) ("*Affiliated Ute*"), on which Plaintiffs subsequently relied, in part, in moving for class certification.  For purposes of the Settlement, the Parties have stipulated to their inclusion in the Class.

As demonstrated below, certification of the Class for settlement purposes is appropriate here because the proposed Class satisfies all the requirements of Rule 23(a) and Rule 23(b)(3).

**A.    The Class Satisfies The Requirements Of Rule 23(a)**

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

**1.    The Class Members Are Too Numerous To Be Joined**

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a). "Impracticable does not mean impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), but "only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244-45 (2d Cir. 2007). Numerosity is presumed when a class consists of forty members or more. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). "In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. July 20, 2010) (citation omitted); *see also Teachers' Ret. Sys. of La. v. ACLN Ltd.*, No. 01 Civ. 11814 (LAP), 2004 WL 2997957, at *3 (S.D.N.Y. Dec. 27, 2004) ("Plaintiffs are not obligated to prove the exact class size to satisfy numerosity . . . the

numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." (citations omitted)).

Here, the Class easily satisfies the numerosity requirement. The Class is comprised of purchasers of Tronox Common Stock and Tronox Bonds during a period of over three years. There were approximately 17.5 million shares of Tronox Class A common stock and 22.9 million shares of Tronox Class B common stock outstanding during the Class Period, with an average weekly trading volume of over 1 million shares for each class of Tronox Common Stock. *See* Declaration of Tavy Ronen, Ph.D. (ECF No. 165) ("Ronen Decl.") at ¶¶ 2 n.2, 8, and Ex. 4. There was also $350 million in face value of Tronox Bonds outstanding during the Class Period with more than 100 identified bondholders. *See* Ronen Decl. ¶ 70, Ex. 20. Although the precise number of Class Members cannot be identified with specificity at this time, it is likely to be at least in the thousands. Thus, the Class is sufficiently numerous that joinder of all members would be impracticable and Rule 23(a)(1) is satisfied. *See Consol. Rail Corp.*, 47 F.3d at 483; *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 175 (S.D.N.Y. 2008) (class of shareholders numbering in hundreds or thousands satisfied the numerosity requirement).

### 2.    There Are Common Questions Of Law And Fact

Rule 23(a)(2) requires the existence of at least one question of law or fact common to the class. *See Central States*, 504 F.3d at 245; *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001). Securities fraud cases like this one easily meet the commonality requirement, which is satisfied where it is alleged that "putative class members have been injured by similar material misrepresentations and omissions." *In re Pfizer Inc. Sec. Litig.*, No. 04 Civ. 9866 (LTS)(HBP), 2012 WL 1059671, at *3 (S.D.N.Y. Mar. 29, 2012); *see In re Globalstar Sec. Litig.*, No. 01 Civ 1748 (PKC), 2004 WL 2754674, at *4 (S.D.N.Y. Dec. 1, 2004) ("Common

questions of law and fact in this action include whether certain statements were false and misleading, whether those statements violated the federal securities laws, whether those statements were knowingly and recklessly issued, and ensuing causation issues."); *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) ("Where the facts as alleged show that Defendants' course of conduct concealed material information from an entire putative class, the commonality requirement is met.").

Plaintiffs have asserted claims against Defendants under Sections 10(b) and 20(a) of the Exchange Act.  These claims present many questions of law and fact which are common to all Class Members, including:

- whether Defendants violated the federal securities laws;

- whether Defendants directly or indirectly participated in and pursued the allegedly fraudulent plan and course of conduct alleged in the First Amended Complaint;

- whether filings and statements made by Defendants and/or Tronox during the Class Period omitted or misrepresented material facts;

- whether Defendants acted with *scienter*;

- whether and to what extent the price of Tronox Securities was artificially inflated during the Class Period due to the alleged omissions and/or misstatements; and

- whether the members of the Class sustained damages as a result of Defendants' alleged misconduct and, if so, the proper measure of damages.

