**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TRONOX, INC.<br>SECURITIES LITIGATION | ) Civil Action No. 09-CV-06220-SAS<br>)<br>)<br>) Electronically Filed<br>) |
| THIS DOCUMENT RELATES TO<br>ALL CLASS ACTIONS | )<br>)<br>)<br>) |

**CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF
APPLICATION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT
OF LITIGATION EXPENSES AND CLASS REPRESENTATIVES'
REQUEST FOR REIMBURSEMENT OF COSTS AND EXPENSES**

#126425

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

I.     PRELIMINARY STATEMENT ....................................................... 1

II.    PLAINTIFFS' COUNSEL'S LITIGATION EFFORTS .................................. 4

III.   ARGUMENT ....................................................................................... 7

    A.   Plaintiffs' Counsel are Entitled to an Award of Attorneys' Fees from the Common Fund Recovered for the Class ............................................. 7

    B.   The Court Should Award a Reasonable Percentage of the Common Fund ........... 7

    C.   The *Goldberger* Factors Confirm the Reasonableness of the Fee Request ........... 9

        1.   The Time and Labor Expended by Counsel ................................ 9

            a.   The Labor Dedicated By Plaintiffs' Counsel Supports the Fee Request ......................................................................... 9

            b.   Application of a Lodestar Cross-Check Supports Class Counsel's Fee Request ................................................ 10

        2.   The Risk of the Litigation ....................................................... 12

            a.   Risk of Establishing in Liability ................................... 13

            b.   Risk of Establishing Loss Causation and Damages ..................... 15

            c.   The Contingent Nature of Plaintiffs' Counsel's Representation Supports the Requested Fee ..................................... 17

        3.   The Magnitude and Complexity of the Litigation Support the Requested Fee ................................................................. 19

        4.   The Requested Fee is Reasonable in Relation to the Settlement .............. 19

        5.   Plaintiffs' Counsel Provided the Class With Quality Legal Services That Generated an Excellent Benefit for the Class ................................... 21

        6.   Public Policy Considerations Support the Requested Fee ..................... 22

    D.   The Class's Reaction to Date to the Fee Request Supports the Conclusion that the Requested Fee is Fair and Reasonable ..................................... 22

IV.   PLAINTIFFS' COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND NECESSARY TO THE PROSECUTION OF THIS ACTION ..................................... 23

V.    CLASS REPRESENTATIVES ARE ENTITLED TO AWARDS REIMBURSING THEIR COSTS AND EXPENSES ........................................................ 24

VI.   CONCLUSION ..................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Blum v. Stenson*
   465 U.S. 886 (1984) ........................................................................................... 12

*Board of Trustees of the AFTRA Retirement Fund v. JP Morgan Chase Bank, N.A.*
   No. 09-Civ-686 (SAS), 2012 WL 2064907 (S.D.N.Y. June 7, 2012) ................... 8, 11, 20

*Boeing Co. v. Van Gemert*
   444 U.S. 472 (1980) ........................................................................................... 7

*Cruz v. Local Union No. 3 of the IBEW*
   34 F.3d 1148 (2d Cir. 1994) ............................................................................. 12

*D'Amato v. Deutsche Bank*
   236 F.3d 78 (2d Cir. 2001) ............................................................................... 13

*Denney v. Deutsche Bank AG*
   443 F.3d 253 (2d Cir. 2006) ............................................................................. 19

*Denney v. Jenkens & Gilchrist*
   230 F.R.D. 317 (S.D.N.Y. 2005) ...................................................................... 19

*Detroit v. Grinnell Corp.*
   495 F.2d 488 (2d Cir. 1974) ......................................................................... 13, 17

*Ernst & Ernst v. Hochfelder*
   425 U.S. 185 (1976) ......................................................................................... 14

*Fait v. Regions Financial Corp.*
   655 F.3d 105 (2d Cir. 2011) ............................................................................. 14

*Fogarazzo v. Lehman Bros., Inc.*
   No. 03-civ-5194 (SAS), 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ................... 19, 20

*Freedman v. Value Health, Inc.*
   34 Fed. Appx. 408 (2d Cir. 2002) .................................................................... 18

*Goldberger v. Integrated Res.*
   209 F.3d 43 (2d Cir. 2000) ........................................................................ *passim*

*Hicks v. Morgan Stanley & Co.*
   No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890
   (S.D.N.Y. Oct. 19, 2005) ............................................................................... 7, 12

*Hicks v. Morgan Stanley*
   No. 01-civ-10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ................ 24

*In re Am. Int'l Group, Inc. Sec. Litig.*
   No. 04 Civ. 8141 (DAB), 2010 WL 5060697 (S.D.N.Y. Dec. 2, 2010) ................ 25

*In re Amaranth Natural Gas Commodities Litig.*
   No. 07 Civ. 6377 (SAS), 2012 WL 2149094 (S.D.N.Y. June 11, 2012) ............... 7, 20

*In re American Bank Note Holographics, Inc. Sec. Litig.*
   127 F. Supp. 2d 418 (S.D.N.Y. 2001) ............................................................. 17

## TABLE OF AUTHORITIES

*In re American Int'l Group Sec. Litig.*
No. 04 Civ. 8141 (DAB), 2010 WL 5060697 (S.D.N.Y. Dec. 2, 2010)..........................13

*In re AOL Time Warner Inc. Sec. & ERISA Litig.*
No. 02-civ-5575 (SWK), 2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006)..........14

*In re Austrian & German Bank Holocaust Litig.*
80 F. Supp. 2d 164 (S.D.N.Y. 2000)..................................................................................13

*In re BankAtlantic Bancorp, Inc.*
No. 07-cv-61542, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011)....................................18

*In re Brown Co. Sec. Litig.*
355 F. Supp. 574 (S.D.N.Y. 1973)....................................................................................21

*In re China Sunergy Sec. Litig.*
No. 07 Civ 7895 (DAB), 2011 U.S. Dist. LEXIS 53007
(S.D.N.Y. May 13, 2011).........................................................................................11, 16

*In re Comverse Tech., Inc., Sec. Litig.*
No. 06-cv-1825 (NGG)(RER), 2010 U.S. Dist. LEXIS 63342
(E.D.N.Y. June 23, 2010) .......................................................................................8, 11

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*
No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007).......12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*
No. 02-cv-3400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .............12, 22

*In re Giant Interactive Grp., Inc. Sec. Litig.*
279 F.R.D. 151 (S.D.N.Y. 2011) .....................................................................................20

*In re Global Crossing Sec. & ERISA Litig.*
225 F.R.D. 436 (S.D.N.Y. 2004) ...............................................................................21, 23

*In re Indep. Energy Holdings PLC Sec. Litig.*
Master File No. 00-civ-6689 (SAS), 2003 U.S. Dist. LEXIS 17090
(S.D.N.Y. Sept. 26, 2003)................................................................................................15

*In re JDS Uniphase Corp. Sec. Litig.*
No. 02-cv-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ..................18

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*
No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450 (S.D.N.Y. Jan. 31, 2007) .........17

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*
246 F.R.D. 156 (S.D.N.Y. 2007) ........................................................................8, 19, 23