*See* First Amended Complaint ¶ 72.  Because these questions of law and fact are common to all members of the Class, the commonality requirement of Rule 23(a)(2) is easily met.

### 3.    Plaintiffs' Claims Are Typical Of Those Of The Class

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class.  Fed. R. Civ. P. 23(a)(3).  Typicality is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Central States*, 504 F.3d at 245; *accord*

*Pfizer*, 2012 WL 1059671, at *4; *Sadia*, 269 F.R.D. at 304-05.  "Typical" does not mean "identical."  *See Marsh & McLennan*, 2009 WL 5178546, at *10.  The focus of the typicality inquiry is not the plaintiff's behavior, but rather the defendants' actions.  *See ACLN*, 2004 WL 2997957, at *4.  The critical question is whether the proposed class representatives and the class can point to a "common course of conduct" by defendants to support a claim for relief.  Accordingly, "[f]actual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct."  *Marsh & McLennan*, 2009 WL 5178546, at *10; *see also Robidoux*, 987 F.2d at 936-37 ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.").

Here, the injuries to Plaintiffs and the other members of the Class are unquestionably attributable to the same alleged course of conduct by Defendants, and liability for this conduct is predicated on the same legal theories.  Lead Plaintiffs and Named Plaintiffs allege that they, like the rest of the Class, paid artificially-inflated prices for Tronox Common Stock and/or Tronox Bonds during the Class Period as a result of materially misleading public statements that the Company Defendants made or caused Tronox to make or that E&Y made.  Plaintiffs' claims and the claims of absent Class Members are based on the same theories and would be proven by the same evidence.  Accordingly, the Rule 23(a)(3) typicality requirement is satisfied.

### 4. Plaintiffs Will Fairly And Adequately Protect The Interests Of The Class

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Court must measure the adequacy of

representation by two standards: (1) whether the claims of the proposed class representatives conflict with those of the class; and (2) whether their counsel are qualified, experienced, and generally able to conduct the litigation.  *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Sadia*, 269 F.R.D. at 305; *Marsh & McLennan*, 2009 WL 5178546, at *10.

Plaintiffs here are sophisticated institutional investors with substantial financial stakes in the litigation and they have and will continue to represent the interest of the Class fairly and adequately.  There is no antagonism or conflict of interest between Plaintiffs and the proposed Class.  Plaintiffs and the other members of the Class share the common objective of maximizing their recovery from Defendants. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members").  In addition, Lead Counsel has extensive experience and expertise in complex securities litigation and class action proceedings throughout the United States.  Lead Counsel is well qualified and able to conduct this litigation, as the Court recognized when approving its appointment as lead counsel for the putative class under the PSLRA.  Therefore, Rule 23(a)(4) is satisfied.[5]

### B.    The Class Satisfies The Requirements Of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently

---

[5]   Lead Counsel has and will continue to fairly and adequately represent the interests of the Class.  Accordingly, Lead Counsel should be appointed as counsel for the Class under Rule 23(g).

adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The proposed Class satisfies these requirements.

<strong>1.</strong>    <strong><u>Common Legal And Factual Questions Predominate</u></strong>

"Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Marsh & McLennan*, 2009 WL 5178546, at *11 (quoting *Moore v. Paine Webber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).  Common issues will predominate where each class member is alleged to have suffered the same kind of harm pursuant to the same legal theory arising out of the same alleged course of conduct, and the only individualized questions concern the amount of damages.  *See Marsh & McLennan*, 2009 WL 5178546, at *11; *Initial Pub. Offering*, 243 F.R.D. at 92; *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 240 (S.D.N.Y. 2006) ("In determining whether common questions predominate, a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class.").  As the Supreme Court has noted, predominance is a test "readily met" in cases alleging securities fraud.  *Amchem*, 521 U.S. at 625.

Here, the same alleged course of conduct by Defendants forms the basis of all Class Members' claims.  There are numerous common issues relating to Defendants' liability which predominate over any individualized issues.  The predominance requirement of Rule 23(b)(3) is therefore satisfied.