*In re Monster Worldwide, Inc. Sec. Litig.*
No. 07-cv-2237 (JSR), 2008 U.S. Dist. LEXIS 122149 (S.D.N.Y. Nov. 25, 2008)........20

*In re Philip Servs. Corp. Sec. Litig.*
No. 98 Civ. 835 (AKH), 2007 WL 959299 (S.D.N.Y. March 28, 2007) ........................20

*In re Priceline.com, Inc. Sec. Litig.*
No. 3:00-CV-1884 (AVC), 2007 U.S. Dist. LEXIS 52538 (D. Conn. 2007)............20, 22

## <u>TABLE OF AUTHORITIES</u>

*In re Prudential Sec. Ltd. P'shps Litig.*
    985 F. Supp. 410 (S.D.N.Y. 1997).................................................. 11, 13, 17

*In re Rite Aid Corp. Sec. Litig.*
    396 F.3d 294 (3d Cir. 2005)................................................................ 23

*In re Sadia, S.A. Sec. Litig.*
    No. 08-Civ-9528 (SAS), 2011 WL 6825235 (S.D.N.Y. Dec. 28, 2011)..................... 8, 20

*In re Telik Inc. Sec. Litig.*
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)........................................................ 12

*In re Tronox, Inc. Sec. Litig.*
    262 F.R.D. 338 (S.D.N.Y. 2009) ............................................................ 1, 21

*In re Tronox, Inc. Sec. Litig.*
    769 F. Supp. 2d 202 (S.D.N.Y. 2011)........................................................ 5

*In re Tronox, Inc. Sec. Litig.*
    No. 09 Civ. 06220 (SAS), 2010 WL 2835545 (S.D.N.Y. June 10, 2010).................... 5

*In re Veeco Instruments Inc. Sec. Litig.*
    No. 05 MDL 01695 (CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ............... *passim*

*In re Warner Commc'ns Sec. Litig.*
    618 F. Supp. 735 (S.D.N.Y. 1985)........................................................... 16

*In re WorldCom, Inc. Sec. Litig.*
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)...................................................... 8, 22

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*
    487 F.2d 161 (3d Cir. 1973)................................................................. 10

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*
    540 F.2d 102 (3d Cir. 1976)................................................................. 11

*Maley v. Del Global Techs. Corp.*
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................... 7, 8, 22

*Missouri v. Jenkins*
    491 U.S. 274 (1989)....................................................................... 9, 10

*State Univs. Ret. Sys. of Ill. v. AstraZeneca PLC*
    334 Fed. Appx. 404 (2d Cir. 2009)........................................................... 18

*Steinberg v. Ericsson LM Tel. Co.*
    No. 07- cv-9615 (RPP), 2008 WL 5170640 (S.D.N.Y. Dec. 10, 2008........................... 18

*Teachers' Ret. Sys. of La. v. A.C.L.N, Ltd.*
    No. 01-cv-11814 (MP), 2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004)........... 13

*Wal-Mart Stores. Inc. v. Visa U.S.A. Inc.*
    396 F.3d 96 (2d Cir. 2005)................................................................. 8

## <u>TABLE OF AUTHORITIES</u>

**Statutes, Rules and Regulations**

11 U.S.C. § 362(a) ........................................................................................ 2

15 U.S.C. §78j(b) ......................................................................................... 14

15 U.S.C. §78u-4 ........................................................................................... 8

15 U.S.C. §78u-4(a)(6) .................................................................................. 8

15 U.S.C. 78u-4(a)(4) ................................................................................... 24

Securities Exchange Act of 1934
    Section 10(b) ...................................................................................... 14

**Other Authorities**

Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2011 Review and Analysis*, at 7 (Cornerstone Research 2012) .................................................. 17

H.R. Conf. Rep. No. 104-369 (1995) ............................................................ 24

Jordan Milev, Robert Patton, Svetlana Starykh & John Montgomery, *Recent Trends in Securities Class Action Litigation: 2011 Year-End Review*, at 24 (NERA 2011) ............................. 17

In connection with the Court's consideration of final approval of the Settlement in the above-captioned action (the "Action"), Court-appointed Class Counsel – Gold Bennett Cera & Sidener LLP ("Gold Bennett")[1] – hereby respectfully moves this Court on behalf of Plaintiffs' Counsel[2] for: (i) an award of attorneys' fees in the amount of twenty-five percent of the Settlement Fund and (ii) reimbursement of $1,627,360.10 in expenses incurred by Plaintiffs' Counsel in successfully prosecuting and resolving the claims asserted in this Action. The Class Representatives also respectfully move this Court for reimbursement of their costs and expenses.

## I.    PRELIMINARY STATEMENT

As described more fully in the accompanying Joint Declaration of Solomon B. Cera and Hannah G. Ross (the "Joint Decl."), the proposed Settlement of $37,000,000 in cash in consideration for a release of all claims against all Defendants is an excellent result for the Class. In addition to representing a significant percentage of the Class's potential recoverable damages, the Settlement is of further benefit to the Class in that it avoids the serious risks of continued litigation, including the uncertainties regarding the pending but unresolved class certification motion, as well as the outcome of the Parties' discovery efforts (which were ongoing at the time of the mediation leading to the Settlement) and the Lead Plaintiffs'[3] and Named Plaintiffs'[4]

---

[1]    *See In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 345 (S.D.N.Y. 2009); Order Preliminarily Approving Proposed Settlement and Providing for Notice, filed August 10, 2012 (ECF No. 188), ¶3 (hereafter "Preliminary Approval Order").

[2]    The term "Plaintiffs' Counsel" refers collectively to Class Counsel and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz"), together with Court-appointed Liaison Counsel, Cohen Milstein Sellers & Toll, PLLC ("Cohen Milstein"). Unless otherwise noted, capitalized terms used herein shall have the same meanings as reflected in the Stipulation and Agreement of Settlement dated August 3, 2012 (the "Stipulation") (ECF No. 186-1).

[3]    Lead Plaintiffs are LaGrange Capital Partners, LP and LaGrange Capital Partners Offshore Fund, Ltd., purchasers of Tronox common stock during the Class Period.

(collectively "Plaintiffs" or "Class Representatives") ability to successfully establish liability for each of the Defendants.  The Settlement also avoids the potential risks of summary judgment, including with regard to loss causation, and the difficulties of presenting Plaintiffs' damages model to a jury and ultimately proving the Class's full amount of damages at trial.  Furthermore, a significant problem for Plaintiffs in this case has been the January 2009 bankruptcy filing of the issuer, Tronox.  This precluded Plaintiffs from suing Tronox in this action (*see* 11 U.S.C. section 362(a)).  Nonetheless, Plaintiffs aggressively pursued their limited rights against Tronox in its bankruptcy case, and ultimately obtained a favorable agreement and related order of the Bankruptcy Court allowing Plaintiffs access to all relevant Tronox records, obtaining the cooperation of Tronox and certain important witnesses in the prosecution of this case, and preserving Plaintiffs' ability to access applicable insurance to satisfy their claims.