<strong>2.</strong>    <strong><u>A Class Action Is Superior To Other Methods Of Adjudication</u></strong>

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation:  "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the

extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  *See* Fed. R. Civ. P. 23(b)(3).

Considering these factors, this consolidated class action is clearly "superior to other available methods for fairly and efficiently adjudicating" the federal securities law claims of the large number of purchasers of Tronox Securities during the Class Period.  Indeed, courts have concluded that the class action device in securities cases is usually the superior method by which to redress injuries to a large number of individual plaintiffs in light of the large and geographically dispersed nature of shareholder classes, the inefficiency of multiple lawsuits and the size of individual recoveries in comparison to the costs of litigations.  *See, e.g., Marsh & McLennan*, 2009 WL 5178546, at *12 (the "class action is uniquely suited to resolving securities claims," because "the prohibitive cost of instituting individual actions" in such cases gives class members "limited interest in individually controlling the prosecution or defense of separate actions"); *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 139 (S.D.N.Y. 2008) ("as a general rule, securities fraud cases 'easily satisfy the superiority requirement [as] [m]ost violations of the federal securities laws . . . inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible'").

Here, the complexity of the claims against Defendants and the high cost of individualized litigation make it unlikely that the vast majority of Class Members would be able to obtain relief without class certification.  Moreover, any potential difficulties of managing the class action in further litigation and at trial need not be considered here because the parties seek to certify the

Class solely for the purposes of settlement.  Accordingly, the requirements of Rule 23(b)(3) are satisfied.

## III.    NOTICE TO THE CLASS SHOULD BE APPROVED

As outlined in the Preliminary Approval Order, Lead Counsel will notify Class Members of the Settlement by mailing the Notice and Claim Form to all Class Members who can be identified with reasonable effort.  The Notice will advise Class Members of (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses.  The Notice will also provide specifics on the date, time and place of the Settlement Hearing and set forth the procedures, as well as deadlines, for opting out of the Class, for objecting to the Settlement, the proposed Plan of Allocation and/or the motion for attorneys' fees and reimbursement of litigation expenses, and for submitting a Claim Form.  The proposed Preliminary Approval Order also requires Lead Counsel to cause the Summary Notice to be published in *Investor's Business Daily* and to be transmitted over *PR Newswire* within ten (10) business days of the mailing of the Notice.  Lead Counsel will also cause a copy of the Notice and Claim Form to be readily available on the website of the Claims Administrator.

The form and manner of providing notice to the Class satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7).  The Notice and Summary Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement[s] and of the options that are open to them in connection with the proceedings" *Wal-Mart*, 396 F.3d at 114.  The manner of providing notice, which includes individual notice by first-class mail to all Class Members who can be reasonably identified, supplemented by additional publication and internet notice, represents the best notice practicable under the circumstances and satisfies the

requirements of due process and Rule 23.  *See Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 105-06 (D. Conn. 2010); *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008).

## CONCLUSION

For all the foregoing reasons, Lead Plaintiffs respectfully request that the Court (i) preliminarily approve the proposed Settlement as within the range of fairness, reasonableness and adequacy; (ii) certify the Class, certify Plaintiffs as Class representatives and appoint Lead Counsel as Class counsel for purposes of the Settlement only; (iii) approve the proposed form and manner of notice to Class Members; and (iv) schedule a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.   The proposed Preliminary Approval Order is attached to Notice of Motion as Exhibit 2.

Dated:  August 3, 2012                               Respectfully submitted,

**GOLD BENNETT CERA & SIDENER LLP**

By: /s Solomon B. Cera_____
Solomon B. Cera
Thomas C. Bright
595 Market Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 777-2230
Facsimile: (415) 777-5189

*Lead Counsel and Attorneys for Lead Plaintiffs*

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
Hannah G. Ross
Laura H. Gundersheim
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

*Attorneys for Named Plaintiffs*

#126186                                    25

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users.

_____/s/Solomon B. Cera_____
Solomon B. Cera