The recovery obtained in this case would not have been possible without the efforts of Plaintiffs' Counsel, who collectively devoted three years – and more than 17,000 professional and paraprofessional hours – to the vigorous investigation, prosecution and settlement of the Action, on a wholly contingent basis.  Despite formidable opposition from Defendants, who are represented by some of the largest and most capable and prestigious law firms in the world, Plaintiffs' Counsel were able to sufficiently develop the Plaintiffs' case to a point which enabled them to engage in a productive settlement process with Defendants, including two formal in-person mediation sessions conducted with the assistance of distinguished mediators, culminating in the 2012 mediation with a former judge, Daniel Weinstein (Ret.), acting as mediator.  This

---

[4]   Named Plaintiffs refers to The Fire and Police Pension Association of Colorado ("Colorado FPPA") and The San Antonio Fire and Police Pension Fund ("SAFPPA"), purchasers of Tronox's 9½% senior notes due 2012 ("Tronox Bonds") during the Class Period.  Lead Plaintiffs and Named Plaintiffs were certified as Class Representatives in the Court's Preliminary Approval Order.  *See* Preliminary Approval Order ¶ 3.

was followed by vigorous ongoing negotiations occurring over the course of several months, which ultimately resulted in the Settlement, a highly favorable result for the Class.  Without the skill, advocacy and diligent efforts exhibited by Plaintiffs' Counsel in the prosecution and resolution of the Class's claims, this litigation would have continued, risking the ability of the Class to recover the valuable benefit secured by the Settlement and creating a substantial possibility that the Class would obtain less, or even no recovery at all, after lengthy further proceedings through summary judgment and/or trial.

As compensation for these substantial efforts, Class Counsel respectfully requests that the Court award attorneys' fees in the amount of twenty-five percent ($9,250,000) of the Settlement Amount, plus interest (the "Fee Request"), and reimbursement of Plaintiffs' Counsel's out-of-pocket expenses in the amount of $1,627,360.10 (the "Expense Request").  These requests are fully justified by the facts of this case and the applicable law, and are fair and reasonable.[5] Following the dissemination of more than 70,000 copies of the Notice to potential Class Members, no objection to the amount of attorneys' fees and expenses has been received to date.[6] Class Counsel also respectfully requests that the Class Representatives be reimbursed the costs

---

[5]    The Court is respectfully referred to the Joint Declaration of Solomon B. Cera and Hannah G. Ross in Support of Final Approval of Settlement, Plan of Allocation and Application for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Joint Declaration" or "Joint Decl.") for a detailed description of the factual and procedural history of the Action, the claims asserted and the efforts expended by Plaintiffs' Counsel in connection with the prosecution and settlement of the Action.  *See also* Lead Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of Settlement and Plan of Allocation ("Final Approval Memorandum"), filed herewith.

[6]    *See* Declaration of Carole Sylvester of Gilardi & Co., LLC ("Gilardi"), the Court-authorized claims administrator for the Settlement, filed herewith. As set forth in the Notice, the deadline for Class Members to file an objection to any aspect of the Settlement, including Class Counsel's request for attorneys' fees and expenses, is October 29, 2012.  If any objections are received after the date of this submission, Class Counsel will address them in a reply brief to be filed with the Court on or before November 12, 2012.

and expenses in connection with their representation of the Class which, as demonstrated below, is also fair and reasonable and warrants the Court's approval.

## II.    PLAINTIFFS' COUNSEL'S LITIGATION EFFORTS

The efforts undertaken by Plaintiffs' Counsel prior to reaching the Settlement with Defendants were substantial.  Plaintiffs' Counsel conducted a thorough investigation into the Class's claims which included, *inter alia*: (i) review and analysis of the Plaintiffs' and, as to the Named Plaintiffs, their investment advisors' records, concerning their transactions in Tronox Securities; (ii) review and analysis of voluminous public documents pertaining to Defendants, including Tronox, Kerr-McGee Corporation ("Kerr-McGee"), and Anadarko Petroleum Corporation ("Anadarko") filings with the SEC, press releases, earnings releases and public statements published by them; (iii) review and analysis of materials published by numerous securities analysts who followed and reported on Tronox, as well as transcripts of analyst conference calls; (iv) review and analysis of newspaper and magazine articles (and other media coverage) regarding defendant Kerr-McGee, the parent of Tronox before it was spun-off in an IPO on November 21, 2005, and Tronox itself, information concerning Anadarko, which ultimately purchased Kerr-McGee following the spin-off of Tronox, as well as publicly available information regarding the Tronox Individual Defendants and the Kerr-McGee Individual Defendants' role with Kerr-McGee, Anadarko, and/or Tronox; (v) interviews with 54 confidential sources who were former employees of Kerr-McGee and/or Tronox; (vi) consultation with multiple experts regarding market efficiency issues, loss causation, and accounting, and work on the preparation of reports by certain of these experts; (vii) review and analysis of materials generated from the adversary proceeding captioned *Tronox, Inc. v. Anadarko Petroleum Corporation et al.*, No. 09-1198 (ALG) (Bankr. S.D.N.Y.), (the "Adversary

Proceeding"); and (viii) research of the applicable law with respect to the multiple claims asserted in the Action and the potential defenses thereto.  ¶15.[7]  Plaintiffs' Counsel also worked extensively with bankruptcy specialists to pursue the Class's interests in Tronox's bankruptcy case, including preserving access to all relevant Tronox records, obtaining the cooperation of Tronox and certain important witnesses, and preserving Plaintiffs' ability to access applicable insurance to satisfy their claims.  ¶33.

The Parties also conducted significant discovery prior to reaching the Settlement.  ¶31. Following the Court's rulings on Defendants' motions to dismiss,[8] both sides propounded and responded to extensive discovery requests.  *Id.*  Defendants and Tronox collectively produced 3.6 terabytes of documents including, *inter alia*, internal and external audits, minutes and records of meetings of senior executives and directors, and analyses of Tronox's reserves for environmental remediation at a multitude of sites throughout the country, and multiple years of accounting workpapers.[9]  *Id.*  In the case of defendant E&Y, it produced accounting workpapers applicable to three years' worth of annual and interim audits, for the years 2005, 2006, and 2007.  *Id.*  All of these voluminous records were organized, reviewed, and analyzed.  *Id.*  Plaintiffs also sought access to records from the Adversary Proceeding and worked cooperatively with Tronox's counsel to obtain such materials, which also were extremely voluminous.  *Id.*  Additionally, Plaintiffs' Counsel made significant document productions on behalf of their respective clients,

---

[7]    All references hereinafter to "¶__" are to paragraphs of the Joint Declaration.

[8]    *In re Tronox, Inc. Sec. Litig.*, No. 09 Civ. 06220 (SAS), 2010 WL 2835545 (S.D.N.Y. June 10, 2010); *In re Tronox, Inc. Sec. Litig.*, 769 F. Supp. 2d 202 (S.D.N.Y. 2011).

[9]    The documents produced by Defendants required extensive review and analysis and to that end, Plaintiffs' Counsel retained HLP Integration, an E-discovery solutions provider, to develop and maintain an electronic database to house these documents and to assist in their effective review.

answered multiple sets of interrogatories, and defended their clients, and in the case of the Named Plaintiffs, their investment advisors, in a total of five (5) depositions related to class certification.  *Id.*  Plaintiffs retained multiple experts and produced detailed and voluminous expert reports on market efficiency in connection with class certification.[10]  *Id.*  Moreover, Plaintiffs' Counsel were in the midst of preparing for depositions of key percipient fact witnesses when the Settlement was reached.  ¶32.

In addition to the forgoing investigation and discovery, the Parties also engaged in significant motion practice throughout the course of this Action, including: (i) two rounds of motions to dismiss by Defendants; (ii) Plaintiffs' motion for class certification; and (iii) litigation in the Bankruptcy Court regarding whether the Lead Plaintiffs could file and pursue a Class Proof of Claim.  ¶¶33, 57.  As a result of this investigation, discovery and motion practice, Plaintiffs' Counsel and Plaintiffs had an in-depth knowledge of the strengths and weaknesses of their asserted claims that allowed them to engage in productive settlement negotiations with Defendants, as well as to fully consider and evaluate the fairness and adequacy of the Settlement to the Class.

---

[10]  Plaintiffs retained and consulted with three experts on class issues, including Tavy Ronen, Ph.D. a professor of economics at Rutgers University, who submitted a report addressing market efficiency and whether and to what extent the price of Tronox Common Stock and Tronox Bonds were artificially inflated during the Class Period and who was deposed; Stanford Consulting Group, who supported Dr. Ronen's efforts; as well as an additional financial expert who assisted with the analysis of damages and loss causation issues.  ¶¶59, 72.  To rebut Dr. Ronen's positions, Defendants submitted detailed and lengthy reports from Professor Paul Gompers of Harvard University and Professor Mukhesh Bajaj of the University of California, Berkeley, Haas School of Business, who were deposed by Plaintiffs' Counsel.  ¶31.

### III.    ARGUMENT

**A.    Plaintiffs' Counsel are Entitled to an Award of Attorneys' Fees from the Common Fund Recovered for the Class**

The U.S. Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The purpose of the common fund doctrine is to fairly and adequately compensate plaintiffs' counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with the litigation pursued on their behalf. *See Goldberger v. Integrated Res.*, 209 F.3d 43, 47 (2d Cir. 2000); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007). Moreover, public policy also supports payment of fees from the common fund. "Private actions to redress real injuries ... could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *26 (S.D.N.Y. Oct. 19, 2005).

**B.    The Court Should Award a Reasonable Percentage of the Common Fund**

Courts have traditionally employed two methods for calculating reasonable attorneys' fees in securities class actions: the percentage-of-the-fund method and the lodestar method. *See In re Amaranth Natural Gas Commodities Litig.*, No. 07 Civ. 6377 (SAS), 2012 WL 2149094 at *1 (S.D.N.Y. June 11, 2012); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002). Although the Second Circuit has held that district courts may use either method when determining an award of attorneys' fees, "[t]he trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful

incentive for the efficient prosecution and early resolution of the litigation." *In re Comverse Tech., Inc., Sec. Litig.*, No. 06-cv-1825 (NGG)(RER), 2010 U.S. Dist. LEXIS 63342, at *8 (E.D.N.Y. June 23, 2010) (citing *Wal-Mart Stores. Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (internal citations omitted)). *See also Goldberger*, 209 F.3d at 50 (noting that even if a court used the percentage method, the court is still "encourage[d] to analyze counsel's lodestar 'as a cross check' on the reasonableness of the requested percentage") (citation omitted).[11]  In addition, the text of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4 *et seq.*, ("PSLRA"),  itself supports awarding attorneys' fees using the percentage-of-the-fund method in securities class actions, as it provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class.  15 U.S.C. §78u-4(a)(6) (emphasis added).  *See, e.g., In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,*  246 F.R.D. 156, 171 (S.D.N.Y. 2007) (by using this language, Congress expressed a preference for using the percentage method, as opposed to the lodestar method, in determining attorneys' fees in securities class actions); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) (same); *Maley*, 186 F. Supp. 2d at 370 (same).

Given the language of the PSLRA, the Supreme Court's indication that the percentage method is proper in this type of case, this Court's approval of the percentage method[12] as well as the Second Circuit guidance in *Goldberger*, and the trend among the district courts in this

---

[11]    While the Second Circuit encourages use of the lodestar method as a "cross check," it has acknowledged that the lodestar method utilized on its own "proved vexing" and resulted in "an inevitable waste of judicial resources."  *Goldberger*, 209 F.3d at 48-49.

[12]    *See Board of Trustees of the AFTRA Retirement Fund v. JP Morgan Chase Bank, N.A.*, No. 09-Civ-686 (SAS), 2012 WL 2064907 at *1 (S.D.N.Y. June 7, 2012); *In re Sadia, S.A. Sec. Litig.*, No. 08-Civ-9528 (SAS), 2011 WL 6825235 at *3 (S.D.N.Y. Dec. 28, 2011).

Circuit, Class Counsel respectfully submits that this Court should award attorneys' fees based on a percentage of the cash common fund obtained for the Class. As set forth below, the Fee Request is reasonable and appropriate and should be approved by the Court.[13]

C.      **The *Goldberger* Factors Confirm the Reasonableness of the Fee Request**

Regardless of whether the percentage-of-the-fund method or lodestar method is applied, an award of attorneys' fees must be reasonable under the circumstances of the particular case. *See Missouri v. Jenkins*, 491 U.S. 274, 285 (1989) (recognizing that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace). Moreover, courts in this Circuit continue to be guided by the factors set forth in *Goldberger*, 209 F.3d at 50, when analyzing the reasonableness of a request for attorneys' fees in a common fund case. Each of these factors supports the Fee Request in this Action.

1.      **The Time and Labor Expended by Counsel**

a.      **The Labor Dedicated By Plaintiffs' Counsel Supports the Fee Request**

As discussed more fully above, in the Joint Declaration, and in the Final Approval Memorandum submitted herewith, Plaintiffs' Counsel have expended considerable resources and time in the research, investigation, prosecution and ultimate resolution of this case. ¶72. Such efforts included an extensive investigation of all relevant facts, including locating and interviewing 54 confidential witnesses who provided valuable insights into the claims alleged in this Action. *Id.* Plaintiffs' Counsel's efforts also included, *inter alia*, drafting multiple complaints which substantially survived Defendants' motions to dismiss and where Plaintiffs

---

[13]    Plaintiffs' Counsel are providing the necessary information for the Court to perform its analysis using either the percentage-of-the-fund method or the lodestar/multiplier method (*see* Section III. C. 1. b., *infra*), as well as an analysis of the *Goldberger* factors.

prevailed in having their key allegations upheld; consulting bankruptcy specialists and litigating in the Bankruptcy Court to successfully preserve Lead Plaintiffs' rights therein on behalf of the Class; consulting with experts on market efficiency for both equity and debt securities, accounting, and damages; opposing two rounds of motions to dismiss made by all Defendants; briefing class certification; and engaging in class and merits related discovery, including the review and analysis of the voluminous documents produced by Defendants and certain third parties, as well as materials from the Adversary Proceeding. *Id.*; ¶60. Plaintiffs' Counsel also prepared for and engaged in hard-fought and protracted settlement negotiations with Defendants, including two in-person formal mediation sessions, the last of which was the March 2012 session with Judge Weinstein, followed by weeks of arduous negotiating of the terms of the Stipulation of Settlement and related settlement documents. ¶72. Thus, the time and effort devoted to this case by Plaintiffs' Counsel over the course of this Action to obtain the $37 million cash Settlement confirms that the Fee Request is reasonable.

        **b.**    **Application of a Lodestar Cross-Check Supports Class Counsel's Fee Request**

In conducting a lodestar cross-check, the Court engages in a two-step analysis: first, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate to obtain the lodestar,[14] and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained and the quality of the attorneys' work. *See, e.g., Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167-69 (3d Cir. 1973),

---

[14]   Plaintiffs' Counsel have calculated their lodestars using their current hourly rates. The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Jenkins*, 491 U.S. at 283-84.

*subsequently refined in, Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 116-18 (3d Cir. 1976) (en banc).  *See also In re Prudential Sec. Ltd. P'shps Litig.*, 985 F. Supp. 410, 414 (S.D.N.Y. 1997) ("Because counsel who rendered services were not being compensated for their work as it was being performed and because of the significant risk that they might never receive any compensation if the action was unsuccessful, courts have, when warranted, applied a multiplier to the lodestar to arrive at a fair contingent fee.").

Plaintiffs' Counsel have collectively spent over 17,400 hours in connection with this Action, resulting in a total lodestar of $8,477,447.50.[15]  ¶¶68, 73.  Thus, the Fee Request represents an extremely small multiplier of approximately 1.09 to the aggregate lodestar.  *Id.*  As courts in this jurisdiction often award multipliers in the 2-3 range, the lodestar cross-check underscores the reasonableness of the Fee Request here.  *See*, *e.g.*, *Bd. of Trustees of AFTRA Ret. Fund*, 2012 WL 2064907, at *2 (awarding fee representing a 2.86 multiplier); *Cornwell v. Credit Suisse Group*, No. 08-cv-03758 (VM), slip op. at 4 (S.D.N.Y. July 18, 2011), ECF No. 117 (awarding fee representing a 4.7 multiplier); *In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB), 2011 U.S. Dist. LEXIS 53007, at *17 (S.D.N.Y. May 13, 2011) (applying 1.41 multiplier and noting that this multiplier "is on the low end of multipliers found reasonable in the Second Circuit"); *Comverse*, 2010 U.S. Dist. LEXIS 63342, at *14 (noting that where "counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar" and finding that 2.78 multiplier was "well within the range awarded in

---

[15]    *See* lodestar and expense submissions of Solomon B. Cera, Hannah G. Ross, and Steven J. Toll, on behalf Class Counsel, Bernstein Litowitz, and Cohen Milstein, respectively, attached to the Joint Declaration as Exhibits 1, 2 and 3.  These exhibits reflect the names of the attorneys and paraprofessionals who worked on the Action, the hourly rates currently chargeable by each such attorney and paraprofessional, the lodestar value of the time expended by such attorneys and paraprofessionals, and the unreimbursed expenses incurred by these firms.

comparable settlements"); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ.

10240 (CM), 2007 U.S. Dist. LEXIS 5791 8, at *56 (S.D.N.Y. July 27, 2007) (2.48 multiplier "is

within the range found to be reasonable"); *Hicks*, 2005 U.S. Dist. LEXIS 24890, at *28

(applying 1.85 multiplier and noting that "1.85 times the lodestar and greater have been deemed

reasonable by the courts").

       The current hourly billing rate used by counsel to compute the lodestar is also reasonable.

In determining the propriety of a firm's hourly rates, one should compare "those [rates]

prevailing in the community for similar services of lawyers of reasonably comparable skill,

experience, and reputation." *Cruz v. Local Union No. 3 of the IBEW*, 34 F.3d 1148, 1159 (2d

Cir. 1994) (*quoting Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984)).  Here, Plaintiffs'

Counsel's rates are the competitive hourly rates in their legal communities for litigating cases of

this sort – complex securities class action cases.  *See In re Flag Telecom Holdings, Ltd. Sec.

Litig.*, No. 02-cv-3400 (CM) (PED), 2010 WL 4537550, at *25 (S.D.N.Y. Nov. 8, 2010) ("In

complex securities class actions in this Circuit and around the country, courts have repeatedly

found rates similar to those charged by Lead Counsel here to be reasonable; indeed, the

American Lawyer recently reported that the median billing rate for partners at many leading law

firms exceeds $900/hour.") (emphasis original); *In re Telik Inc. Sec. Litig.*, 576 F. Supp. 2d 570,

589 (S.D.N.Y. 2008) (finding, in 2008, partners' rates of $700-$750 and associates' rates of

$300-$550 to be reasonable and consistent with rates charged by the defense bar).

       2.     **The Risk of the Litigation**

       The Second Circuit has identified "the risk of success as 'perhaps the foremost' factor to

be considered in determining [a reasonable award of attorneys' fees]."  *Goldberger*, 209 F.3d at

54; *see also Telik*, 576 F. Supp. 2d at 592 ("Courts have repeatedly recognized that 'the risk of

the litigation' is a pivotal factor in assessing the appropriate attorneys' fees to award to plaintiffs' counsel in class actions.").  "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation."  *Teachers' Ret. Sys. of La. v. A.C.L.N, Ltd.*, No. 01-cv-11814 (MP), 2004 U.S. Dist. LEXIS 8608, at *11 (S.D.N.Y. May 14, 2004). Accordingly, Courts in this Circuit have long recognized that the risk associated with a case bears heavily upon the determination of an appropriate fee award.  *See Prudential*, 985 F. Supp. at 417 ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award.").

In assessing the proposed Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing and significant risks of litigation.  *See Detroit v. Grinnell Corp.*, 495 F.2d 488, 463 (2d Cir. 1974); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *8 (S.D.N.Y. Nov. 5, 2007); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 177 (S.D.N.Y. 2000), *aff'd nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  Had the Settlement not been reached, Plaintiffs would have confronted a number of substantial challenges including continuing to litigate class certification, demonstrating the existence of loss causation, and establishing liability and damages.  *See In re American Int'l Group Sec. Litig.*, No. 04 Civ. 8141 (DAB), 2010 WL 5060697, at *3 (S.D.N.Y. Dec. 2, 2010) (Court's findings regarding the risk of establishing liability, damages, and maintaining the class action through trial under *Grinnell* also satisfy this prong of the *Goldberger* analysis).

### a.     Risk of Establishing in Liability

Plaintiffs faced significant risks to establishing liability.  *See In re AOL Time Warner Inc. Sec. & ERISA Litig.*, No. 02-civ-5575 (SWK), 2006 U.S. Dist. LEXIS 17588, at *39 (S.D.N.Y.

Apr. 6, 2006) (noting that "the difficulty of establishing liability is a common risk of securities litigation"). As an initial matter, it is worth recalling that Tronox has at all times been bankrupt and there was never any possibility of obtaining any recovery whatsoever from the issuer of the securities involved in this litigation. ¶¶42, 46.

In addition, in order to succeed on their securities fraud claim under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78j(b), the Plaintiffs would be required to establish, *inter alia*, that there were misstatements or omissions of material fact made with scienter in connection with the purchase of securities. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). Proving scienter to a jury in this Action would have been especially difficult due to the nature of Defendants' alleged misrepresentations, which focused on the alleged improper recording of reserves for the costs of Tronox's environmental liabilities in hundreds of sites across the country in violation of Generally Accepted Accounting Principles. ¶¶43, 54. Plaintiffs would have to show that the judgments made about the adequacy of each of Tronox's recorded reserves were either intentionally or recklessly in error. ¶43. This is a daunting task. *E.g., Fait v. Regions Financial Corp.*, 655 F.3d 105, 113 (2d Cir. 2011). There was a very real risk that a jury would not agree with Plaintiffs' position that Defendants improperly recorded and/or understated reserves, especially since Defendants have – and would continue – to argue that the exercise of judgment is a critical aspect of setting reasonably estimable reserves. Indeed, a jury could well conclude that the Defendants were at most negligent in their reserving judgments, and in such circumstances, Plaintiffs would recover nothing. *Id.* Even if Plaintiffs were able to establish that certain of the Defendants had made materially misleading statements or omissions about the reserves, they faced additional challenges in establishing that Kerr-McGee, the Kerr-McGee Individual Defendants and

Anadarko were responsible as control persons (or pursuant to *respondeat superior*) for any misstatements that had been made.  *Id.*  Thus, establishing Defendants' liability in this Action presented numerous significant challenges.

**b.        Risk of Establishing Loss Causation and Damages**

As further detailed in the accompanying Joint Declaration and Final Approval Memorandum, Plaintiffs faced a significant challenge with respect to establishing loss causation and the Class's full amount of damages if the Parties had continued to litigate the Action.[16]  *See In re Indep. Energy Holdings PLC Sec. Litig.*, Master File No. 00-civ-6689 (SAS), 2003 U.S. Dist. LEXIS 17090, at *11-*12 (S.D.N.Y. Sept. 26, 2003) (noting difficulty of proving damages in securities actions).  Indeed, by the time the Class Period ended upon Tronox's bankruptcy filing, Tronox Common Stock had gradually declined over a two-year period to mere pennies on the dollar.  There was no sudden drop based on a single startling disclosure.  ¶50.  For example, Defendants argued that the alleged corrective disclosures in 2007 did not exhibit statistically significant price changes and that no new corrective information about environmental liabilities were disclosed on those days.  *Id.*  In addition, Defendants had colorable arguments that the market for Tronox Bonds was not efficient and that the market for Tronox Common Stock was not efficient at all times throughout the Class Period.  *Id.*

Nonetheless, the Plaintiffs' damages expert estimated aggregate damages sustained by purchasers of Tronox securities during the Class Period to be between $164 million and $215 million, assuming loss causation could be established for each corrective disclosure date.  ¶49. According to this calculation, the present Settlement represents between 17% and 22.8% of the

---

[16]   The Plaintiffs would be required to prove that Tronox's false and misleading statements artificially inflated the price of its common stock and bonds, as well as the amount of the artificial inflation and that both traded in an efficient market.  ¶48.

Class's likely maximum potential damages recoverable at trial.  *Id.*  This damage range, however, assumes that a jury would accept every element of the Class's damages theory as being correct and recoverable, including with regard to loss causation, where Plaintiffs faced major risk.[17]  *Id.*; ¶50.  Of course, Defendants claimed there were essentially no damages, arguing that the drops in the prices of Tronox Securities were not caused by the alleged corrective disclosures but by the general economic crisis and the housing crisis (among other things).  ¶¶50-51.  Defendants argued that Plaintiffs could not establish loss causation.  *Id.*

The presentation of evidence and the Parties' differing arguments on loss causation and damages would hinge upon extensive expert discovery and testimony.  *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir. 1986) (approving settlement where "it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions").  As a result, the crucial element of damages would likely be reduced at trial to a "battle of the experts."  *See, e.g., Veeco*, 2007 WL 4115808, at *10 ("The jury's verdict with respect to damages would depend on its reaction to the complex testimony of experts, a reaction which at best is uncertain.").

What is certain here is that, had the Action proceeded, there existed real uncertainties concerning loss causation and damages.  The fact that Class members will recover a meaningful percentage of their estimated damages without undertaking any of the foregoing risks weighs heavily in favor of the Settlement.  *See China Sunergy*, 2011 U.S. Dist. LEXIS 53007, at *15

---

[17]   Further, a damages analysis does not attribute relative fault – something a jury would be required to do under Section 10(b).

(noting that the average settlement in securities class actions ranges from 3% to 7% of the class' total estimated losses); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450, at *33 (S.D.N.Y. Jan. 31, 2007) (finding settlement representing approximately 6.25% of estimated damages to be "at the higher end of the range of reasonableness of recovery in class action securities litigations").[18]

      c.      **The Contingent Nature of Plaintiffs' Counsel's Representation Supports the Requested Fee**

As a result of the substantial risks of establishing liability and damages, Plaintiffs' Counsel faced the genuine risk of non-payment.  The Second Circuit has recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award.  *Grinnell*, 495 F.2d at 470 (citation omitted).  *See also In re American Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (concluding it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award); *Prudential*, 985 F. Supp. at 417 ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award.").  Plaintiffs' Counsel undertook all of the risks of this Action on a contingent fee basis – including surviving motions to dismiss and subsequent dispositive motions, obtaining class certification, proving liability, loss causation and damages, prevailing in the "battle of the experts," and litigating the

---

[18]   *See also* Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2011 Review and Analysis*, at 7 (Cornerstone Research 2012) (all settlements as a percentage of estimated damages averaged 2.1% in 2011 and 3.3% from 1996-2010; settlements as a percentage of estimated damages where damages ranged from $50-$124 million averaged 2.6% in 2011 and 5.3% from 1996-2010; settlements as a percentage of estimated damages where damages ranged from $125-$249 million averaged 2.2% in 2011 and 3.6% from 1996-2010); Jordan Milev, Robert Patton, Svetlana Starykh & John Montgomery, *Recent Trends in Securities Class Action Litigation: 2011 Year-End Review*, at 24 (NERA 2011) (median ratio of settlements to investor losses was 2.4% in 2010 and 1.3% in 2011).

Action through trial and possible appeals.  ¶75.  From the outset, Plaintiffs' Counsel understood

that they were embarking on a complex, expensive and lengthy litigation with no guarantee of

ever being compensated for the substantial investment of time and money the case would

require.  *Id.*  To that end, Plaintiffs' Counsel had to ensure that they dedicated sufficient

resources to this Action's prosecution, and that funds were available to compensate staff and to

cover the considerable costs that a case such as this requires.  *Id.*[19]

The risk of no recovery in complex cases of this type is real, and is heightened when

plaintiffs' counsel press to achieve the very best result for those they represent.  In numerous

class actions, including complex securities class actions, plaintiffs' counsel have expended

thousands of hours and advanced significant out-of-pocket expenses and received no

remuneration whatsoever, despite their significant diligence and expertise.  *See Veeco*, 2007 WL

4115808, at *6.  *See, e.g., State Univs. Ret. Sys. of Ill. v. AstraZeneca PLC*, 334 Fed. Appx. 404

(2d Cir. 2009) (affirming district court's dismissal of securities class action); *Steinberg v.

Ericsson LM Tel. Co.*, No. 07- cv-9615 (RPP), 2008 WL 5170640 (S.D.N.Y. Dec. 10, 2008)

(dismissing securities class action); *Freedman v. Value Health, Inc.*, 34 Fed. Appx. 408 (2d Cir.

2002) (affirming district court's grant of summary judgment in favor of defendants).[20]

The only certainty from the outset of this entirely contingent fee litigation was that

Plaintiffs' Counsel would receive no fee without a successful result, and that such a result would

---

[19]   Unlike counsel for Defendants, who are paid hourly rates and reimbursed for their expenses
on a regular basis, Plaintiffs' Counsel have not been compensated for any time or expenses since
this case began three years ago, and would have received no compensation or even
reimbursement of expenses had this case not been successful.  *Id.*; ¶76.

[20]   *See also, e.g., In re BankAtlantic Bancorp, Inc.*, No. 07-cv-61542, 2011 WL 1585605 (S.D.
Fla. Apr. 25, 2011) (court granted defendants' motion for a judgment as a matter of law
following jury verdict mostly in plaintiffs' favor); *In re JDS Uniphase Corp. Sec. Litig.*, No. 02-
cv-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (jury verdict for defendants).

be realized only after a long and arduous effort.  ¶76.  Nevertheless, Plaintiffs' Counsel assumed

the risks associated with pursuing this case, zealously represented the Class, and obtained a

substantial recovery for the Class.  These factors support the fairness and reasonableness of the

Fee Request.

### 3.    The Magnitude and Complexity of the Litigation Support the Requested Fee

Courts have long recognized that shareholder class actions are notoriously complex and

difficult to prove.  *See, e.g.*, *Fogarazzo v. Lehman Bros., Inc.*, No. 03-civ-5194 (SAS), 2011 WL

671745, at *3 (S.D.N.Y. Feb. 23, 2011) ("securities actions are highly complex"); *Merrill Lynch*,

246 F.R.D. at 172 ("Securities class litigation is notably difficult and notoriously uncertain.")

(internal quotations and citations omitted).  Here, not only does this Action involve many legal

and factual issues related to the federal securities laws, but also the complexities associated with

litigating a case entirely about the adequacy of reserves for environmental remediation

obligations as to which substantial differences of opinion could and did exist.  ¶54.

Moreover, the costs associated with taking this Action to trial would be considerable and

the process would require many hours of the Court's time and resources.  As a result, it could be

several years before the Class would receive a recovery, if any.  *See Denney v. Jenkens &*

*Gilchrist*, 230 F.R.D. 317, 337 (S.D.N.Y. 2005) ("If this case were to be tried, both sides would

be heavily dependent on. . . experts, further compounding the expense and complexity of this

case"), *aff'd in part, vacated in part, remanded by*, *Denney v. Deutsche Bank AG*, 443 F.3d 253

(2d Cir. 2006).  Therefore, an analysis of this factor favors approving the Fee Request.

### 4.    The Requested Fee is Reasonable in Relation to the Settlement

The requested fee in comparison to the Settlement also supports the approval of Class

Counsel's Fee Request.  The Fee Request – 25% percent of the Settlement Fund – is reasonable

when viewed as a percentage of the recovery.  The reasonableness of the fee requested should be considered under the circumstances of each case.  *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011).  Given the circumstances presented in this case and the difficulties faced by Plaintiffs' Counsel as described in this brief as well as the Joint Declaration and the Final Approval Memorandum, Class Counsel believes that the requested fee is reasonable in relation to the total settlement value.  This Court has previously awarded fees of 25 to 30 percent of the settlement fund when counsel has achieved similar favorable results.  *See Amaranth*, 2012 WL 2149094, at *2 (Scheindlin, J.) (awarding 30% of $77.1 million settlement); *Bd. of Trustees of AFTRA Ret. Fund*, 2012 WL 2064907, at *2 (Scheindlin, J.) (awarding 25% of $150 million settlement); *Sadia*, 2011 WL 6825235, at *3 (Scheindlin, J.) (awarding 30% of $27 million settlement); *Fogarazzo*, 2011 WL 671745, at *3 (Scheindlin, J.) (awarding 33⅓ percent of the settlement fund as "fair and reasonable").  A review of other fee awards in this District reveals that the 25% request is well within the range of percentage fees awarded in comparable cases.  *See, e.g., Cornwell v. Credit Suisse Group*, No. 08-cv-03758 (VM), slip op. at 2 (S.D.N.Y. July 18, 2011), ECF No. 117 (awarding 27.5% of a $70 million settlement fund); *In re LG Philips LCD Co., Ltd. Sec. Litig.*, No. 07-cv-909-RJS, slip op. at 1 (S.D.N.Y. Mar. 17, 2011), ECF No. 82 (awarding 30% of $18 million settlement fund); *In re Monster Worldwide, Inc. Sec. Litig.*, No. 07-cv-2237 (JSR), 2008 U.S. Dist. LEXIS 122149, at *4 (S.D.N.Y. Nov. 25, 2008) (awarding 25% of $45 million settlement fund); *In re Priceline.com, Inc. Sec. Litig.*, No. 3:00-CV-1884 (AVC), 2007 U.S. Dist. LEXIS 52538, at *16 (D. Conn. 2007) (awarding 30% of $80 million settlement fund); *In re Philip Servs. Corp. Sec. Litig.*, No. 98 Civ. 835 (AKH), 2007 WL 959299, at *3 (S.D.N.Y. March 28, 2007) (awarding 26% of $79.75 million settlement fund); *In re Am. Express Fin. Advisors Sec. Litig.*, No. 04 Civ. 1773 (DAB), slip op. at 8 (S.D.N.Y. July

18, 2007), ECF No. 170 (awarding 27% of $100 million settlement fund).  The Fee Request is well within the range of percentage fees typically awarded, substantially less than the one-third often awarded and, viewed in the totality of the circumstances of this case, is reasonable.

### 5. Plaintiffs' Counsel Provided the Class With Quality Legal Services That Generated an Excellent Benefit for the Class

Another factor to be considered with respect to the reasonableness of the requested fee is the quality of the representation by Plaintiffs' Counsel, the standing of that counsel at the bar, and the quality of opposing counsel.  *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004).  Gold Bennett and Bernstein Litowitz have successfully litigated these types of actions in courts throughout the country, and have a successful track record in such cases.  ¶77; *see also In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 348 (S.D.N.Y. 2009).

Likewise, the quality of opposing counsel is also an important factor in evaluating the services rendered by plaintiffs' counsel.  *See In re Brown Co. Sec. Litig.*, 355 F. Supp. 574, 592-93 (S.D.N.Y. 1973) (standing of opposing counsel underscores complexity of litigation and challenges faced by Plaintiffs' Counsel); *see also Global Crossing*, 225 F.R.D. at 467. Plaintiffs' Counsel faced formidable opposition from Defendants' Counsel, the prominent law firms of Skadden Arps, Weil Gotshal, Sullivan & Cromwell, Baker Botts, Katten Muchin and Dechert LLP.  ¶78.  Without the experience, skill and determination displayed by Plaintiffs' Counsel during the prosecution of this Action, as well as the months of hard-fought settlement negotiations with Defendants that followed, such a favorable recovery for the Class in this Action would not have been attained.  The ability of Plaintiffs' Counsel to obtain such a favorable recovery for the Class in the face of such formidable legal opposition further reflects the superior quality of their work.

6.      **Public Policy Considerations Support the Requested Fee**

Courts in the Second Circuit have held that "[p]ublic policy concerns favor the award of reasonable attorneys' fees in class action securities litigation." *Flag Telecom*, 2010 WL 4537550, at *29 (citation omitted); *see also WorldCom*, 388 F. Supp. 2d at 359 ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives."). Public policy supports granting attorneys' fees that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC and help deter future wrongdoing. *See Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."). Plaintiffs' Counsel's willingness to assume the risks of this litigation resulted in a substantial benefit to the Class. ¶80. *See Priceline.com*, 2007 U.S. Dist. LEXIS 52538, at *17 ("the award of the percentage requested here will encourage enforcement of the securities laws and support attorneys decisions to take these types of cases on a contingent fee basis"). Thus, public policy supports awarding the present Fee Request.

D.      **The Class's Reaction to Date to the Fee Request Supports the Conclusion that the Requested Fee is Fair and Reasonable**

In addition to the criteria set forth in *Goldberger*, courts in the Second Circuit also consider the reaction of the Class to the fee request in deciding whether to award the requested fee. *See Maley*, 186 F. Supp. 2d at 374. The Notice advised Class Members that Class Counsel would be requesting an award of attorneys' fees not to exceed 25% of the Settlement Fund and reimbursement of out-of-pocket expenses not to exceed $1,985,000, to be paid from the Settlement Fund. ¶71. As of the filing of this motion, no objection to the amount of attorneys'

fees and expenses set forth in the Notice has been received.[21]  ¶56; *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (finding that "low level of objections is a rare phenomenon").

## IV.  PLAINTIFFS' COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND NECESSARY TO THE PROSECUTION OF THIS ACTION

"It is well established that counsel who create a common fund are entitled to the reimbursement of expenses that they advance to a class." *Veeco*, 2007 WL 4115808, at *10; *see also Merrill Lynch*, 246 F.R.D. at 178 ("Counsel is entitled to reimbursement from the common fund for reasonable litigation expenses.").  Plaintiffs' Counsel respectfully request reimbursement of $1,627,360.10 in expenses advanced or incurred while prosecuting this Action. A large portion of these expenses were used to obtain and house millions of documents, to pay for the experts retained, to pay for the costs of formal mediation with Judge Weinstein, one of the most prominent mediators in the country, and to pursue the interests of the Class in Tronox's bankruptcy proceedings.[22]  ¶¶33, 72.  These expenses were all critical to Plaintiffs' Counsel's success in achieving the proposed Settlement.

For the Court's convenience, the declarations submitted on behalf of Plaintiffs' Counsel include exhibits summarizing and categorizing Plaintiffs' Counsel's expenses.  *See Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys [and] [f]or

---

[21]   Should any objections be received after the date of this submission, they will be addressed by Class Counsel in a reply brief to be filed with the Court on or before November 12, 2012.

[22]   Plaintiffs' Counsel retained a law firm with expertise in bankruptcy – Lowenstein Sandler P.C. – in order to fully protect the Class's interests in Tronox's bankruptcy proceedings.  The fees and expenses charged by that firm, $340,278.47, are being sought as an expense reimbursement herein.

this reason, they are properly chargeable to the Settlement fund.").  To date, no objections have been received regarding the expense figure set forth in the Notice.  ¶56.  Accordingly, Class Counsel respectfully requests that the Court award the Expense Request in full.

## V.    CLASS REPRESENTATIVES ARE ENTITLED TO AWARDS REIMBURSING THEIR COSTS AND EXPENSES

The PSLRA states that "nothing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."  15 U.S.C. 78u-4(a)(4).  *See Hicks v. Morgan Stanley*, No. 01-civ-10071 (RJH), 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005) ("Courts in [the Second] Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place.").[23]  Pursuant to the PSLRA, the Class Representatives request awards totaling $194,460.98 to compensate them for the reasonable costs and expenses incurred in connection with representing the Class.  *See* Declaration of Frank LaGrange Johnson; Declaration of Frank Burney, and Declaration of Kevin Lindahl, attached as Exhibits 4, 5, and 6, respectively, to the Joint Decl.[24]

The Lead Plaintiffs and Named Plaintiffs actively and effectively fulfilled their obligations as the representatives for the Class, complying with all of the demands placed upon

---

[23]    When enacting the PSLRA, Congress intended to grant courts discretion in this regard.  *See* H.R. Conf. Rep. No. 104-369, at 35 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 734 (lead plaintiffs should be compensated for activities "associated with service as lead plaintiff, . . . and [the committee] grants the courts discretion to award fees accordingly").

[24]    Specifically, Lead Plaintiffs request an award of $129,804.23, San Antonio Fire and Police Pension Association requests an award of  $49,030 and Fire and Police Pension Association of Colorado requests an award of $15,626.76.

them during the prosecution and settlement of this Action, and providing valuable assistance to Plaintiffs' Counsel.  In devoting substantial effort and time to this Action on behalf of the Class, the Plaintiffs responded to document requests and interrogatories, produced trading records and other responsive documents, reviewed filings, and communicated regularly with Plaintiffs' Counsel, including through a protracted settlement process.  In addition, representatives of all the Plaintiffs prepared for and sat for depositions in furtherance of class certification.  *Id.*  These are precisely the types of activities that Courts have found to support reimbursement being made to class representatives.  *See, e.g., In re Am. Int'l Group, Inc. Sec. Litig.,* No. 04 Civ. 8141 (DAB), 2010 WL 5060697, at *3 (S.D.N.Y. Dec. 2, 2010) (granting PSLRA award to lead plaintiffs "to compensate them for the time and effort they devoted on behalf of the class. . . including meetings with counsel, time devoted to responding to extensive document requests and interrogatories . . ., preparation for and attendance at ten class discovery depositions, review of court filings, and correspondence and telephone conversations with counsel").

## VI.    CONCLUSION

For the reasons set forth herein and in the Joint Declaration, Class Counsel respectfully requests that the Court approve and enter an order for: (i) an award of attorneys' fees in the amount of 25 percent of the Settlement Fund or $9,250,000, plus accrued interest (ii) reimbursement of Plaintiffs' Counsel's expenses in the amount of $1,627,360.10; and (iii) an aggregate award of $194,460.98 to the Class Representatives in reimbursement of the costs and expenses incurred relating to their representation of the Class.

Dated:  October 15, 2012                    Respectfully submitted,

**GOLD BENNETT CERA & SIDENER LLP**

By: /s Solomon B. Cera
Solomon B. Cera
Thomas C. Bright
595 Market Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 777-2230
Facsimile: (415) 777-5189

*Class Counsel*

**BERNSTEIN LITOWITZ BERGER**
**  & GROSSMANN LLP**
Hannah G. Ross
Laura H. Gundersheim
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

*Attorneys for Named Plaintiffs*

#126425                                                                    26

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users.

_____/s/Solomon B. Cera_____
Solomon B. Cera
